(176445)

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LEONARD GRUNSTEIN, JACK DWYER,
and CAPITAL FUNDING GROUP, INC.,
```

**Judge Berman**

**07 CV 3712**

07 Civ. _____

Plaintiffs,

COMPLAINT AND JURY DEMAND

- against –

```
RONALD E. SILVA; PEARL SENIOR CARE,
LLC; PSC SUB, LLC; BEVERLY ENTERPISES,
INC.; GEARY PROPERTY HOLDINGS, LLC
FILLMORE CAPITAL PARTNERS, LLC;
FILLMORE STRATEGIC INVESTORS, LLC;
DRUMM INVESTORS, LLC; and FILLMORE
STRATEGIC MANAGEMENT, LLC,
                                              Defendants.
-----------------------------------------------------------X
```



Plaintiffs, by their attorneys, Heller, Horowitz & Feit, P.C. and Fenigstein & Kaufman, complaining of defendants, allege:

<u>Jurisdiction and Venue</u>

1. Jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. Section 1332. As set forth more fully below, all of the plaintiffs are citizens of states different from the states of which defendants are citizens. The matter in controversy, exclusive of interest and costs, exceeds $75,000.

2. Plaintiff Leonard Grunstein ("Grunstein") is a citizen and domiciliary of the state of New Jersey.

3. Plaintiff John W. Dwyer, also known as Jack Dwyer, ("Dwyer") is a citizen

and domiciliary of the State of Maryland.

4. Plaintiff Capital Funding Group Inc. ("Capital Funding") is a corporation organized and existing under the laws of the state of Maryland and has its principal place of business in that state.

5. Upon information and belief, defendant Ronald E. Silva ("Silva") is a citizen and domiciliary of the state of California.

6. Upon information and belief, defendant Pearl Senior Care, LLC, formerly known as Pearl Senior Care Inc. ("Pearl"), is a limited liability company organized and existing under the laws of the state of Delaware and has its principal place of business in California.

7. Upon information and belief, defendant PSC Sub, LLC, formerly known as PSC Sub Inc. ("PSC"), is a limited liability company organized and existing under the laws of the state of Delaware and has its principal place of business in California.

8. Upon information and belief, defendant Geary Property Holdings LLC ("Geary"), is a limited liability company, organized and existing under the laws of the State of Delaware, and has its principal place of business in California.

9. Upon information and belief, defendant Beverly Enterprises Inc. ("Beverly") is a corporation organized and existing under the laws of the state of Delaware, and has its principal place of business in Arkansas.

10. Upon information and belief, defendant Fillmore Capital Partners LLC ("FCP") is a limited liability company organized and existing under the laws of the state of Delaware and has its principal place of business in California.

11. Upon information and belief, defendant Fillmore Strategic Investors LLC

("FSI") is a limited liability company organized and existing under the laws of the state of Delaware and has its principal place of business in California.

12.  Upon information and belief, defendant Drumm Investors, LLC ("Drumm") is a limited liability company organized and existing under the laws of the state of Delaware and has its principal place of business in California.

13.  Upon information and belief, defendant Fillmore Strategic Management ("FSM") is a limited liability company organized and existing under the laws of the state of Delaware and has its principal place of business in California.

14.  Each of the defendants is subject to personal jurisdiction within the state of New York in that (i) the claims asserted herein arise out of the transaction of business by each of the defendants within this state; and/or (ii) each of the defendants committed a tortuous act within this state.

15.  Venue within this District is proper pursuant to 28 U.S.C. Section 1391(a).

Facts Common to
All Claims for Relief

16.  At all relevant times, Beverly, a publicly held-company, was a leading provider of quality healthcare to the elderly, and it owned and/or operated approximately 345 nursing homes throughout the United States.

