(176445)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LEONARD GRUNSTEIN, JACK DWYER,
and CAPITAL FUNDING GROUP, INC.,

                      Plaintiffs,

          - against –

RONALD E. SILVA; PEARL SENIOR CARE,
LLC; PSC SUB, LLC; GEARY
PROPERTY HOLDINGS, LLC,
FILLMORE CAPITAL PARTNERS, LLC;
FILLMORE STRATEGIC INVESTORS, LLC;
DRUMM INVESTORS, LLC; and FILLMORE
STRATEGIC MANAGEMENT, LLC,

                   Defendants.
-----------------------------------------------------------X

07 Civ. 3712

AMENDED COMPLAINT AND
JURY DEMAND



Plaintiffs, by their attorneys, Heller, Horowitz & Feit, P.C. and Fenigstein & Kaufman, complaining of defendants, allege:

### Jurisdiction and Venue

1.    Jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. Section 1332.  As set forth more fully below, all of the plaintiffs are citizens of states other than the states of which defendants are citizens.  The matter in controversy, exclusive of interest and costs, exceeds $75,000.

2.    Plaintiff Leonard Grunstein ("Grunstein") is a citizen and domiciliary of the state of New Jersey.

(176445)

3.      Plaintiff Jack Dwyer ("Dwyer") is a citizen and domiciliary of the State of Maryland.

4.      Plaintiff Capital Funding Group Inc. ("Capital Funding") is a corporation organized and existing under the laws of the state of Maryland and has its principal place of business in that state.

5.      Upon information and belief, defendant Ronald E. Silva ("Silva") is a citizen and domiciliary of the state of California.

6.      Upon information and belief, defendant Pearl Senior Care, LLC, formerly known as Pearl Senior Care Inc. ("Pearl"), is a limited liability company organized and existing under the laws of the state of Delaware and has its principal place of business in California. All of its members are domiciled in states other than New Jersey and Maryland.

7.      Upon information and belief, defendant PSC Sub, LLC, formerly known as PSC Sub Inc. ("PSC"), is a limited liability company organized and existing under the laws of the state of Delaware and has its principal place of business in California. All of its members are domiciled in states other than New Jersey and Maryland.

8.      Upon information and belief, defendant Geary Property Holdings LLC ("Geary"), is a limited liability company, organized and existing under the laws of the State of Delaware, and has its principal place of business in California. All of its members are domiciled in states other than New Jersey and Maryland.

9.      Upon information and belief, defendant Fillmore Capital Partners LLC ("FCP") is a limited liability company organized and existing under the laws of the state of Delaware and has its principal place of business in California. All of its members are

2

(176445)

domiciled in states other than New Jersey and Maryland.

10.    Upon information and belief, defendant Fillmore Strategic Investors LLC ("FSI") is a limited liability company organized and existing under the laws of the state of Delaware and has its principal place of business in California. All of its members are domiciled in states other than New Jersey and Maryland.

11.    Upon information and belief, defendant Drumm Investors, LLC ("Drumm") is a limited liability company organized and existing under the laws of the state of Delaware and has its principal place of business in California. All of its members are domiciled in states other than New Jersey and Maryland.

12.    Upon information and belief, defendant Fillmore Strategic Management ("FSM") is a limited liability company organized and existing under the laws of the state of Delaware and has its principal place of business in California. All of its members are domiciled in states other than New Jersey and Maryland.

13.    Each of the defendants is subject to personal jurisdiction within the state of New York in that (i) the claims asserted herein arise out of the transaction of business by each of the defendants within this state; and/or (ii) each of the defendants committed a tortuous act within this state.

14.    Venue within this District is proper pursuant to 28 U.S.C. Section 1391(a).

Facts Common to<br>All Claims for Relief

15.    At all relevant times, Beverly Enterprises Inc. ("Beverly"), a publicly held-company, was a leading provider of quality healthcare to the elderly, and it owned and/or operated approximately 345 nursing homes throughout the United States.

