*1983)* ("[F]raud does not consist merely of overt misrepresentations. It may also occur through deliberate concealment of facts, or by silence [*17] in the fact of a duty to speak. Thus, one is equally culpable of fraud who by omission fails to reveal that which it is his duty to disclose in order to prevent statements actually made from being misleading.").

Metcap's claim for fraud fails because it depends upon the contention that the Defendants were knowingly silent as to the late-hour change to the Third Amendment and that there was a "duty to disclose" the change to MetCap. [34] Generally, a duty to disclose arises when there is a fiduciary or other similar relationship of trust between the parties of where the custom or course of dealing between the parties merits disclosure. [35] MetCap has failed to set forth any facts that would support any inference that the Defendants had some fiduciary or other obligation to disclose changes to the Merger Agreement to MetCap, which, of course, was not a party to the Merger Agreement. Where there is no fiduciary or contractual relationship, Delaware law generally does not impose a duty to speak. [36] Because MetCap makes no allegation that such a relationship existed between it and the Defendants or that it had engaged in a course of dealing with the Defendants entitling it to any particular [*18] disclosure, the Defendants owed no "duty to disclose" to MetCap and, accordingly, MetCap has not stated a claim for fraud against the Defendants. [37]

[34] MetCap does not allege any false representation.
[35] *See, e.g., Matthews Office Designs, Inc. v. Taub Invs.,* 1994 Del. LEXIS 182, 1994 WL 267479, at *2 (Del. May 25, 1994).
[36] *See Nicolet, Inc. v. Nutt,* 525 A.2d 146, 150 (Del. 1987).
[37] To the extent that MetCap might argue that the "duty to disclose" would arise out of its status as a third party beneficiary to the Merger Agreement, see Part IV.D, *infra.*

C. *The Claim for Unjust Enrichment--It Survives in Part*

MetCap also asserts a claim for unjust enrichment against all Defendants. It argues that it was the "procuring cause" of the Beverly acquisition and that, absent a recovery, the assignee Defendants and Beverly will have received the benefit of its services without the corresponding obligation to pay MetCap for those services. [38]

[38] *See* Compl. PP 33-34. The Complaint does not go much further than a broad brush allegation that MetCap was the "procuring cause" of the merger. For example, the Complaint notes MetCap's "substantial contribution and work in connection with the merger" and that it "conferred the benefit [*19] of its services directly upon defendants," but it makes no reference as to what exactly it performed for the Defendants.

Unjust enrichment is the "unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." [39] In finding a party is entitled to an equitable remedy for unjust enrichment, courts look to several factors: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law. [40] Of cardinal significance is whether a contract already governs the parties' relationship. In short, if there is a contract between the complaining party and the party alleged to have been enriched unjustly, then the contract remains "the measure of [the] plaintiff's right." [41]

[39] *Schock v. Nash,* 732 A.2d 217, 232 (Del. 1999).
[40] *Cantor Fitzgerald, L.P. v. Cantor,* 1998 Del. Ch. LEXIS 97, 1998 WL 326686, at *6 (Del. Ch. June 16, 1998); *Khoury Factory Outlets, Inc. v. Snyder,* 1996 WL 74725, at *11 (Del. Ch. Jan. 8, 1996).
[41] *Wood v. Coastal States Gas Corp.,* 401 A.2d 932, 942 (Del. 1979); *ID Biomedical Corp. v. TM Tech., Inc.,* 1995 Del. Ch. LEXIS 34, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995). [*20] *See, e.g., Bakerman v. Sidney Frank Importing Co., Inc.,* 2006 Del. Ch. LEXIS 180, 2006 WL 3927242, at *18 (Del. Ch. Oct. 16, 2006) ("When the complaint alleges an express, enforceable contract that controls the parties' relationship, however, a claim for unjust enrichment will be dismissed."); *Albert v. Alex Brown Mgmt. Servs., Inc.,* 2005 Del. Ch. LEXIS 133, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005) (dismissing an unjust enrichment claim "when the existence of a contractual relationship [was] not controverted").

There is, of course, no contract between MetCap and the Defendants. This fact, MetCap appears to assert, should itself be dispositive to the Court's analysis, leading it to conclude that the claim for unjust enrichment can withstand Defendants' motion to dismiss. The mere absence of a contract between the complaining party and the defendant, however, is not dispositive. Also crucial--but lacking here--is that some direct relationship be alleged between a defendant's enrichment and a plaintiff's impoverishment.

