change in ownership or control, receive on or before April 30, 2006, and (z) $10,000,000.

*Section 3.14*   Subsection (B)(2) of the second sentence of Section 6.14 of the Merger Agreement is amended to add a proviso at the end of such section to read as follows:

> ; *provided, however,* that in connection with any change in participant Institutional Lenders pursuant to clause (B)(1) above, if such substituted Institutional Lender requires additional or different contingencies or conditions to its lending obligation, the Company shall be required to grant its consent as a result of such changed contingencies or conditions so long as the effect of such changed contingencies or conditions does not increase the conditionality (taken as a whole) of its commitment beyond that contemplated by the commitment of the previous lender.

*Section 3.15*   The following sentence is added to Section 6.18 of the Merger Agreement immediately following the eighth sentence of such section:

> For the avoidance of doubt, except as set forth in the last sentence of this Section 6.18, the Company acknowledges and agrees that it shall not have the right to draw upon the Letter of Credit unless and until this Agreement permits the Company to retain the Business Interruption Fee in accordance with the terms hereof.

*Section 3.16*   Clause (ii) of the first sentence of Section 8.2 of the Merger Agreement is amended in its entirety to read as follows:

> the Termination Fee and/or Parent Expenses shall be the exclusive remedy of Parent, Merger Sub under circumstances where the Termination Fee and/or Parent Expenses is or are payable by the Company and the Business Interruption Fee shall be the exclusive remedy of the Company under circumstances where the Business Interruption Fee is payable by Parent; *provided, further,* that, subject to the provision of Section 4.3 of the Third Amendment to this Agreement, no Party shall be relieved or released from any liabilities or damages arising out of its willful and material breach of any provision of this Agreement. For the avoidance of doubt, the Parties acknowledge that the Company's sole remedies in the event that the Company does not terminate the Agreement shall be the

11

cure of such breach or other specific performance as contemplated by Section 9.11 hereof, but not money damages.

*Section 3.17*  The first sentence of Section 8.4.1 of the Merger Agreement is amended by replacing the reference therein to "the date hereof" with "November 20, 2005".

*Section 3.18*  The third sentence of Section 8.4.1 of the Merger Agreement is amended in its entirety to read as follows:

> If this Agreement is terminated pursuant to Section 8.1(c)(ii) during the Suspension Period and neither Parent, Merger Sub nor GPH is in material breach of this Agreement at the time of such termination, then the Company shall pay Parent the Parent Expenses, not to exceed $30,000,000.

*Section 3.19*  Section 9.2 of the Merger Agreement is amended by replacing the contact information of NASC and SBEV with the contact information of PSC and GPH, respectively, to read as follows:

> If to Parent or Merger Sub, addressed to it at:
>
> Pearl Senior Care, Inc.
> 140 Pacific Avenue
> San Francisco, CA 94111
> Facsimile: (415) 834-1475
> Email: pearl@fillmorecap.com
>
>
> If to Geary, addressed to it at:
>
> Geary Property Holdings LLC
> 140 Pacific Avenue
> San Francisco, CA 94111
> Facsimile: (415) 834-1475
> Email: geary@fillmorecap.com
>
> With a mandated copy to:

12

Dechert LLP
One Market, Steuart Tower
Suite 2500
San Francisco, CA 94105
Attention: Joseph B. Heil
Facsimile: (415) 262-4555
Email: joseph.heil@dechert.com

And

Troutman Sanders LLP
600 Peachtree Street, Suite 5200
Atlanta, Georgia 30308
Attention: W. Brinkley Dickerson, Jr.
Facsimile: (404) 962-6743
Email: brink.dickerson@troutmansanders.com

*Section 3.20*   The first sentence of Section 9.6 is amended in its entirety to read as follows:

