# EXHIBIT F

```
646tmeta                        Argument                                      1

         UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF NEW YORK
         ------------------------------x

         METCAP SECURITIES, LLC, NORTH
         AMERICAN SENIOR CARE, INC. and
         NASC ACQUISITION CORP.,

                        Plaintiffs,

                   v.                              06 CV 2336 (RCC)

         PEARL SENIOR, INC., PSC SUB,
         INC., GEARY PROPERTY HOLDINGS,
         LLC, and BEVERLY ENTERPRISES,
         INC.,

                        Defendants.
         ------------------------------x
                                                   New York, N.Y.
                                                   April 6, 2006
                                                   10:00 a.m.
         Before:

                        HON. RICHARD CONWAY CASEY,

                                                   District Judge

                        APPEARANCES

         HELLER, HOROWITZ & FEIT
              Attorneys for Plaintiffs
         BY:  MARTIN STEIN

         DECHERT
              Attorneys for Defendants
         BY:  JOSEPH DONLEY
              ERIC KIRSCH
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
                                                                    2
     646tmeta              Argument
 1              (In open court)
 2        DEPUTY CLERK:  Your Honor, now before the Court this
 3   morning, Metcap Securities, LLC against Pearl Senior,
 4   Incorporated.
 5        Plaintiffs ready?
 6        MR. STEIN:  Yes, your Honor.
 7        DEPUTY CLERK:  Defendants ready?
 8        MR. DONLEY:  Yes, your Honor.
 9        DEPUTY CLERK:  Counsel, please identify yourselves for
10   the record.
11        MR. STEIN:  Martin Stein from Heller, Horowitz & Feit
12   for the plaintiffs.
13        MR. DONLEY:  Joseph Donley from Dechert for the
14   defendants.
15        With me today is Eric Kirsch from my firm who is
16   admitted in New York State but has not yet been admitted to the
17   Southern District.  And I ask the Court's permission that he be
18   permitted to attend today.
19        THE COURT:  Certainly may attend.  Is he going to
20   argue or are you going to argue?
21        MR. DONLEY:  I am going to argue, your Honor.
22        THE COURT:  Very well.
23        All right.  Mr. Stein, baseball season has begun, so
24   you're at the plate
25        MR. STEIN:  Thank you, your Honor.
```

3

646tmeta                           Argument

1           Good morning.  Before your Honor entered the courtroom
2   I handed up to your Honor's clerk a courtesy copy of additional
3   affidavits along with the disk.  These papers were served
4   yesterday on the defendants, and I ask your Honor to consider
5   those additional papers in deciding this motion.
6           Your Honor --
7           THE COURT:  That's not quite the way things are done,
8   Mr. Stein.
9           MR. STEIN:  I understand, and I have to ask
10  permission, and that's why I said --
11          THE COURT:  When did you make this order to show
12  cause?
13          MR. STEIN:  The order to show cause was made
14  approximately a week ago, but I just received the answering
15  papers on Monday.  These papers were served yesterday, two days
16  later.
17          THE COURT:  Is this a reply?
18          MR. STEIN:  Reply, yes, your Honor.
19          THE COURT:  All right.  Go ahead.
20          MR. STEIN:  Your Honor, before I deal with the, quote,
21  merits of the motion for the attachment, I would like to
22  address at the outset the issue of the forum selection clause
23  which the defendants have addressed in their papers.
24          It's the defendants' position that the motion for an
25  attachment must be denied because plaintiff Metcap cannot show

646tmeta                    Argument                              4

probability of success needed for the attachment because they claim that under the forum selection clause in the original merger agreement, this action has to be dismissed because the forum selection clause requires that the action be brought in the Chancery Court of Delaware. I would like to make three very brief points in response.

THE COURT: I'll tell you at the outset, Mr. Stein, when you run to defend against their defense, it gives a very weak impression of the merits of your case.

MR. STEIN: Well, your Honor --

THE COURT: But it's your style, it's your case to win or lose. Go right ahead.

MR. STEIN: Your Honor, I am just trying to anticipate that the Court might believe that there's a threshold issue here.

THE COURT: I may.

MR. STEIN: And I just wanted to nip that in --

THE COURT: But if you go to defense, it shows you're very concerned with it. That's why I think tactically it's a dumb move, but go ahead.

MR. STEIN: I have to be concerned with it, and I would like to address it briefly.

THE COURT: Go ahead.

