646tmeta						Argument

1    the hands of Mr. Dickerson. And as we have demonstrated in our
2    papers, this very fact pattern has occurred several times, and
3    the courts are quite clear that when you turn over your
4    signature page to someone, and you leave knowing the deal is
5    not yet complete, which no one disputes is the record here,
6    then you are bound by the decision of that agent. So they
7    can't demonstrate that any one of the three links in their
8    chain they say they need to demonstrate to prove contractual
9    liability in fact exists here.
10          Let me also turn briefly to one final contract point,
11   and that's the issue of whether Metcap is a third-party
12   beneficiary of the merger agreement. And a rudimentary
13   principle of contract law is that in order to have a
14   third-party beneficiary, you need the consent of both sides to
15   the contract; you need the consent here of Beverly and North
16   American. Those are the parties to the merger agreement.
17          When North American says we're going to buy this
18   public company, we're going to pay you $2 million, let's sit
19   down and negotiate this merger agreement, and you have this
20   clause of 5.10, there has to be some evidence that Beverly
21   intended to benefit Metcap. The evidence is just the opposite.
22   The evidence is that Beverly was saying in that clause: If
23   anyone owes money to Metcap, it's North American, it's not us.
24   So you never get to be a third-party beneficiary. So that's a
25   further reason why the whole scaffold collapses.

646tmeta                    Argument

1            Your Honor, let me turn to the other two requirements
2    that they have to demonstrate to obtain an attachment in New
3    York.  New York courts don't simply hand out attachments
4    because the defendants are out of state, as the plaintiffs'
5    papers suggest, the plaintiffs must show a need for the
6    attachment.  And there is simply no need here.  There is no
7    emergency here, your Honor.  Beverly is a company that
8    continues to own 80 nursing homes around the country, it has
9    hard assets.  Pearl Senior just succeeded in closing the $1.6
10   billion acquisition of Beverly.  We submitted affidavits from
11   senior executives of Beverly saying that they can pay this
12   judgment in the very unlikely event that Metcap ever obtained a
13   judgment, and there is simply no showing to the contrary.  So
14   there is no need here.
15           And finally, your Honor, there is also nothing to
16   attach in New York.  There is a bank account at the Bank of New
17   York.  The plaintiffs incorrectly said it was at the Bank of
18   America, but we attached that paying agency agreement to our
19   papers.  And contrary to what Mr. Stein said, what that
20   agreement says, in effect, is:  We, Pearl Senior, have taken
21   over the obligation to purchase Beverly.  We now have a
22   contractual obligation to pay the shareholders of Beverly, and
23   as is customary, we're going to turn the money that is needed
24   to do that over to a bank.  And when we turn the money over to
25   the bank, the bank is going to disperse it to the shareholders.

646tmeta                    Argument

1  And if some shareholder doesn't show up, and that always
2  happens, the money will go to New York State.
3            Now it's true there is power to terminate it at some
4  point, but the termination clause doesn't say the money goes
5  back to Pearl Senior. And at this stage the money can't come
6  back. Our creditors have no right to go after money that has
7  been delivered to a trustee to pay shareholders who we are
8  contractually obligated to pay.
9            So your Honor, in sum, there is no probability of
10 success, there is no need for an attachment, and there was no
11 asset in New York to attach.
12           Thank you, Judge.
13           MR. STEIN: Your Honor, may I respond briefly?
14           THE COURT: Briefly.
15           MR. STEIN: Your Honor, number one, Metcap is
16 asserting three claims here, just to be clear, and I didn't
17 mention that. One is a claim for fraud, based on the events of
18 November 21st, all of which happened without its knowledge; and
19 number two, there is also a claim for unjust enrichment based
20 on the benefits that it conferred to everyone under the deal;
21 and number three, there is a contract claim for reformation to
22 eliminate that new Section 3.9.
23           Secondly, Mr. Donley says that it's only natural that
24 when they become involved in the deal on the weekend of
25 November 18 that they would scrutinize the deal. Your Honor,

