# EXHIBIT I

Case 1:07-cv-03712-RMB-RLE   Document 18-16   Filed 08/31/2007   Page 1 of 6

LEXSEE 2007 DEL. CH. LEXIS 92

MetCap Securities LLC, et al v. Pearl Senior Care, Inc., et al.

C.A. No. 2129-VCN

COURT OF CHANCERY OF DELAWARE, KENT

*2007 Del. Ch. LEXIS 92*

June 5, 2007, Submitted
June 29, 2007, Decided

**NOTICE:**

THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**PRIOR HISTORY:** *MetCap Secs. LLC v. Pearl Senior Care, Inc.,* 2007 Del. Ch. LEXIS 65 (Del. Ch., May 16, 2007)

**COUNSEL:** [*1] Joel E. Friedlander, Esquire, Bouchard Margules & Friedlander, P.A., Wilmington, DE.

Bruce E. Jameson, Esquire, Prickett, Jones & Elliott, P.A., Wilmington, DE.

**OPINION BY:** John W. Noble

**OPINION**

Plaintiff MetCap Securities LLC ("MetCap") has moved, under Court of Chancery Rule 59(f), for reargument of a portion of this Court's May 16, 2007, memorandum opinion and order (the "Memorandum Opinion"). [1] At issue is the Court's conclusion that the Amended Complaint failed to state a claim for unjust enrichment against the Defendants as to the work MetCap performed up to the time of the Third Amendment's execution. Among other reasons, the Court relied upon the fact that prior to the Third Amendment, MetCap's services were performed exclusively for one party--NASC--and that the appropriate path for recovery for work it had performed was under the Advisor Contract with that party.

    1 *MetCap Secs. LLC v. Pearl Senior Care, LLC,* 2007 Del. Ch. LEXIS 65, 2007 WL 1498989 (Del. Ch. May 16, 2007). The Court presumes familiarity with the Memorandum Opinion, which sets forth more fully the factual background of this dispute and whose defined terms are used in this letter opinion for convenience.

\* \* \*

The standard applicable to a motion for reargument [*2] is well-settled. A court may grant reargument when it appears that the Court overlooked or misapprehended facts or principles of law that would have had a "controlling effect" on the outcome of a particular decision. [2] It is not an opportunity, however, to rehash arguments already made or to raise new ones. [3]

    2 *Stein v. Orloff,* 1985 Del. Ch. LEXIS 540, 1985 WL 21136, at *2 (Del. Ch. Sept. 25, 1985); see, e.g., *Dryden v. Estate of Gallucio,* 2007 Del. Ch. LEXIS 71, 2007 WL 1584614, at *1 (Del. Ch. May 25, 2007).
    3 *Miles, Inc. v. Cookson Am., Inc.,* 677 A.2d 505, 506 (Del. Ch. 1995); see also *Lane v. Cancer Treatment Ctrs. of Am., Inc.,* 2000 Del. Ch. LEXIS 44, 2000 WL 364208, at *1-*2 (Del. Ch. Mar. 16, 2000).

\* \* \*

MetCap challenges the Court's application of the unjust enrichment doctrine with respect to the work it performed through the time of the Third Amendment. First, MetCap asserts that the Court erred by focusing on whether MetCap performed its services *at the behest of* any of the Defendants, instead of examining the *circumstances* in which the Defendants obtained the

benefit of MetCap's services. More specifically, MetCap asserts that the Court improperly relied upon an opinion applying New York law, which, it argues, is less friendly to unjust enrichment [*3] claims than is Delaware law. 4 Second, MetCap contends that the Court misunderstood a portion of the tentative draft of the *Restatement (Third) of Restitution and Unjust Enrichment* to which the Memorandum Opinion cited and that it ignored an important allegation made in the Amended Complaint: that absent a recovery from the Defendants, MetCap will not be paid. Moreover, MetCap appears to cite as error the Court's acknowledgement that holding the Defendants liable for work performed prior to adoption of the Third Amendment might violate the parties' expectations that the Defendants would be free from such an obligation. For the reasons set forth below, the Defendants' motion for reargument is denied.