17.  In or about January 2005, plaintiffs Grunstein and Dwyer learned that Beverly was for sale, and they thereafter formed a partnership to use the respective partners' skill, knowledge, expertise, resources and prior experience and effort to acquire Beverly. Plaintiffs later invited defendant Silva (and defendant FCP which Silva controlled) to participate in the proposed transaction as an equal partner and he agreed to join. The partners agreed to share profits and losses, and if the Partnership was

successful in acquiring Beverly, each partner would receive any equal share of Beverly. At the time the acquisition was completed, each partner was to receive a 33 1/3% interest in Beverly.

18.  On or about August 16, 2005, pursuant to the partnership agreement, plaintiffs caused NASC, NASC Acquisition Corp. ("NASC Acquisition") and SBEV Property Holdings LLC ("SBEV") (the "Original Acquirers"), to enter into an agreement with Beverly (the "Merger Agreement"), which provided for Beverly to be acquired in a merger for cash transaction and related transactions aggregating more than $2 billion. Plaintiff Grunstein signed the Merger Agreement on behalf of SBEV.

19.  Defendants Silva and FCP (of which Silva was CEO and President and a principal, and which he controlled) and their attorneys were sent drafts as well as the final version of the Merger Agreement which they reviewed in detail prior to its execution.

20.  The Original Acquirers were special purpose entities, formed for the sole purpose of acting as parties to the Merger Agreement. At the time the Merger Agreement was signed, it was contemplated that Original Acquirers would meet their financial obligations by means of funds which the partnership would raise in order to consummate the transactions which were the subject of the Merger Agreement.

21.  On September 22, 2005, a Second Amendment to the Merger Agreement was executed. Defendant Silva was involved in the negotiations with respect to the Second Amendment. Section 2.11 of the Second Amendment provided that by November 18, 2005, FCP would deliver an unconditional "Equity Commitment Letter" for $350 million to be used to consummate the merger transaction. The Second

4

C:\Documents and Settings\eea\Local Settings\Temporary Internet Files\OLK7\5 10 07 a GrunsteinBeverly - Complaint_v4.DOC

Amendment annexed as Exhibit C thereto a conditional equity commitment letter for the $350 million (which conditions were to be removed by November 18, 2005) addressed to Beverly, NASC and SBEV. The conditional equity commitment letter was signed by Silva on behalf of FCP.

22. Upon information and belief, prior to September 22, 2005, defendant Silva was already discussing with, and had already obtained a verbal commitment from, Washington State Investment Board ("WSIB") to provide the $350 million in financing contemplated by Section 2.11 of the Second Amendment and Exhibit C annexed thereto.

23. Plaintiffs and defendant Silva agreed that once the merger transaction closed, they would attempt to obtain financing of up to $1,430,000,000 from the Department of Housing and Urban Development. The parties agreed that in the event that the HUD financing was obtained, plaintiff Capital Funding would be paid a fee of 2.5% of the amount of the loan, and that plaintiff Dwyer would surrender his partnership interest to the remaining partners. The parties also agreed that irrespective of whether HUD financing was sought or obtained, plaintiff Capital Funding would be paid a fee of $3.5 million when the merger transaction closed.

24. Based on and in reliance upon the aforesaid promises, representations and agreements, on or about October 13, 2005, plaintiff Dwyer caused plaintiff Capital Funding to issue a conditional commitment for such financing (the "CFG Commitment").

25. Because of plaintiff Dwyer's and plaintiff Capital Funding's reputation and standing within the financial community, the CFG Commitment gave the prospective acquirers of Beverly added credibility, and facilitated raising funds from third parties to

5

C:\Documents and Settings\eea\Local Settings\Temporary Internet Files\OLK7\5 10 07 a GrunsteinBeverly - Complaint_v4.DOC

complete the merger transaction. Upon information and belief, defendant Silva used the CFG Commitment in attempting to obtain funds for the transaction.