3

(176445)

16.    In or about January 2005, plaintiffs Grunstein and Dwyer learned that Beverly was for sale, and they thereafter formed a partnership, as equal partners, to use the respective partners' skill, knowledge, expertise and prior experience and effort to acquire Beverly. Plaintiffs later invited defendant Silva (and defendant FCP which Silva controlled) to participate in the proposed transaction as an equal partner and Silva and FCP agreed to do so and joined the partnership. In June or July 2005, the partners agreed to share profits and losses equally, and if the Partnership was successful in acquiring Beverly, each partner would receive an equal share of Beverly.

17.    On or about August 16, 2005, NASC, NASC Acquisition Corp. ("NASC Acquisition") and SBEV Property Holdings LLC ("SBEV") (the "Original Acquirers"), entered into an agreement with Beverly (the "Merger Agreement"), which provided for Beverly to be acquired in a merger for cash transaction and related transactions aggregating more than $2 billion.

18.    The Original Acquirers were special purpose entities, formed to acquire Beverly pursuant to the Merger Agreement. At the time the Merger Agreement was signed, it was contemplated that Original Acquirers would meet their financial obligations under the Merger Agreement by means of funds which the partnership would raise in order to consummate the transactions, and that the partnership would receive its interest in Beverly from the Original Acquirers.

19.    The Merger Agreement contained a jurisdiction provision providing that if disputes arose between the Original Acquirers, and the seller, Beverly, the dispute would be resolved in the Chancery Court in Delaware. The parties did not intend for the jurisdiction provision to apply to disputes between partners, none of whom were parties

4

(176445)

to the merger agreement, and it was not contemplated or foreseeable that such clause would apply to disputes between the partners if they arose. This was particularly true since almost all – if not all - of the meetings of the parties took place in New York, and none took place in Delaware, and except for the formation of defendants Pearl, PSC and Geary, as set forth in paragraph 22, none of the work done by the petitioner or its partners in furtherance of the partnership purpose, goals or agreements was performed in Delaware.

20.    In furtherance of the partnership goals and purpose, and pursuant to the agreement among the partners , the partnership raised the funds required to fund the Original Acquirers pursuant merger agreement.

a.  To arrange funding of the equity portion of the funding for the transaction, on or about September 22, 2005, through FCP, Silva provided a conditional letter of credit to fund $350 million, which was to be used to provide the Original Acquirers with the equity portion of the funding for their acquisition of Beverly through the merger transaction,  Upon information and belief, prior to September 22, 2005, defendant Silva had discussed funding the equity with, and had already obtained a verbal commitment from, Washington State Investment Board ("WSIB").

b.  In furtherance of the partnership, and based on and in reliance upon the aforesaid promises, representations, agreements and commitment letter, on or about October 13, 2005, plaintiff Dwyer caused plaintiff Capital Funding to issue a conditional commitment for up to $1.43 billion of permanent HUD financing (the "CFG Commitment") that could be used to

raise, and ultimately pay off, bridge financing to fund the Original
Acquirers acquisition of Beverly.  To comply with HUD lending rules, the
parties agreed that in the event that the HUD financing was used, plaintiff
Capital Funding would be paid a fee of 2.5% of the amount of the loan and
that plaintiff Dwyer would surrender his partnership interest to the
remaining partners.  The parties also agreed that irrespective of whether
HUD financing was sought or obtained, plaintiff Capital Funding would be
paid a fee of $3.5 million when the merger transaction closed.

21.    Because of plaintiff Dwyer's and plaintiff Capital Funding's reputation and
standing within the financial community, the CFG Commitment gave the partnership and
the Original Acquirers of Beverly added credibility, and enabled the partnership to raise
bridge financing from third parties to complete the merger transaction.  Upon
information and belief, the CFG Commitment was used by defendant Silva to raise
funds for the acquisition of Beverly through the merger transaction.