Although the doctrine of unjust enrichment is one of "substantial flexibility," [42] it is axiomatic that there must be some relationship between the parties. A showing that the defendant was enriched unjustly by [*21] the plaintiff who acted *for* the defendant's benefit is essential. As one court cogently explained:

> [T]o recover under a theory of quasi contract, a plaintiff must demonstrate that services were performed for the defendant resulting in its unjust enrichment. It is not enough that the defendant received a benefit from the activities of the plaintiff; if the services were performed at the behest of someone other than the defendants, the plaintiff must look to that person for recovery. [43]

[42] *Palese*, 2006 Del. Ch. LEXIS 126, 2006 WL 1875915, at *5.
[43] *Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc.*, 14 F. Supp. 2d 331, 338 (S.D.N.Y. 1998), aff'd, 173 F.3d 845 (2d Cir. 1999).

With the focus on "for whom" MetCap's services were performed, the Complaint frames two discrete periods: (i) through execution of the Third Amendment and (ii) after the Third Amendment. Before the Third Amendment, MetCap's services, in accordance with the Advisor Contract, were performed for NASC; afterward, with NASC out of the transaction, the Defendants, or so it must be inferred from the Complaint, knew that MetCap was performing work, supporting the transaction, for their benefit.

The Complaint refers to the Advisor Contract between [*22] MetCap and NASC. That agreement evinces their understanding that MetCap would "act as [NASC's] financial and business advisor to assist [it] in proposed transactions involving Beverly Enterprises, Inc." [44] in exchange for NASC's "pay[ing] to [MetCap] an Investment Advisory Fee of Twenty Million Dollars ($ 20,000,000) . . . [u]pon the closing of any . . . Business Combination Transaction [with Beverly]." [45] Absent from the Advisor Contract, however, is any link to Pearl, PSC, Geary, or Beverly. It does not specify or even contemplate that advisory services would be provided to any party other than NASC. [46] Those services were not requested by any of the Defendants. The Advisor Contract does not reveal, and the Complaint does not allege, a relationship of agency between NASC and any one of the Defendants or that the Advisor Contract was amended to reflect a change in NASC's status as the sole recipient of MetCap's services. Furthermore, the Complaint makes no allegation that any of the Defendants expressly agreed to assume, either in whole or in part, NASC's obligation under the Advisor Contract to compensate MetCap. [47]

[44] Advisor Contract at 1.
[45] *Id.* at 2.
[46] Particularly odd is MetCap's [*23] unjust enrichment claim against the target corporation in this transaction; the Advisor Contract makes plain that MetCap was advising the entity *acquiring* Beverly. See *id.* at 1.-2. Under the agreement, that entity was, of course, NASC.
[47] The Plaintiffs do contend that Pearl's duty to pay MetCap would have arisen under the parenthetical of Section 5.10 of the Merger Agreement if it had not been revised at the last minute by the Third Amendment.

Because our law precludes the doctrine of unjust enrichment from being invoked "to circumvent basic contract principles [recognizing] that a person not a party to [a] contract cannot be held liable to it," [48] the Court must conclude that MetCap's route to recovery for work performed (or benefit conferred) through the Third Amendment is defined by its contract with NASC and that its unjust enrichment claim to that extent must be dismissed. [49]

[48] *WSFS v. Chillibilly's Inc.*, 2005 Del. Super. LEXIS 96, 2005 WL 730060, at *19 (Del. Super. Mar. 30, 2005). See also RESTATEMENT OF RESTITUTION § 110 (1988) ("A person who has

conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other *merely* because of [*24] the failure of performance by the third person.") (emphasis added). The parties engage in a minor debate about the guidance provided by *Section 110 of the RESTATEMENT* and how that guidance might be expanded by consideration of the tentative draft. *Section 110* cannot be read as precluding *every* claim of unjust enrichment simply because there is an agreement between "A", who claims that "B" has been unjustly enriched at "A's" expense, and "C" (instead of "B"). To be fair, none of the Defendants, despite MetCap's characterization, has argued precisely this. The word "merely" in *Section 110* serves as a reminder that something more is necessary to invoke the doctrine of unjust enrichment. The "more" that is required may be suggested by Section 29 of the RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT (tentative draft No. 3, 2004) which provides in part:

> A person who has conferred a benefit on a recipient as the performance of a contract with a third person is entitled to restitution from the recipient upon the failure of performance by the third person, but only as necessary to prevent unjust enrichment. In this context, the conclusion that a recipient would be unjustly enriched [*25] by the retention of a given benefit requires a determination that: (a) absent liability in restitution, the claimant will not be compensated for the performance in question, and the recipient will retain the benefit of the claimant's performance free of any liability to pay for it; (b) liability in restitution will not subject the recipient to an obligation from which it was understood by the parties that the recipient would be free; and (c) liability in restitution will not subject the recipient to a forced exchange.