This Agreement, as amended by that certain First Amendment dated as of August 23, 2005 by and among Parent, Merger Sub, the Company and, solely for purposes of Article 3 thereof, SBEV (the "First Amendment"), that certain Second Amendment dated as of September 22, 2005 by and among Parent, Merger Sub, the Company and, solely for purposes of Article 3 thereof, SBEV (the "Second Amendment"), and that certain Third Amendment dated as of November 20, 2005 by and among Parent, Merger Sub, the Company, North American Senior Care, Inc., a Delaware corporation, NASC Acquisition Corp., a Delaware corporation, and solely for purposes of Articles 1, 4 and 5 thereof, SBEV Property Holdings LLC, and Geary Property Holdings LLC (the "Third Amendment" and together with the First Amendment and the Second Amendment, the "Amendments") (together with the Exhibits, Parent Disclosure Schedule, Company Disclosure Schedule and the other documents delivered pursuant hereto), the Commitments and the Confidentiality Agreement constitute the entire agreement of the Parties and supersede all prior agreements and undertakings, both written and oral, between the Parties, or any of them, with respect to the subject matter hereof and thereof and, except as otherwise expressly provided herein, are not (other than in the case of Sections 3.5, 6.8, 6.9 and 6.13) intended to confer upon any other Person any rights or remedies hereunder.

## Article 4

### Other Agreements

*Section 4.1*   The Company acknowledges that Parent has satisfied, or the Company has waived satisfaction of, each and all of the following conditions: (i) Parent has

13

made the Subsequent BIF Deposit or caused the LC Condition Removal to occur in accordance with Section 6.18 of the Merger Agreement, (ii) Parent has delivered to the Company updated Debt Commitment Letters with any due diligence conditions deleted in accordance with Section 6.14 of the Merger Agreement, (iii) Parent has delivered the Solvency Opinion (but not the bring-down thereof) in accordance with Section 6.13 of the Merger Agreement and (iv) Parent has delivered an updated Equity Commitment Letter with the condition set forth in Section 2(iii) of the form attached to the Merger Agreement as Exhibit C removed, in accordance with Section 6.18 of the Merger Agreement.

*Section 4.2* Parent shall have the right in its sole discretion to change or modify in any way the equity and/or membership interests in Parent, Merger Sub and GPH; *provided* that the Equity Commitment Letter is not amended and remains in full force and effect and any such change or modification does not and could not reasonably be expected to result in any significant delay in the Closing (whether as a result of the need to amend and/or refile Governmental Consents other Third Party approvals or otherwise).

*Section 4.3* PSC, PSC Sub and GPH acknowledge that the Company has complied with, or PSC, PSC Sub and GPH have waived satisfaction of, any and all provisions of the Merger Agreement in connection with (i) the settlement or discharge by the Company and/or any of its Subsidiaries prior to the date hereof of any lawsuit or legal claim or action filed or made against the Company and/or any of its Subsidiaries and (ii) any requirements of the Company and/or its affiliates to cooperate prior to the date hereof with Parent, Merger Sub and/or their affiliates in matters relating to the transactions contemplated by the Merger Agreement.

Section 4.4    (a) Each of NASC, NASC Acquisition and SBEV and their affiliates and successors, and each of their officers, directors, employees, managers, shareholders, members, representatives and agents (collectively, the "NASC Releasing Parties") hereby releases and discharges the Company and its affiliates and successors, and each of its officers, directors, employees, managers, shareholders, members, representatives and agents (collectively the "Seller Releasing Parties) from any and all claims, demands, proceedings, causes of action and liabilities whatsoever which any of the NASC Releasing Parties has or may have against the Seller Releasing Parties under or pursuant to the Merger Agreement, arising prior to the date hereof. The foregoing release shall in no way be deemed to constitute a release or waiver by the PSC Releasing Parties as a result of the assignment and assumption provided for herein.

(b) Each of the Seller Releasing Parties hereby releases and discharges the NASC Releasing Parties from any and all claims, demands, proceedings, causes of action and liabilities whatsoever which any of the Seller Releasing Parties has or may have against the NASC Releasing Parties under or pursuant to the Merger Agreement, arising prior to the date hereof.

(c) Each of PSC, PSC Sub and GPH and their affiliates and successors, and each of their officers, directors, employees, managers, shareholders, members, representatives and agents (collectively, the "PSC Releasing Parties") hereby releases and discharges the Seller Releasing Parties from any and all claims, demands, proceedings, causes of action and liabilities whatsoever which any of the PSC Releasing Parties has or may have against the Seller Releasing Parties under or pursuant to the Merger Agreement, arising prior to the date hereof and relating solely to (i) the settlement or discharge by the

15

Company and/or any of its Subsidiaries prior to the date hereof of any lawsuit or legal claim or action filed or made against the Company and/or any of its Subsidiaries, and/or (ii) any requirements of the Company and/or its affiliates to cooperate with Parent, Merger Sub and/or their affiliates in matters relating to the transactions contemplated by the Merger Agreement.