MR. STEIN: Metcap didn't sign the contract, it's a third-party beneficiary, therefore it's not a signatory to the

```
646tmeta                    Argument                              5
```

1  forum selection clause. And I would say the Second Circuit has
2  recently, as of December of 2005 in the case of *Young v Lee*,
3  said we are not convinced by plaintiff's argument that a forum
4  selection clause must be accorded special weight against
5  non-signatories to the agreement, as Metcap is in this case.

      THE COURT: That kind of quote doesn't sound terribly
7  strong; says they weren't convinced in that case.

      MR. STEIN: I understand, your Honor. That language
9  was cited and quoted with approval by Judge Buchwald, and there
10 is at least one court decision in this district, *Maritime*
11 *Insurance v Harmony*, where Judge Stein, no relation, did not
12 enforce a forum selection clause against a third-party
13 beneficiary.

      Your Honor, I would -- and if the motion is made to
15 dismiss, we would be prepared to address that in detail.

      THE COURT: I would hope you would be.

      MR. STEIN: Your Honor, let me move on to the merits.

      THE COURT: You weren't planning on defaulting; were
19 you?

      MR. STEIN: No, I was not.

      Your Honor, turning to the merits, this case and this
22 motion concern a merger agreement with respect to Beverly
23 Enterprises, the owner of several hundred nursing home
24 facilities around the country. The merger agreement was signed
25 on August 16, 2005. This merger was brought about by the work

646tmeta                    Argument

1  of plaintiff Metcap; it was the procuring cause, it rendered
2  investment and business advice, and if not for Metcap, that
3  merger agreement would not have been signed.
4         Now there's a paragraph in that merger agreement
5  that's paragraph 5.10.  The paragraph says that there are no
6  brokers or investment advisors except for, and this is in a
7  parenthetical, it says except for Metcap and Wachovia, whose
8  fee will be paid by North American Senior Care, which was one
9  of the acquiring companies under that merger agreement.  There
10 was a separate agreement between North American Senior Care and
11 Metcap that the fee that Metcap was to receive was a $20
12 million fee.
13        Now it was anticipated at the time that North American
14 Senior Care would pay Metcap out of the money it raised to make
15 this acquisition.  North American Senior Care was a special
16 purpose entity formed solely for the purposes of the merger.
17 The fee to Metcap was payable upon closing, assuming the merger
18 closed.
19        The merger closed on March 14 of this year, and of
20 course Metcap is trying to collect its fee based on the fact
21 that under the third amendment to the merger agreement, some of
22 the defendants, and specifically Pearl and Geary, assumed the
23 rights and obligations of North American Senior Care under the
24 merger agreement, including the obligation under Section 5.10
25 to pay Metcap and Wachovia.

```
                                                                          7
      646tmeta                  Argument

 1            Now it is the defendant's position that they are not
 2    liable because Section 3.9 of what they claim is the final
 3    version of the third amendment, dated November 20th, contains a
 4    provision which eliminates the parenthetical reference to
 5    Metcap and Wachovia in Section 5.10 of the merger agreement.
 6            Now the following facts I believe are undisputed --
 7            THE COURT:  So the final version had your fee or your
 8    client's fee and Wachovia's eliminated from the agreement; is
 9    that what you're telling me?
10            MR. STEIN:  That is the final version as defendants
11    claim, and that document that the defendants have attached to
12    their affidavit --
13            THE COURT:  But you said the agreement had this in it.
14    Well, apparently it didn't, but you didn't say that up front.
15    You're claiming some prior version or draft of the agreement
16    had such a provision?
17            MR. STEIN:  Yes, your Honor.
18            THE COURT:  And you think it should have been in the
19    final?
20            MR. STEIN:  Yes, and that's --
21            THE COURT:  Did your client sign it?
22            MR. STEIN:  That's the crux of the argument.
23            THE COURT:  Did your client sign it?
24            MR. STEIN:  Your Honor --
25            THE COURT:  When I ask a question, I expect an answer.
```