1  there was a second amendment on September 20th of that same
2  year, two months earlier, and there was a commitment letter
3  signed by Mr. Silver on behalf of another of his entities,
4  Filmore Partners.  Paragraph one of that commitment letter
5  says:  The sponsor hereby agrees, subject to the terms and
6  conditions set forth herein, to purchase, directly or
7  indirectly, immediately prior to the consummation of the
8  merger, the common and preferred stock of North American Senior
9  Care or S Bev for $350 million.
10          Your Honor, before Mr. Silver signed that commitment
11 letter, didn't he scrutinize all the agreements?  Didn't he
12 know that there was an obligation of North American Senior Care
13 to pay Metcap?  Obviously and clearly he did.  This didn't come
14 up in his own mind for the first time on September 20th.
15          Now going to the events of November 20th and
16 November 21st, it is very clear, that is set forth in the
17 affidavits on that day, Mr. Grunstein and Mr. Goldsmith were
18 talking directly to Mr. Heil and to Mr. Silver.  They were
19 discussing numerous issues.  That is undisputed.  That's in the
20 Grunstein affidavit.  Mr. Silver and Mr. Heil never say they
21 didn't have conversations.  They did not mention this issue.
22          Yes, obviously Mr. Dickerson was negotiating, but he
23 did not have the power to bind.  But more important, there is
24 no claim in any of the papers --
25          THE COURT:  Is he some sort of lesser partner that

646tmeta                         Argument

1    didn't have the power to bind?
2            MR. STEIN:  No, he's a partner, your Honor, there's no
3    question that he's a partner, but he's not a partner in the
4    deal.  He's not a principal in the deal.  He's an attorney who
5    we claim wasn't representing NASC.  But more important, nobody,
6    not even the defendants claim that Mr. Dickerson was
7    representing Metcap.  He was not.  All of this was done without
8    Metcap or any attorney for Metcap having the slightest hint of
9    what was going on.
10           Thank you, your Honor.
11           THE COURT:  Now I take it, Mr. Donley, it is your
12   desire to make a motion for forum selection?
13           MR. DONLEY:  Yes, your Honor.
14           THE COURT:  Dismissed and transferred to Delaware?
15           MR. DONLEY:  Yes, your Honor.
16           THE COURT:  I'm not convinced of the plaintiffs'
17   argument on attachment.  So I think, it seems to me, the first
18   thing to address would be to have you go ahead and make your
19   motion.
20           How much time do you need to make it?
21           MR. DONLEY:  I think we could make it in a week or so,
22   your Honor.
23           THE COURT:  All right.  Since that would be fine, one
24   week, how much time, Mr. Stein, do you need to respond?
25           MR. STEIN:  Your Honor, I am going to be out of the

646tmeta                    Argument

1    country from April 9th through the 23rd for the Passover
2    holiday.
3            THE COURT:  So Mr. Donley, do you want a little more
4    time?  Since no one is here to receive it, you can have two
5    weeks.
6            When would you be prepared to respond, Mr. Stein?
7            MR. STEIN:  Within ten days after I return, your
8    Honor.
9            THE COURT:  And your return date is what, sir?
10           MR. STEIN:  My first day back in the office is
11   April 24th.
12           THE COURT:  So you need about ten days after that.
13   What would that be, Mr. Brantley?
14           DEPUTY CLERK:  May 4th, your Honor.
15           THE COURT:  Okay.  And a week for reply, Mr. Donley?
16           MR. DONLEY:  Yes, your Honor.  Since Mr. Stein will
17   not be able to see our papers until the 24th, could we make
18   them returnable a day or two before that?
19           THE COURT:  I don't know whether he wishes someone in
20   his office to start on it a couple days before.
21           Is the 24th all right with you, Mr. Stein?
22           MR. STEIN:  Your Honor, I would probably be the only
23   one working on it.
24           THE COURT:  So a couple of days would be all right
25   because it wouldn't delay your work then in any way.