    4   The matter is to be resolved under Delaware law.

1. The Court Did Not Apply an Overly Restrictive Application of the Unjust Enrichment Doctrine to MetCap's Claim

MetCap's criticizes the Court's citation to *Michele Pommier Models, Inc. v. Men Women NY Model Management, Inc.* 5 for the proposition that, in the context of an unjust enrichment claim, a plaintiff must demonstrate that work was performed *for* the defendant's benefit. It argues that the Court, by citing an opinion which applied New [*4] York law, failed to review less restrictive Delaware case law, which permits a court to look to the "'circumstances' under which the defendant obtained the benefit of the plaintiff's services, and not limit its inquiry to whether the work was performed at the behest of the defendant." 6 The problem with MetCap's criticism is twofold: it is premised on an erroneous understanding of the factors to which a court looks when determining whether a party is entitled to an equitable remedy for unjust enrichment and it fails to identify how the New York proposition is materially inconsistent with Delaware law.

    5   14 F. Supp. 2d 331 (S.D.N.Y. 1998), aff'd, 173 F.3d 845 (2d Cir. 1999).
    6   Mot. for Reargument at 4.

MetCap's motion states that the "only" elements of an unjust enrichment claim in Delaware are whether (1) the defendant was enriched, (2) the enrichment was at the plaintiff's expense, and (3) injustice would result from the defendant's retention of the benefit. As the Memorandum Opinion made clear, however, this Court has looked for more than a mere showing of enrichment of one party and impoverishment of another. There must be some relationship or connection between that enrichment and impoverishment. [*5] 7 Without some relationship, it is difficult to understand why the recipient's retention of the benefit would constitute an "injustice."

    7   *MetCap Secs. LLC*, 2007 Del. Ch. LEXIS 65, 2007 WL 1498989, at *5. See, e.g., *Cantor Fitzgerald, L.P. v. Cantor*, 1998 Del. Ch. LEXIS 97, 1998 WL 326686, at *6 (Del. Ch. June 16, 1998) (applying Delaware law) (stating that there must be "a *relation* between the enrichment and impoverishment") (emphasis added).

In expanding upon this necessary "relationship" (and the necessity of determining whether a plaintiff had acted *for* a defendant's benefit), the Court quoted from *Michele Pommier Models:*

> [T]o recover under a theory of quasi contract, a plaintiff must demonstrate that services were performed for the defendant resulting in its unjust enrichment. It is not enough that the defendant received a benefit from the activities of the plaintiff. . . 8

It is not apparent from MetCap's motion, however, how the New York court's opinion offends Delaware law. This is, of course, the motion's central weakness.

    8   *Id.* at *6 (citing *Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc.*, 14 F. Supp. 2d 331, 338 (S.D.N.Y. 1998), aff'd, 173 F.3d 845 (2d. Cir. 1999)).

Nonetheless, MetCap presents the Court with additional [*6] authority in support of its argument that the Court should have looked to the broader circumstances in which Pearl received the benefit of MetCap's services, namely, Silva's alleged awareness that MetCap was expecting a fee. MetCap invokes *Cura Financial Services, N.V. v. Electronic Payment Exchange, Inc.* 9 a decision in which this Court noted the risks of being a "middleman." The Court declined in that case to decide whether a corporation had been unjustly enriched through its dealings with a particular bank when

that banking relationship had been solely cultivated by the plaintiff and restricted pursuant to a non-circumvention agreement. Interestingly, however, the Court found instructive a New York case confronting an analogous situation. [10]

> 9   2001 Del. Ch. LEXIS 132, 2001 WL 1334188 (Del. Ch. Oct. 22, 2001).
> 10  The Court did not characterize New York's approach to unjust enrichment as more restrictive or materially different from Delaware's.