26. In or about mid-November 2005, plaintiff Grunstein suggested that the names of NASC, NASC Acquisition and SBEV be changed for reasons unrelated to this lawsuit. Accordingly, on or about November 17, 2005, Silva arranged for the formation and incorporation, of Pearl, PSC and Geary to take the place of NASC, NASC Acquisition and SBEV, under the Merger Agreement to acquire the stock of Beverly for the Partnership. As was the case with NASC, NASC Acquisition and SBEV, Pearl, PSC and Geary were formed for the sole purpose of the Beverly acquisition.

27. Upon information and belief, defendant Silva is the President of defendants Pearl and PSC, and he is a principal of and controls Pearl, PSC and Geary.

28. Upon information and belief, on or about November 17, 2005, defendant Silva arranged for the formation of defendant FSI for the sole purpose of the Beverly acquisition. Defendant Silva is the President, a principal of and controls the activities of FSI.

29. On or about November 17, 2005, WSIB approved an investment of $350 million in FSI, to be used by FSI to finance the Beverly merger transaction.

30. At all times FSI was fully aware of the role of the plaintiffs in the transaction, the prior agreements between plaintiffs and defendants Silva and FCP and the fact that plaintiffs were partners in the transaction and expected to be compensated for their efforts.

31. On or about November 18, 2005, FSI issued the commitment letter for $350 million as contemplated by Section 2.11 of the Second Amendment to the Merger

C:\Documents and Settings\eea\Local Settings\Temporary Internet Files\OLK7\5 10 07 a GrunsteinBeverly - Complaint_v4.DOC

Agreement. The commitment letter was addressed, *inter alia*, to Pearl and Geary, instead of NASC and SBEV. Defendant Silva signed the commitment letter on behalf of FSI.

32. On or about November 20, 2005, a Third Amendment to the Merger Agreement was signed, pursuant to which the partnership caused the rights of the Original Acquirers under the Merger Agreement to be transferred to and assumed by Pearl, PSC and Geary. Defendant Silva signed the Third Amendment on behalf of Pearl and PSC.

33. On or about March 14, 2006, the merger of Beverly was completed. Upon information and belief, the stock of Beverly is now owned by Pearl, which in turn is owned by Drumm, an entity formed by defendant Silva, which in turn is owned by FSI. Defendant FSM is the managing member of FSI. Upon information and belief, each and all of the defendants all acted in concert with, as instrumentalities of, and as agents, co-ventures and/or co-conspirators of each other in connection with the conduct of defendants, as alleged in this complaint.

34. Defendants have failed and refused to provide plaintiffs Grunstein and Dwyer with their equity interest in Beverly. Defendants have also failed and refused to proceed with the HUD financing. Defendants have also refused to pay plaintiff Capital Funding its agreed upon fee of $3.5 million.

### First Claim for Relief
### Breach of Partnership Agreement

35. The agreement between plaintiffs Grunstein and Dwyer and defendants Silva and FCP to form a partnership to acquire Beverly, and that if the acquisition was successful, plaintiffs would each receive a 33 1/3% interest in Beverly, was a valid and

7

C:\Documents and Settings\eea\Local Settings\Temporary Internet Files\OLK7\5 10 07 a GrunsteinBeverly - Complaint_v4.DOC

binding agreement.

36. In furtherance of and in reliance upon this partnership agreement, plaintiffs Grunstein and Dwyer allowed defendants to participate in the Beverly acquisition; Plaintiff Grunstein provided his skill and experience and devoted many hours to the project, working with defendants and others, for which he was not otherwise paid, and he also expended large sums of money in connection with the transaction; Plaintiff Dwyer provided his skill, resources, expertise and many hours of effort, in connection with facilitating the transaction and caused plaintiff Capital Funding, to facilitate the partnerships' transaction by, among other things, preparing and issuing the CFG Commitment for the benefit of the partnership. Plaintiffs Grunstein and Dwyer have performed all of the terms and conditions of the agreement on their part.

37. Defendants, acting in concert, have caused defendants Silva and FCP to breach, and defendants Silva and FCP have breached, the agreement with plaintiffs, in that they have refused to provide plaintiffs with, and have refused to acknowledge, plaintiffs' respective interests in Beverly.