22.    For reasons unrelated to this lawsuit, and to carry out the agreement of
the partners, on or about November 17, 2005, Silva arranged for the formation and
incorporation of Pearl, PSC and Geary to pursue and complete the acquisition of
Beverly in place of NASC, NASC Acquisition and SBEV, under the aforesaid
agreements and arrangements of the partnership and among the partners.

23.    Upon information and belief, defendant Silva is the President of
defendants Pearl and PSC, and he is a principal of and controls Pearl, PSC and Geary.

24.    Upon information and belief, on or about November 17, 2005, defendant
Silva arranged for the formation of defendant FSI for the sole purpose of taking the

6

place of FCP in providing the equity portion of the funding for the Beverly acquisition. Defendant Silva is the President, a principal of and controls the activities of FSI.

25.    On or about November 17, 2005, WSIB approved an investment of $350 million in FSI, to be used to fulfill the obligations of the equity commitment letter, previously signed by Silva on behalf of FCP.

26.    At all times FSI was fully aware of the role of the plaintiffs in the transaction, the prior agreements between plaintiffs and defendants Silva and FCP; the fact that plaintiffs were partners in the transaction; and expected to be compensated for their efforts.

27.    On or about November 18, 2005, FSI issued a commitment letter for $350 million, to be used to consummate the merger transaction.  The commitment letter was addressed, *inter alia*, to Pearl and Geary, instead of NASC and SBEV.  Defendant Silva signed the commitment letter on behalf of FSI.

28.    On or about November 20, 2005, a Third Amendment to the Merger Agreement was signed, pursuant to which the rights of the Original Acquirers under the Merger Agreement to be transferred to and assumed by Pearl, PSC and Geary. Defendant Silva signed the Third Amendment on behalf of Pearl and PSC.  The substitution of these parties was based on Silva's representations and promises that Grunstein, Dwyer and Silva were still partners and that the agreements between plaintiffs and defendant Silva would be carried out by Silva's companies, including Pearl, PSC and Geary .

29.    On or about March 14, 2006, the merger of Beverly was completed.  Upon information and belief, the stock of Beverly is now owned by Pearl, which in turn is

7

(176445)

owned by Drumm, an entity formed by defendant Silva, which in turn is owned by FSI. Defendant FSM is the managing member of FSI. Upon information and belief, each and all of the defendants all acted in concert with, as instrumentalities of, and as agents, co-ventures and/or co-conspirators of each other in connection with the conduct of defendants, as alleged in this complaint.

30.    Defendants have failed and refused to honor the obligations to plaintiffs and have not provided plaintiffs Grunstein and Dwyer with their equity interest in Beverly or any other compensation. Defendants have also failed and refused to proceed with the HUD financing. Defendants have also refused to pay plaintiff Capital Funding its agreed upon fee of $3.5 million.

First Claim for Relief
Breach of Partnership Agreement

31.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 30 with the same force and effect as if fully set forth herein.

32.    The agreement between plaintiffs Grunstein and Dwyer and defendant Silva to form a partnership to acquire Beverly, and that if the acquisition was successful, the partners, plaintiff Grunstein, plaintiff Dwyer and defendant Silva (or a legal entity the partner designated), each would receive an equal interest in Beverly, was a valid and binding agreement.

33.    In furtherance of and in reliance upon this partnership agreement, plaintiffs Grunstein and Dwyer allowed defendants to participate in the Beverly acquisition; Plaintiff Grunstein provided his skill and experience and devoted many hours to the project, working with defendants and others, for which he was not otherwise paid, and he also expended large sums of money in connection with the transaction; Plaintiff

8

(176445)

Dwyer provided his skill, resources, expertise and many hours of effort, in connection with facilitating the transaction and caused plaintiff Capital Funding, to facilitate the partnerships' transaction by, among other things, preparing and issuing the CFG Commitment for the benefit of the partnership.  Plaintiffs Grunstein and Dwyer have performed all of the terms and conditions of the agreement on their part.