The tentative draft is, of course, just that: tentative. More importantly, if literally applied, MetCap's claim would fail because it has not alleged that "absent liability in restitution," it would not be paid. It has alleged that NASC is unable to pay; it has not alleged that SBEV will not pay under its guarantee of the Advisor Contract. As for whether liability would be imposed on Pearl for "an obligation from which it was understood by the parties that [it] would be free," the analysis is less clear. When the Advisor Contract was executed, Pearl obviously was not involved in any way and no one believed that it would become obligated. At some point, especially during [*26] the period shortly after the Second Amendment when it was anticipated that Pearl would acquire the stock of NASC, it could be argued that Pearl (and NASC and MetCap) expected that Pearl would become obligated. Pearl, however, did not buy the stock of NASC and, thus, a transaction which never occurred cannot be the basis for imposing the liability upon Pearl. Moreover, no benefit was arguably conferred by MetCap on Pearl until the Third Amendment.

49   The Court is not insensitive to MetCap's predicament. Both MetCap and NASC allege that NASC was an entity with no assets of its own and, thus, seeking recovery from it would be futile. *See* Compl. P 11 (alleging further that "it was contemplated that NASC would meet its financial obligations . . . by means of funds that it would raise"). But the inability of a party to a contract to fulfill an obligation thereunder cannot serve as a basis to conclude that other entities, who are not party to the contract, are liable for that obligation. *See WSFS, 2005 Del. Super. LEXIS 96, 2005 WL 730060, at *19* ("A greater injustice would result if this Court were to ignore the lease agreement [between the parties] and award unjust enrichment damages . . . WSFS was in the better position [*27] to protect itself by claiming other collateral, or in the alternative, refusing to loan its funds . . . Finding otherwise would be inequitable.").

Following the Third Amendment, MetCap's work was no longer for NASC; instead, the Court must infer

from the Complaint that it was for the benefit of the Defendants, most likely for the benefit of Pearl. If, as alleged, Pearl knew of the services for its benefit, relied upon and benefited from those services, and understood that NASC could not (or would not) pay MetCap for those services, the Court cannot conclude "with reasonable certainty" that there is no set of facts that MetCap could prove to support its claim for unjust enrichment as to the benefits it conferred upon Pearl following the Third Amendment. [50] Thus, the motion to dismiss MetCap's unjust enrichment claim must be denied to that extent. [51]

> 50  MetCap's claim of unjust enrichment against PSC, Geary, and Beverly do not survive the motion to dismiss. No non-conclusory facts are alleged to suggest in any fashion how any of these entities benefited from MetCap's services, contracted for by NASC and only arguably at some point benefiting Pearl.
>
> 51  The Complaint provides little insight [*28] to the work of MetCap after the Third Amendment (or before the Third Amendment for that matter). How to establish appropriate compensation, assuming the MetCap is so entitled, may be a difficult task, but it is not one that the Court need confront now. Indeed, the Court, in this context, does not preclude any argument (if MetCap should choose to make one) as to when any particular benefit resulted.

D. *The Complaint Does Not State a Claim That MetCap Was a Third-Party Beneficiary of the Merger Agreement*

Next, the Court considers MetCap's claim that it was a third-party beneficiary to the Merger Agreement, before the Third Amendment, and that, as such, the parties to the Merger Agreement could not vary or eliminate MetCap's right to a fee without its express consent because MetCap had acted in reliance upon its third-party rights. [52] For reasons set forth, this claim does not survive the Defendants' motion to dismiss.

> 52  *See* Compl. PP 12, 37-38. For MetCap to prevail, it must allege that (1) it was a third-party beneficiary of the Merger Agreement before the Third Amendment and (2) the terms of that agreement which benefited it could not be changed without its approval. The Merger Agreement, [*29] as amended by the Third Amendment, confers no rights, by its terms, upon MetCap.

Well-settled within precepts of contract law is recognition that non-parties to a contract ordinarily have no rights under it. [53] Fixation with privity between parties, however, waned as modern commerce spawned increasingly sophisticated and complex relationships. [54] An exception emerged that an intended-but not incidental--third--party beneficiary might also have enforceable legal rights under a contract, even if it was not a party to that contract.

> 53  *E.g., Comrie v. Enterasys Networks, Inc.,* 2004 Del. Ch. LEXIS 196 2004 WL 293337, at *2 (Del. Ch. Feb. 13, 2004) (citing *Insituform of N. Am., Inc. v. Chandler,* 534 A.2d 257, 268 (Del. Ch. 1987)) (recognizing "the general rule that strangers to a contract ordinarily acquire no rights under it . . .").
>
> 54  *See Wilmington Housing Auth. v. Fid. & Deposit Co. of Md.,* 43 Del. 381, 4 Terry 381, 47 A.2d 524, 528 (Del. 1946) (holding that a third-party beneficiary may recover on a contract made for his benefit and noting that "the exceptions grafted upon the English doctrine by our Delaware Courts have breached the imaginary barrier erected by the seal against the overwhelming force of justice and reason supporting [*30] the American doctrine, thereby opening the way for us to wipe out the last vestiges of an 'outworn, archaic' rule which is in conflict with the demands of modern-day business and social policy"); *see also* 13 RICHARD A. LORD, WILLISTON ON CONTRACTS § 37:1 (4th ed. 2000) (noting that, while courts "recite[d] talismanically--and somewhat misleadingly--that 'strangers to a contract' have no rights under the contract, [i]n practice, the traditional common-law view proved too inflexible and harsh . . . [and an] exception to this rule has grown up under our law . . . .").