(d) Each of the Seller Releasing Parties (i) hereby releases and discharges each of the PSC Releasing Parties from any and all claims, demands, proceedings, causes of action and liabilities whatsoever which the Seller Releasing Parties has or may have against the PSC Releasing Parties under or pursuant to the Merger Agreement arising prior to the date hereof and relating solely to the obligations of (A) Parent to make the Subsequent BIF Deposit or cause the LC Condition Removal to occur in accordance with Section 6.18 of the Merger Agreement, (B) Parent to deliver to the Company updated Debt Commitment Letters with any due diligence conditions deleted in accordance with Section 6.14 of the Merger Agreement, (C) Parent to deliver the Solvency Opinion (but not the bring-down thereof) in accordance with Section 6.13 of the Merger Agreement and (D) Parent to deliver an updated Equity Commitment Letter with the condition set forth in Section 2(iii) of the form attached to the Merger Agreement as Exhibit C removed, in accordance with Section 6.18 of the Merger Agreement, and (ii) agrees that notwithstanding the assignment and assumption pursuant to Article 1 hereof, the PSC Releasing Parties shall have no liability to or through the Seller Releasing Parties for any acts or omissions of the NASC Releasing Parties prior to the date hereof for which the PSC Releasing Party would be liable as a result of such assignment and assumption.

(e) Each of PSC, PSC Sub, GPH, NASC, NASC Acquisition and SBEV represent and warrant to the Company that it is not aware of any breach by the Company of any representation, warranty, covenant or agreement in the Merger Agreement, as amended hereby, taking into account Section 4.3 hereof.

(f) The Company hereby represents and warrants to PSC, PSC Sub, GPH, NASC, NASC Acquisition and SBEV that it is not aware of any breach by PSC, PSC Sub, GPH, NASC, NASC Acquisition or SBEV of any representation, warranty, covenant or agreement in the Merger Agreement, as amended hereby, taking into account Section 4.1 hereof.

(g) For purposes of this Section 4.4 and for the avoidance of doubt, (i) none of PSC, PSC Sub and GPH shall be considered affiliates or successors of any of NASC, NASC Acquisition or SBEV, and none of NASC, NASC Acquisition or SBEV shall be considered affiliates or successors of PSC, PSC Sub or GPH, (ii) Fillmore Capital Partners, LLC, Fillmore Strategic Investors, L.L.C. and their affiliates shall not be considered NASC Releasing Parties and (iii) any reference in this Section 4.4 to the officers, directors, employees, managers, shareholders, members, representatatives or agents of any Person shall be understood to be a reference to such Persons acting in such capacity.

Section 4.5    The Company hereby releases all obligations under the equity commitment letter delivered in connection with the Second Amendment.

## Article 5

### General Provisions

*Section 5.1*  Except as expressly amended hereby, the Merger Agreement shall remain in full force and effect.

*Section 5.2*  The provisions of Article 9 of the Merger Agreement shall apply to this Third Amendment as if set forth herein in their entirety.

IN WITNESS WHEREOF, the undersigned have caused this Third Amendment to be executed as of the date first written above by their respective officers thereunto duly authorized.

NORTH AMERICAN SENIOR CARE, INC.

By: _____
Name: Mark Goldsmith
Title: President

NASC ACQUISITION CORP.

By: _____
Name: Mark Goldsmith
Title: President

SBEV PROPERTY HOLDINGS LLC

By: _____
Name: Leonard Grunstein
Title: Manager

NY: 189988-5

BEVERLY ENTERPRISES, INC.

By: _____
Name: William R. Floyd
Title: Chairman, President and Chief Executive Officer

**PEARL SENIOR CARE, INC.**

By: */signature/*
Name: Donald E. Silva
Title: Authorized Signatory

**PSC SUB, INC.**

By: */signature/*
Name: Donald E. Silva
Title: Authorized Signatory

**GEARY PROPERTY HOLDINGS LLC**

By: _____
Name:
Title:

PEARL SENIOR CARE, INC.

By: _____
Name:
Title:

PSC SUB, INC.

By: _____
Name:
Title:

GEARY PROPERTY HOLDINGS LLC

By: _____Milton Patipa_____
Name: Milton B. Patipa
Title: Authorized Signatory