646tmeta                    Argument

1    MR. STEIN: Your Honor, Metcap didn't sign it. Metcap
2  didn't know about it. North American Senior Care signed a
3  prior version of the document without Section --
4    THE COURT: Who signed the final version, Mr. Stein?
5    MR. STEIN: Your Honor, the signature pages were
6  signed before the final version, including 3 --
7    THE COURT: I don't care how they did it. Was it
8  signed?
9    MR. STEIN: There is a signature, your Honor. There
10 are signatures.
11   THE COURT: Don't dance around me. They signed it
12 then. It may have been signed in advance, but they signed it.
13   MR. STEIN: They signed it in advance without that
14 provision.
15   THE COURT: Okay.
16   MR. STEIN: Your Honor, in any event, that final draft
17 with Section 3.9 in it was delivered at 12:59 a.m. on the
18 morning of November 21st. None of the signatories on the
19 plaintiff's side saw that draft. In fact, that draft,
20 including the new Section 3.9, was not even sent to North
21 American Senior Care. That draft at 12:59 a.m. was delivered
22 after the principals for the plaintiffs had left.
23   THE COURT: But your principals signed it in advance?
24   MR. STEIN: Yes.
25   THE COURT: And did quite a risky thing.

646tmeta							Argument

9

1    MR. STEIN: Your Honor, maybe so. Maybe so. But
2    that's why we're here, your Honor.
3         That final version, including Section 3.9, was not
4    discussed with any of the plaintiffs, but more important,
5    forgetting about the signatories and who signed and when, that
6    final --
7         THE COURT: I don't think we'll do that.
8         MR. STEIN: That final version, your Honor, was not
9    discussed or agreed to by Metcap. Metcap never agreed to that
10   final version, it was never discussed with Metcap. And
11   frankly, that's most important of all, because it's our
12   position that even if all the signatories to the agreement had
13   knowingly signed the draft eliminating Metcap's rights, they
14   could not do that without Metcap's consent.
15        Metcap was a third-party beneficiary under the
16   agreement, it had assented and relied on the original 5.10 in
17   the supplemental affidavit. All of the reliance is set out in
18   detail, including the fact that Metcap paid more than one and a
19   half million dollars in out-of-pocket expenses which the
20   defendants themselves reimbursed to Metcap prior to the
21   closing.
22        Now the defendants attempt to justify what happened --
23        THE COURT: But they're going to say that they paid
24   everything you deserved.
25        MR. STEIN: They say that and them some, your Honor.

646tmeta					Argument

1  Mr. Heil in his affidavit said he noticed the provision in 5.10
2  on the morning of November 21st, he told the lawyer for North
3  American Senior Care, Mr. Dickerson, to take it out of the
4  agreement, and he believed that Mr. Dickerson had the authority
5  to do so.
6            The issues or our response to that is as follows --
7            THE COURT: You're going to tell me who Mr. Dickerson
8  is?
9            MR. STEIN: Mr. Dickerson is an attorney at Troutman
10 Sanders.
11           Mr. Dickerson --
12           THE COURT: Who does that firm represent in this
13 merger?
14           MR. STEIN: Your Honor, that firm -- it's our position
15 that that firm in connection with the events, once the
16 defendants got involved, were --
17           THE COURT: Sir, I asked a simple question. I gave
18 you an admonition ten minutes ago. Just answer my question.
19           MR. STEIN: Your Honor --
20           THE COURT: Who did they represent?
21           MR. STEIN: Your Honor, they represented the parties
22 to the deal. It's our position that Troutman Sanders
23 represented all the parties to the deal as deal counsel, and
24 it's our position that the Dechert firm also represented all
25 the parties to the deal once these other defendants came into

646tmeta                       Argument

1    the picture. That's our position.
2         It's our position that Troutman never represented
3    North American Senior Care. North American Senior Care was not
4    a client of the firm. In fact, Troutman's fees for the work
5    that Mr. Dickerson did on that night, those fees were paid by
6    the defendants, not the plaintiffs.
7         But your Honor, to say that the defendants or
8    Mr. Heil --
9         THE COURT: Did your client refuse to pay the fee?
10        MR. STEIN: No, my client didn't refuse to pay the
11   fee, but it was never part of the deal that my client would pay
12   the fee. That's a different matter. My client was not billed
13   for the fee.
14        Your Honor, to say that Dechert and Mr. Silver noticed
15   Section 5.10 on the morning of November 21st is a frivolous
16   position, with all due respect. In the affidavit or the
17   declaration that I submitted to the Court, we go through the
18   fact that Mr. Silver, who is the principal of the defendants,
19   was involved in this deal for many months. He saw all the
20   drafts of the original merger agreement in August. He and
21   Mr. Heil and Dechert reviewed all of those drafts and all of
22   those drafts contained Section 5.1. So to say that he noticed
23   this three months later just doesn't comport with the rules of
24   probability.
25        In any event, in addition, on September 22nd, the