646tmeta				Argument

1                 Okay. And what do you want, what's --
2          MR. DONLEY: A week for reply is fine, your Honor.
3          THE COURT: I'll give you until -- the 24th is what
4    day of the week?
5          DEPUTY CLERK: April 24th, your Honor, that's a
6    Monday.
7          THE COURT: Okay. So you should, Mr. Donley, have
8    your papers in the Friday before, which would be the 21st. Is
9    that correct?
10         DEPUTY CLERK: Yes, your Honor.
11         THE COURT: You can have your papers in on the 21st,
12   and if you want ten days, Mr. Stein, what date would that be
13   Mr. Brantley?
14         DEPUTY CLERK: That would be May 1st.
15         THE COURT: Ten days from the 24?
16         MR. DONLEY: From the 24th, that would be May 4th.
17         THE COURT: Okay. And a week after that for reply?
18         DEPUTY CLERK: May 11, your Honor.
19         THE COURT: Okay. Would you just recap so counsel
20   have all three dates?
21         DEPUTY CLERK: Yes, moving papers are due April 24th.
22         THE COURT: No, 21st, the 21st for the papers but
23   May 4th for the answer.
24         DEPUTY CLERK: Okay, May 4th for the answer and
25   May 11th for the reply.

```
                                                                    29
        646tmeta                  Argument

 1          THE COURT:  The extra days there was to allow
 2   Mr. Donley a little more time to get it in, but Mr. Stein can't
 3   see them until the 24th, so we stick that eight or ten days
 4   there after.  So 21st, the 4th and the 11th; correct?
 5          DEPUTY CLERK:  Yes, your Honor.
 6          THE COURT:  All right.  Fellows, is there anything
 7   additional that either counsel would like to be heard on?
 8          MR. STEIN:  Yes, your Honor, two issues.
 9          Your Honor, in the supplemental papers that I served
10   yesterday, I did note that we would, on behalf of plaintiffs,
11   want to make a motion to disqualify the Dechert firm because of
12   their role in the transaction.  We believe that to a certain
13   extent they are representing an interest adverse to the
14   interests they previously recommended, and I would like
15   permission to make that motion.
16          THE COURT:  I'm not sure that you need my permission
17   for that motion, but in any event, I'll allow you to make the
18   motion, but not with regard to the choice of forum.  And you
19   can make it if the case stays here, but I would think it
20   through, Mr. Stein.  I've listened carefully to your argument,
21   and it's not my first cruise, and I've been on the other side
22   of the fence, and it sounds like hard ball leverage, which
23   doesn't play too well in this courtroom.  But if you want to
24   make it, you can make it after we have determined the question
25   of choice of forum.
```

```
       646tmeta              Argument
```

1           MR. STEIN: Okay. Your Honor, in addition, in the
2   meantime, and --
3           THE COURT: But I would think carefully --
4           MR. STEIN: I will, your Honor.
5           THE COURT: -- about hard ball. You may impress your
6   client, but it doesn't impress the Court.
7           MR. STEIN: Your Honor, I'm not looking to impress my
8   client. I'm not going to make it unless I have a good faith
9   basis to believe.
10          THE COURT: Well, I throw that out to you. It's not a
11  style that's very well considered here.
12          MR. STEIN: I appreciate that.
13          The other issue, your Honor, may I serve discovery
14  requests in the interim?
15          THE COURT: No. I don't see anything that is
16  necessary for the simple question of whether it ought to be
17  here or Delaware. If it was being used for that purpose, that
18  may be different, but we're not going to have discovery
19  commence here on a suit that possibly won't be here.
20          MR. STEIN: Okay. Thank you very much, your Honor.
21          MR. DONLEY: Your Honor, one further point. I assume
22  we won't need a premotion conference for the motion to dismiss
23  on the merits on the forum selection clause.
24          THE COURT: You have that permission.
25          MR. DONLEY: Thank you, your Honor.

646tmeta					Argument

1    THE COURT: I'm giving it to you right now so that
2  there won't be a need to make that application. So let's get
3  that out of the way and we'll consider the rest in due course.
4    Okay.
5    MR. STEIN: Your Honor, is there a decision on the
6  motion for an attachment?
7    THE COURT: It's denied. The Court is not satisfied
8  that there is a likelihood of success, and so therefore I think
9  this would go on in its normal course if it were to stay.
10    In any event, we'll go from there.
11    MR. DONLEY: Your Honor, there is one further point.
12  In our motion papers on the 21st, should we limit it to the
13  issue of forum selection or if we have other grounds to dismiss
14  should we present those as well?
15    THE COURT: Let's just deal with the forum.
16    MR. DONLEY: Very well, your Honor.
17    THE COURT: Then if it stays here, we'll deal with
18  anything and everything.
19    MR. DONLEY: Very well, your Honor.
20    THE COURT: But I don't see any need to load up the
21  plate if the case is not going to stay here.
22    MR. DONLEY: Thank you, Judge.
23    THE COURT: And I take it -- the Court, on the surface
24  of things, take it there is some merit to the forum selection.
25  As I said at the outset that when defense counsel or

32

646tmeta                         Argument

1   plaintiffs' counsel races to confront one of your objections in
2   advance of all of his substantive arguments, one senses there
3   is something to it. And so let's deal with that first and
4   we'll go from there.
5           If there's nothing else, gentlemen, the Court will
6   stand in recess.
7                              o0o
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



I (We) hereby certify that the foregoing is a true and accurate transcript, to the best of my (our) skill and ability, from my (our) stenographic notes of this proceeding.

Official Court Reporter