In *Bradkin v. Leverton*, [11] the New York Court of Appeals held that a plaintiff-broker properly pleaded an unjust enrichment claim against the officer of a company that had employed him to find financing deals in exchange for a fee and 10% of the profits from a second-round [*7] of financing. After the broker had received a finder's fee from his employer-company, an officer of the employer-company circumvented the compensation agreement by arranging the second-round of financing himself and keeping the 10% cut of the profits. The *Bradkin* court observed that, "[a]lthough there was no agreement between them, express or implied, the defendant received a benefit from the plaintiffs services under *circumstances* which, in justice, preclude him from denying an obligation to pay for them." [12]

> 11  26 N.Y.2d 192, 257 N.E.2d 643, 309 N.Y.S.2d 192 (N.Y. 1970).
> 12  *Id. at 645* (emphasis added).

MetCap relies upon this language from *Bradkin* as a basis for its argument that the Court erred by not fully appreciating Silva's awareness that MetCap was expecting a fee from NASC. [13] MetCap likens Silva's "self-interested shedding of a contractual obligation [he] previously agreed to assume as the purchaser of NASC" to the inequitable conduct and circumstances found in *Cura* and *Bradkin*." [14]

> 13  It should be noted that MetCap has never provided the Court with authority that a party's mere "awareness" of another party's expectation of a benefit could be the foundation of an unjust enrichment claim.
> 14  Mot. for Reargument [*8] at 6. The transactional documents were, of course, changed to eliminate any such contractual obligation by an attorney representing NASC, among others, as part of the negotiation process.

For MetCap, the challenge with such a comparison is that it ignores precisely what this Court *did* conclude that the Amended Complaint, read under the standard necessarily imposed by Court of Chancery Rule 12(b)(6) did allege: that there was no relationship between MetCap and the Defendants through the execution of the Third Amendment, which is the time period pertinent to this motion. Before the Third Amendment, MetCap worked exclusively for NASC; it owed no allegiance to Pearl (or its related entities) and it conferred no benefit on Pearl (or its related entities). [15] In short, the relationships, or "circumstances," among the parties in *Bradkin* and *Cura* are not found here. [16]

> 15  Neither Silva nor any one of the Defendants was an officer, director, or shareholder of NASC or SBEV, and none of the principals of NASC or SBEV had interests in the Defendant-entities.
> 16  Another reason why *Bradkin* and *Cura* are not factually analogous to MetCap's predicament is that these cases dealt with "middlemen," or brokers. [*9] Here, MetCap was not charged with "finding" a transaction or "marrying" two or more parties together. It served as a "business and financial advisor" to NASC. *See* Advisor Contract at 1. As the Court observed in the Memorandum Opinion, the Advisor Contract was exclusively between MetCap and NASC and "[did] not specify or even contemplate that advisory services would be provided to any party other than NASC." *MetCap Secs. LLC, 2007 Del. Ch. LEXIS 65, 2007 WL 1498989, at *6*. MetCap attempts to recast itself as a "broker/finder/advisor," *see* Mot. for Reargument at 5, but such a characterization was not fairly presented to the Court before this motion.

In any event, the Court identified the period following the execution of the Third Amendment as distinct. Its observation that "MetCap's work was no longer for NASC" but "most likely for the benefit of Pearl" illustrates that due consideration was given to the possible "circumstances" that would have led the Court to conclude that MetCap had also stated a claim for unjust enrichment for the period leading up to the execution of the Third Amendment.

In sum, the motion demonstrates no error in this Court's application of the unjust enrichment doctrine to

the pre-Third Amendment [*10] portion of MetCap's claim. MetCap may not now attempt to relitigate a claim that has already been considered--and rejected--by this Court. [17]

[17] See, e.g., Am. Legacy Found. v. Lorillard Tobacco Co., 895 A.2d 874, 877 n.15 (Del. Ch. 2005); In re ML/EQ Real Estate P'ship Litig., 2000 Del. Ch. LEXIS 47, 2000 WL 364188, at *1 (Del. Ch. Mar. 22, 2000).

2. The Tentative Draft of the *Restatement (Third) of Restitution and Unjust Enrichment* Did Not Have a Controlling Effect on the Court's Decision to Dismiss MetCap's Claim

The second portion of MetCap's motion concerns the Court's citation in a footnote to the tentative draft of the *Restatement (Third) of Restitution and Unjust Enrichment* (the "Tentative Draft"). [18] The Court cited Section 29 of the Tentative Draft to suggest what "more" might be required by a party invoking the doctrine of unjust enrichment than, in the words of Section 110 of the *Restatement (Second) of Restitution*, "merely [alleging] failure of performance by [a] third person."