38. By reason of the foregoing, plaintiffs have been damaged in an amount not as yet ascertained, but at least in the sum of $100 million.

Second Claim for Relief
of Specific Performance

39. Plaintiffs repeats and reallege each and every allegation contained in paragraphs 1 through 37, with the same force and effect as if fully set forth herein

40. There is a valid contract between defendants Silva and FCP, and plaintiffs Grunstein and Dwyer with respect to the acquisition of Beverly and their respective equity interests in Beverly. Beverly is a unique property.

8

C:\Documents and Settings\eea\Local Settings\Temporary Internet Files\OLK7\5 10 07 a GrunsteinBeverly - Complaint_v4.DOC

41. Defendants Silva and FCP, on their own and through their control of the other defendants are able to perform their obligations pursuant to the agreement, but have refused to do so.

42. Plaintiffs Grunstein and Dwyer have no adequate remedy at law.

43. By reason of the foregoing, plaintiffs Grunstein and Dwyer are entitled to specific performance of the agreement to give them two-thirds of the equity in Beverly.

### Third Claim for Relief
### Breach of Fiduciary Duty

44. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 37, with the same force and effect as if fully set forth herein.

45. As partners of the plaintiffs Grunstein and Dwyer, defendants Silva and FCP owed them a fiduciary duty of the utmost good faith, fairness and loyalty.

46. Defendants FCP and Silva breached their fiduciary duty, by taking for themselves and the other defendants the entire equity interest of plaintiffs Grunstein and Dwyer in the Beverly transaction, and by refusing to provide plaintiffs with their agreed upon equity interests in Beverly.

47. Upon information and belief the defendants other than Silva and FCP acted in concert with and participated in the breach of fiduciary duty by FCP and Silva to plaintiffs.

48. By reason of the foregoing, plaintiffs have been damaged in an amount not as yet ascertained but at least in the sum of $100 million.

49. Upon information and belief, the aforesaid conduct by all of defendants was intentional and deliberate and part of a pattern by such defendants of appropriating the work, property, resources, expertise and effort of others in connection with the

9

C:\Documents and Settings\eea\Local Settings\Temporary Internet Files\OLK7\5 10 07 a GrunsteinBeverly - Complaint_v4.DOC

Beverly transaction for their own benefit, and refusing to pay those others for their work, property, expertise and effort. These defendants made a calculated decision with respect to the Beverly transaction that it was cheaper to steal the transaction opportunity, the Merger Agreement, and the work and expertise of others, than to pay for it.

50. By reason of the foregoing, plaintiffs are entitled to punitive damages in the sum of $1 billion.

Fourth Claim for<br>Relief - Conversion

51. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 37 and 45 through 49, with the same force and effect as if fully set forth herein.

52. Defendants' conduct, including, *inter alia*, appropriating for themselves 100% of the interest in Beverly, was an unauthorized assumption and exercise, and a conversion, of the rights of ownership by plaintiffs Grunstein and Dwyer to two-thirds of the equity interest in Beverly.

53. By reason of the foregoing, plaintiffs Grunstein and Dwyer have been damaged in an amount to be ascertained by the Court but at least in the sum of $100 million; and they are entitled to punitive damages in the sum of $1 billion.

Fifth Claim for Relief<br>Constructive Trust

54. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 37, 45 through 49 and 52, with the same force and effect as if fully set forth herein.

10

55. Defendants Silva and FCP and – through them – the remaining defendants, had a confidential and/or fiduciary relationship with plaintiffs.

56. Defendants Silva and FCP promised plaintiffs that they would each have a 33 1/3% interest in Beverly. In reliance on that promise plaintiffs agreed to allow defendants to transfer 100% of the stock of Beverly into entities controlled solely by defendants, and in which plaintiffs had no interest, in place of the Original Acquirers, in the mistaken belief that defendants would then turn over to plaintiffs the promised equity interest in Beverly.