34.    Defendants, acting in concert, have caused defendants Silva and FCP to breach, and defendants Silva and FCP have breached, the agreement with plaintiffs, in that they have refused to carry out the partnership agreement, have taken the partnership's merger transaction, opportunity, property and profits for themselves, and have refused to provide plaintiffs with the interests plaintiffs were to have received in Beverly.

35.    By reason of the foregoing, plaintiffs have been damaged in an amount not as yet ascertained, but at least in the sum of $100 million.

### Second Claim for Relief
### of Specific Performance

36.    Plaintiffs repeats and realleges each and every allegation contained in paragraphs 1 through 30 and 32 through 35, with the same force and effect as if fully set forth herein.

37.    There is a valid contract between defendants Silva (and FCP and the other legal entities Silva controls), and plaintiffs Grunstein and Dwyer to acquire Beverly.  Beverly is a unique property.  Defendants have acquired that unique property and taken control of Beverly, which rightfully belongs to plaintiffs and defendant Silva as equal partners.

9

38.    Defendants Silva and FCP, on their own and through their control of the other defendants are able to perform their obligations pursuant to the agreement, but have refused to do so.

39.    Plaintiffs Grunstein and Dwyer have no adequate remedy at law.

40.    By reason of the foregoing, plaintiffs Grunstein and Dwyer are entitled to specific performance of the agreement to give them their equity interest in Beverly.

### Third Claim for Relief
### Breach of Fiduciary Duty

41.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 30 and 32 through 35, with the same force and effect as if fully set forth herein.

42.    As partners of the plaintiffs Grunstein and Dwyer, defendants Silva and the other defendants owed them a fiduciary duty of the utmost good faith, fairness and loyalty.

43.    Defendants breached their fiduciary duty, by taking for themselves and the other defendants the entire equity interest of plaintiffs Grunstein and Dwyer in the Beverly transaction, and by refusing to provide plaintiffs with their agreed upon equity interests in Beverly.

44.    Upon information and belief the defendants other than Silva acted in concert with and participated in the breach of fiduciary duty by Silva to plaintiffs.

45.    By reason of the foregoing, plaintiffs have been damaged in an amount not as yet ascertained but at least in the sum of $100 million.

46.    Upon information and belief, the aforesaid conduct by all of defendants was intentional and deliberate and part of a pattern by such defendants of appropriating

the work, property, resources, expertise and effort of others in connection with the

Beverly transaction for their own benefit, and refusing to pay those others for their work,

property, expertise and effort.  These defendants made a calculated decision with

respect to the Beverly transaction that it was cheaper to steal the transaction

opportunity, the Merger Agreement, and the work and expertise of others, than to pay

for it.

47.     By reason of the foregoing, plaintiffs are entitled to punitive damages in

the sum of $1 billion.

## Fourth Claim for
### Relief - Conversion

48.     Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 30, 32 through 35 and 42 through 47, with the same force and

effect as if fully set forth herein.

49.     Defendants' conduct, including, *inter alia*, appropriating for themselves

100% of the interest in Beverly, was an unauthorized assumption and exercise, and a

conversion, of the rights of ownership by plaintiffs Grunstein and Dwyer to their equity

interest in Beverly.

50.     By reason of the foregoing, plaintiffs Grunstein and Dwyer have been

damaged in an amount to be ascertained by the Court but at least in the sum of $100

million; and they are entitled to punitive damages in the sum of $1 billion.

## Fifth Claim for Relief
### Constructive Trust

51.     Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 30, 32 through 35, 42 through 45 and 49, with the same force and

11

effect as if fully set forth herein.

52.    Defendants Silva and FCP and – through them – the remaining defendants, had a confidential and/or fiduciary relationship with plaintiffs.

53.    Defendants Silva and FCP promised plaintiffs that they would carry out the partnership's acquisition of Beverly for the benefit of all of the partners.  In reliance on that promise plaintiffs agreed to allow defendants to transfer 100% of the stock of Beverly into entities controlled solely by defendants, and in which plaintiffs had no interest, in the mistaken belief that defendants would then turn over to plaintiffs the promised equity interest in Beverly.