Delaware courts have often looked to *Insituform of North America, Inc. v. Chandler* [55] to determine whether a party is an intended third-party beneficiary under a contract. There, the Court explained that:

> In order for third party beneficiary rights to be created, not only is it necessary that

performance of the contract confer a benefit upon third parties that was intended, but the conferring of a *beneficial* effect on such third party--whether it be a creditor of the promisee or an object of his or her generosity--should be a material part of the contract's purpose. [56]

Thus, three elements are essential: (1) an *intent* between [*31] the contracting parties to benefit a third party through the contract, (2) the benefit being intended to serve as a gift or in satisfaction of a pre-existing obligation to the third party, and (3) a showing that benefiting the third party was a *material* aspect to the parties agreeing to contract. [57]

> [55]  534 A.2d 257 (Del. Ch. 1987).
> [56]  *Id.* at 270 (emphasis in original).
> [57]  See Madison Realty Partners 7, LLC v. AG ISA, LLC, 2001 Del. Ch. LEXIS 37, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001).

MetCap alleges that Section 5.10 of the Merger Agreement made it an intended beneficiary. [58] Merely alleging that it was an intended beneficiary is, of course, not sufficient to state a claim. [59] First, MetCap must allege facts demonstrating that both NASC *and* Beverly intended to benefit MetCap. It has not done so. The no-brokers' fee provision makes plain that Beverly is not liable for any broker, finder, banking, or advisory fee and, although it references the MetCap fee, it does so by clarifying that that fee is entirely the responsibility of NASC as the acquiring entity under the Merger Agreement before the Third Amendment. It is the Advisor Contract between the Plaintiffs that is the sole agreement defining the scope [*32] of MetCap's services, the party to whom those services were to be rendered, the consideration it was to receive for those services, and the party responsible for paying it for those services. [60] That the Merger Agreement, a document executed after the Advisor Contract, makes reference to NASC's pre-existing obligation to MetCap does not make MetCap a third-party beneficiary to the Merger Agreement. The pertinent provision in the Merger Agreement recites that no one is entitled to any fee for financial advisor services and the parenthetical simply notes that MetCap is an exception and is entitled to payment of fees by NASC (defined as "Parent"). The parenthetical merely reconfirms NASC's obligation to MetCap under the Advisor Contract and defeats any argument that the Merger Agreement, by its statement that no such obligation exists, eliminated NASC's obligation to MetCap. If MetCap has no rights as a third-party beneficiary under the Merger Agreement before the Third Amendment, it would follow that it has no rights after the Third Amendment because there is no plausible argument that its rights are greater under the Merger Agreement after the Third Amendment than before the Third Amendment. [*33] Also, the financial advisor services rendered by MetCap--up to the time of the Third Amendment-were for NASC, which remains liable--if insolvent--for that obligation.

> [58]  Compl. P 12. For the text of Section 5.10, see Part II, *supra*.
> [59]  *See Delmar News, Inc. v. Jacobs Oil Co.*, 584 A.2d 531, 534 (Del. Super. 1990) ("[A]side from stating a legal conclusion, [merely alleging the status as an intended beneficiary] falls far short of establishing that [one] was an intended beneficiary of the . . . contract.").
> [60]  Although the acquiring entities changed following execution of the Merger Agreement, no assignment or other agreement was executed to assign, transfer, or alter NASC's continuing and freestanding obligation to remunerate MetCap. NASC may have no assets to satisfy its obligation, but that is not a dilemma for this Court to resolve in MetCap's favor on a third-party beneficiary basis. *See Street Search Partners, L.P. v. Ricon Int'l, L.L.C.*, 2005 Del. Super. LEXIS 246, 2005 WL 1953094, at *3 (Del. Super. Aug. 1, 2005) ("The Third Party Beneficiary doctrine is not meant to rescue a sophisticated corporate entity from its contractual appraisal of a business risk.").

Second, to survive the Defendants' motion to dismiss, [*34] MetCap must draw the Court's attention to facts indicating that the parties intended for the parenthetical exception of the MetCap fee from the no-brokers' fee provision to be either a gift or a means of satisfying a pre-existing obligation. Neither is the case. Nowhere in the Complaint is it alleged that Beverly sought to confer a gift to MetCap, and the parenthetical exception language itself does not satisfy NASC's preexisting obligation, but merely restates that NASC alone is responsible for paying a fee it already was committed to paying. [61]