[18] See MetCap Secs. LLC, 2007 Del. Ch. LEXIS 65, 2007 WL 1498989, at *6 n.48.

MetCap takes issue with two of the Court's observations: first, that if the Tentative Draft were literally applied, MetCap's claim would fail because it never alleged that, [*11] "absent liability in restitution," it would not be paid (*i.e.*, the Amended Complaint made no direct reference to SBEV's inability to pay); second, that it is possible that imposing liability on Pearl would contravene an understanding between the parties that Pearl would be free from having to pay the MetCap fee. MetCap argues that by alleging that it would not receive payment for its work "[a]bsent a recovery . . . against defendants," it encompassed SBEV's inability to pay (as NASC's guarantor). [19] And repeating its allegation that Silva had always known MetCap was expecting a fee from Beverly's acquirer (whoever that might be), MetCap also argues that the Court was misguided in its concern that the Defendants would be responsible for a fee for which everyone knew they were not obligated.

[19] Am. Compl. P 34(g).

MetCap may have a point that it alleged--albeit in a less than precise way [20]--that SBEV could not pay its fee when it alleged--more precisely--that recovery could only be had against the Defendants. [21] Regardless, however, what MetCap fails to acknowledge in its motion is that the Court left little room for doubt as to the limited authoritative weight it was according the Tentative [*12] Draft. The portion of the Memorandum Opinion in which the Court introduces the Tentative Draft--and, briefly, views MetCap's claim within the prism provided by Section 29--is well outside of the Court's analysis of MetCap's claim under controlling legal authority.

[20] The Court puts to the side any concern that MetCap's allegation is one of those "conclusory" allegations that does not preclude dismissal under Court of Chancery Rule 12(b)(6). See, e.g., Woodwerx, Inc. v. Del. Dept. of Trans., 2007 Del. LEXIS 149, 2007 WL 927493, at *3 (Del. Mar. 29, 2007); In re Gen. Motors (Hughes) S'holders Litig., 897 A.2d 162, 167-68 (Del. 2006).

[21] MetCap's insistence that the Court look to the "circumstances" surrounding the Third Amendment and focus on MetCap's perceived lack of any means to obtain payment of its fee, requires the Court to address an issue that it had sought to avoid. The Court, thus, turns to the allegations regarding the conduct of the attorney representing, among others, NASC (but not MetCap) when he made the final revisions to the Third Amendment that eliminated the provision that arguably would have transferred NASC's liability for MetCap's fee to Pearl or its related entities. If that attorney, [*13] negligently or without authorization (and the Amended Complaint at P 23 alleges that he was without authority), revised the Third Amendment to deprive NASC of its entitlement to have its $ 20 million obligation to MetCap paid at closing, then NASC would seem to have a claim against that attorney and his firm through which it would be able to meet its obligations (perhaps reduced by the cost of collection) to MetCap. This observation is not essential to resolution of the motion for reargument, but the Amended Complaint's description of the obvious source of funding induces a skeptical view toward the allegation that NASC is unable to pay, an allegation that is accepted for present purposes under Court of Chancery Rule 12(b)(6). In short, NASC may not now have the funds to meet its

obligation to MetCap, but the Amended Complaint, if its allegations are correct, suggests a way for NASC to recover the needed funds.

Because the Court did not rely on the Tentative Draft for its decision, noted that the Tentative Draft was, not surprisingly, tentative in nature, and acknowledged that the analysis under the Tentative Draft was "less clear" on the question of imposing liability on Pearl for [*14] something the parties, as evidenced by the Third Amendment, may have agreed would not have been Pearl's obligation, the Court concludes that MetCap cannot successfully argue that the Court erred in discussing the Tentative Draft in its Memorandum Opinion.

* * *

MetCap's motion for reargument fails to demonstrate that the Court misapprehended any facts or misapplied any legal principles material to the outcome of the Memorandum Opinion. Accordingly, it is denied.

**IT IS SO ORDERED.**

/s/ *John W. Noble*