57. As a result of such conduct defendants have been enriched unjustly.

58. Plaintiffs are entitled to a judgment imposing a constructive trust with respect to two-thirds of the equity interest of Beverly.

### Sixth Claim for Relief
### Unjust Enrichment

59. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 37, 45 through 49, 52 and 55 through 57, with the same force and effect as if fully set forth herein.

60. Defendants have been unjustly enriched at the expense of plaintiffs, based on plaintiffs' work, property, expertise, effort and financial contributions in connection with the Beverly merger. Equity and good conscience require that defendants be made to pay plaintiffs for the reasonable value of the services and benefits which they conferred upon defendants.

61. By reason of the foregoing plaintiffs have been damaged in an amount not as yet ascertained but at least in the sum of $100 million.

11

C:\Documents and Settings\eea\Local Settings\Temporary Internet Files\OLK7\5 10 07 a GrunsteinBeverly - Complaint_v4.DOC

## Seventh Claim for Relief
### Breach of Contract

62.  Plaintiff Capital Funding repeats and realleges each and every allegation contained in paragraphs 1 through 34 with the same force and effect as if fully set forth herein.

63.  Plaintiff Capital Funding has performed all of the terms of its agreement with defendants on its part.

64.  Defendants have breached their agreement with plaintiff Capital Funding in that they have failed and refuse to pay plaintiff Capital Funding its agreed upon fee of $3.5 million.

65.  By reason of the foregoing plaintiff Capital Funding has been damaged in the sum of $3.5 million.

WHEREFORE, plaintiffs demand judgment as follows:

(a) with respect to the first claim for relief, judgment in favor of plaintiffs Grunstein and Dwyer and against all of the defendants in an amount to be ascertained by the Court, but at least in the sum of $100 million.

(b) with respect to the second claim for relief judgment directing defendants to transfer to plaintiffs Grunstein and Dwyer a one-third interest each in Beverly.

(c) with respect to the third claim for relief:

(i) judgment in favor of plaintiffs Grunstein and Dwyer and against all of the defendants for compensatory damages in an amount to be ascertained by the Court, but at least in the sum of $100 million.

(ii) punitive damages against all of defendants, in the sum of $1 billion.

(d) with respect to the fourth claim for relief:

12

(i) judgment in favor of plaintiffs Grunstein and Dwyer against all of the defendants for compensatory damages in an amount to be ascertained by the Court, but at least in the sum of $100 million.

(ii) punitive damages against all of defendants, in the sum of $1 billion.

(e) with respect to the fifth claim for relief, a judgment that the defendants hold two-thirds of the interest of Beverly in constructive trust for the benefit of plaintiffs Grunstein and Dwyer, and that same be transferred to them forthwith.

(f) with respect to the sixth claim for relief, judgment in favor of plaintiffs Grunstein and Dwyer against all of the defendants in an amount to be ascertained by the Court, but at least in the sum of $100 million.

(g) with respect to the seventh claim for relief, judgment in favor of plaintiff, Capital Funding, against all of defendants, in the amount of $3.5 million, plus interest since March 14, 2006.

(h) with respect to all of the claims for relief, interest, costs and reasonable attorneys fees, and such other and further relief as may be just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Dated: New York, New York
May 10, 2007

HELLER, HOROWITZ & FEIT, P.C.

By: _____/s/ Martin Stein_____
Martin Stein (MS9372)
292 Madison Avenue
New York, New York 10017
212-685-7600

13

FENIGSTEIN & KAUFMAN, P.C.
1900 Avenue of the Stars, Suite 2300
Los Angeles, California 90067
310-201-0777

*Attorneys for Plaintiffs*

14

C:\Documents and Settings\eea\Local Settings\Temporary Internet Files\OLK7\5 10 07 a GrunsteinBeverly - Complaint_v4.DOC