54.    As a result of such conduct defendants have been enriched unjustly.

55.    Plaintiffs are entitled to a judgment imposing a constructive trust with respect to two-thirds of the equity interest of Beverly.

### Sixth Claim for Relief
### Unjust Enrichment

56.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 30, 32 through 35, 42 through 45, 49 and 52 through 54, with the same force and effect as if fully set forth herein.

57.    Defendants have been unjustly enriched at the expense of plaintiffs, based on plaintiffs' work, property, expertise, effort and financial contributions in connection with the Beverly merger.  Equity and good conscience require that defendants be made to pay plaintiffs for the reasonable value of the services and benefits which they conferred upon defendants.  These services were performed pursuant to agreement with and at the request of defendants, and for the benefit of defendants, who knew that plaintiffs expected to be paid for their services.  Absent

(176445)

payment by the defendants, plaintiffs will not be paid for their services.

58.     By reason of the foregoing plaintiffs have been damaged in an amount not as yet ascertained but at least in the sum of $100 million.

Seventh Claim for Relief
Breach of Contract

59.     Plaintiff Capital Funding repeats and realleges each and every allegation contained in paragraphs 1 through 30 and 32 through 35 with the same force and effect as if fully set forth herein.

60.     Plaintiff Capital Funding has performed all of the terms of its agreement with defendants on its part.

61.     Defendants have breached their agreement with plaintiff Capital Funding in that they have failed and refuse to pay plaintiff Capital Funding its agreed upon fee of $3.5 million.

62.     By reason of the foregoing plaintiff Capital Funding has been damaged in the sum of $3.5 million.

WHEREFORE, plaintiffs demand judgment as follows:

(a)     with respect to the first claim for relief, judgment in favor of plaintiffs Grunstein and Dwyer and against all of the defendants in an amount to be ascertained by the Court, but at least in the sum of $100 million.

(b)     with respect to the second claim for relief judgment directing defendants to transfer to plaintiffs Grunstein and Dwyer the interests in Beverly each was to receive under the parties agreement and that plaintiffs be placed in control of Beverly in lieu of Silva or the other Defendants.

(176445)

(c)     with respect to the third claim for relief:

    (i)     judgment in favor of plaintiffs Grunstein and Dwyer and against all of the defendants for compensatory damages in an amount to be ascertained by the Court, but at least in the sum of $100 million.

    (ii)     punitive damages against all of defendants, in the sum of $1 billion.

(d)     with respect to the fourth claim for relief:

    (i)     judgment in favor of plaintiffs Grunstein and Dwyer against all of the defendants for compensatory damages in an amount to be ascertained by the Court, but at least in the sum of $100 million.

    (ii)     punitive damages against all of defendants, in the sum of $1 billion.

(e)     with respect to the fifth claim for relief, a judgment that the defendants hold two-thirds of the interest of Beverly in constructive trust for the benefit of plaintiffs Grunstein and Dwyer, and that same be transferred to them forthwith.

(f)     with respect to the sixth claim for relief, judgment in favor of plaintiffs Grunstein and Dwyer against all of the defendants in an amount to be ascertained by the Court, but at least in the sum of $100 million.

(g)     with respect to the seventh claim for relief, judgment in favor of plaintiff, Capital Funding, against all of defendants, in the amount of $3.5 million, plus interest since March 14, 2006.

(h)     with respect to all of the claims for relief, interest, costs and reasonable attorneys fees, and such other relief as may be just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

14

(176445)

Dated:  New York, New York
           August 17, 2007

HELLER, HOROWITZ & FEIT, P.C.

By: _Martin Stein_____

Martin Stein (MS9372)
292 Madison Avenue
New York, New York 10017
212-685-7600

FENIGSTEIN & KAUFMAN, P.C.
1900 Avenue of the Stars, Suite 2300
Los Angeles, California 90067
310-201-0777
*Attorneys for Plaintiffs*