because "Mr. Silva's company (Fillmore) was going to purchase the stock of NASC (which had agreed to pay MetCap its fee) and the membership interests of SBEV (which had guaranteed to payment obligations of NASC), and Fillmore would thereby become the parent of the entities which had agreed to pay the MetCap and Wachovia fees." EK Ex. H (FAC) ¶16.

Vice Chancellor Noble granted defendants' motion to dismiss as to MetCap's claim of fraud and third-party beneficiary. *See MetCap Securities LLC v. Pearl Senior Care, Inc.*, No. 2129, 2007 Del. Ch. LEXIS 65 (Del. Ch. May 16, 2007). Regarding the fraud claim, the Delaware court found that there was no fiduciary relationship between MetCap and the defendants, and therefore the defendants had no duty to disclose any change in the Third Amendment to MetCap. *Id.* at *17. The third-party beneficiary claim was dismissed because MetCap failed to allege any facts demonstrating that both North American and Beverly intended to benefit MetCap in the Merger Agreement. *Id.* at **34-35. In addition, the Vice Chancellor dismissed MetCap's claim for unjust enrichment to the extent that MetCap sought recovery for any work performed prior to the Third Amendment. *Id.* at *27. The Delaware court also reluctantly held that North American had stated a cause of action against the defendants for reformation, but noted that North American could only recover if Brink Dickerson was somehow conflicted such that it would be unfair to impute his knowledge to his client, North American. *Id.* at **47-48 n.79 ("NASC's position must be something more than a whine that it did not like what its lawyer did during the final hours of negotiation of the Third Amendment."). The court noted that "[p]arties to a transaction and their counsel must be able to rely— and to act accordingly—on the negotiating authority generally accorded transactional

attorneys. . . . Nothing in this Memorandum Opinion should: be viewed as undercutting that dynamic. The result here is more the product of Court of Chancery rule 12(b)(6) than it is of substantive law." *Id.* at **48-49.

MetCap filed a motion for reargument, contending that the Delaware Chancery Court relied upon an overly restrictive application of the unjust enrichment doctrine and misapplied the tentative draft of the third restatement of restitution. *MetCap v. Pearl Senior Care, Inc.*, No. 2129, 2007 Del. Ch. LEXIS 92, at *1 (Del. Ch. June 29, 2007). EK Ex. I. Vice Chancellor Noble denied the motion. In response to MetCap's contention that it properly alleged that neither North American or SBEV would be able to pay the MetCap fee, the court noted that such recovery could conceivably come from Brink Dickerson. "If [Brink Dickerson], negligently or without authorization (and the Amended Complaint at ¶23 alleges that he was without authority), revised the Third Amendment to deprive [North American] of its entitlement to have its $20 million obligation to MetCap paid at closing, then [North American] would seem to have a claim against [Brink Dickerson] and [Troutman Sanders] through which it would be able to meet its obligations (perhaps reduced by the cost of collection) to MetCap." *Id.* at **12-13 n.21.

C. **Allegations Of The Amended Complaint.**

In sharp contrast to the *MetCap* case, plaintiffs now allege that Dwyer and Grunstein agreed to form a partnership "to use the respective partners' skill, knowledge, expertise, and prior experience and effort to acquire Beverly." Compl. ¶16. Then, according to the complaint, Dwyer and Grunstein invited both Silva and Fillmore Capital to participate as equal partners. *Id.* Predictably, MetCap's role as the "procuring cause"

of the Merger Agreement is not alleged in this case.[6] The only allegation concerning the terms of the purported partnership is that "[t]he partners agreed to share the profits and losses, and if the Partnership was successful in acquiring Beverly, each partner would receive an equal share of Beverly." Compl. ¶16. Noticeably absent is any allegation that any of the partners of the purported partnership agreement contributed any capital to the partnership, or that the partnership ever obtained any assets at all.

Plaintiffs allege that "the partnership would receive its interest in Beverly from the Original Acquirers" (Compl. ¶18), but do not allege that any contract required this vaguely-described result. Instead, plaintiffs merely allege that "[a]t the time the Merger Agreement was signed, it was contemplated that Original Acquirers would meet their financial obligations under the Merger Agreement by means of funds which the partnership would raise...". Compl. ¶18.

Plaintiffs assert that Dwyer caused his company, Capital Funding, to issue a conditional commitment for financing through the Department of Housing and Urban Development ("HUD"). Compl. ¶20(b). According to plaintiffs, if "HUD financing was used, plaintiff Capital Funding would be paid a fee of 2.5% of the amount of the loan and that plaintiff Dwyer would surrender his partnership interest to the remaining partners."

---

[6] The existence of the partnership alleged in this case would contradict the *MetCap* action in its entirety. A fundamental premise of partnership law is that a partner may bind the partnership (and, therefore, the other partners) in conducting business for the partnership. *See, e.g., Royal Bank & Trust Co. v. Weintraub, Gold & Alper*, 68 N.Y.2d 124, 506 N.Y.S.2d 151 (1986). Assuming *arguendo* the truth of the allegations in this complaint, Silva (or his attorney) could legitimately have requested that Troutman Sanders change the Third Amendment because the Original Acquirers and Pearl Senior were entities controlled by the purported partnership. In addition, although in the *MetCap* litigation Grunstein claimed his firm acted as "deal counsel" to all parties, including defendants (EK Ex. F at 10-11), the allegations in this complaint are silent as to Grunstein's compliance with New York's ethics rules regarding transactions between lawyer and client which require client consent in writing after full disclosure. 22 N.Y.C.C.R.

*Id.* Plaintiffs also allege that Dwyer was to be paid a $3.5 million fee when the Beverly merger closed "*irrespective* of whether HUD financing was sought or obtained. *Id.* (emphasis added). Plaintiffs do not identify *who* made these agreements with Dwyer, why the alleged partnership would agree to pay Dwyer $3.5 million to do nothing,[7] or why Dwyer would want to surrender his one-third "share" of a company valued at $2 billion for a two and a half percent commission on a HUD loan.

Plaintiffs allege that the Original Acquirers transferred all of their rights and obligations in the Merger Agreement to defendant Pearl Senior and the related entities pursuant to the Third Amendment. Compl. ¶28. Nonetheless, plaintiffs attempt to distance themselves from the legal ramifications of this assignment by characterizing the Third Amendment as a mere name change in the entity that would acquire Beverly "for reasons unrelated to this lawsuit." *Id.* ¶22. Several days before execution of the Third Amendment, Fillmore Strategic Investors ("FSI") issued an equity commitment letter addressed to Pearl Senior and the related entities. Compl. ¶27. Plaintiffs allege that FSI's financing of Beverly's equity was provided by the Washington State Investment Board ("WSIB"). Compl. ¶25. The amended complaint does not attempt to reconcile the allegation that WSIB actually financed the transaction, with the assertion in the complaint that the plaintiffs are now entitled to "an equal share of" a two billion dollar company without investing any capital whatsoever.

---

§1200.23(a)(3) (West 2007).

[7] The complaint alleges that Dwyer would surrender his partnership interest to the remaining partners upon obtaining HUD financing. Compl. ¶20(b). This necessarily implies that Dwyer's purported agreement is actually with the alleged partnership, and not any defendant.

## Argument

### I. THE FORUM SELECTION CLAUSE REQUIRES FILING IN DELAWARE STATE COURT.

Just as in the *MetCap* litigation, plaintiffs' claims are subject to a mandatory forum selection clause in the Merger Agreement designating the Delaware Court of Chancery as the exclusive forum. Forum selection clauses are presumed valid and are enforced unless it would clearly be "unreasonable and unjust, or [ ] the clause was invalid for such reasons as fraud or over reaching." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Failure to comply with a forum selection clause subjects the plaintiffs to a motion to dismiss. *New Moon Shipping Co. v. MAN B and W Diesel AG*, 121 F.3d 24, 28 (2d Cir. 1997).

The Merger Agreement states that "[a]ny legal action, suit or proceeding arising out of or relating to this agreement or the transactions contemplated hereby shall be brought solely in the Chancery Court of the state of Delaware. . . ." EK Ex. B.[8] Plaintiff Leonard Grunstein executed the Merger Agreement as a principal of SBEV. *Id.* Although neither Leonard Grunstein nor Jack Dwyer signed the Merger Agreement in their individual capacities, closely related parties, such as MetCap, or plaintiffs in this case and the signatories to the Merger Agreement, are bound by forum selection clauses. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses"). All that is required is that the party be "closely

---

[8] The forum selection clause provides that if the Chancery Court determined that it lacked subject matter jurisdiction, the action must then be brought in "the Federal courts of the United States located in the State of Delaware[.]" EK Ex. B. Only after both of these courts have determined that they lack subject matter jurisdiction can the action be brought in the Southern District of New York. *Id.*

related to the dispute such that it becomes foreseeable that it will be bound." *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 CIV. 0767, 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003) (internal quotation marks omitted). A non-party is "closely related" to a dispute if its interests are "directly related to, if not predicated upon" the signatory party's interests or conduct. *Lipcon v. Underwriters at Lloyd's*, 148 F.3d 1285, 1299 (11th Cir. 1998) (quoting *Dayhoff, Inc. v. H.J. Heinze Co.*, 86 F.3d 1287, 1297 (3d Cir. 1996)).

Plaintiffs' claims that they are each entitled to an equal share of Beverly are directly related and predicated upon the rights of the parties to the Merger Agreement and the Third Amendment. Indeed, the only written agreement alleged to govern the purchase of Beverly's equity is the Merger Agreement, which was executed by "special purpose entities, formed to acquire Beverly pursuant to the Merger Agreement." Compl. ¶18. Plaintiffs also allege that the Third Amendment to the Merger Agreement was executed "to carry out the agreement of the partners. . . ." *Id.* ¶22. The alleged partnership's ownership interest in Beverly's equity is thus directly related if not predicated upon the conduct of the various parties who signed the Merger Agreement and Third Amendment.

In their Amended Complaint, plaintiffs attempt to distance themselves from their original allegations in a transparent attempt to avoid the Merger Agreement's forum selection clause. Plaintiffs originally alleged that these special purpose entities were created "pursuant to the partnership agreement" (May 10, 2007 Compl. ¶18) and that through the Third Amendment, "*the partnership caused* the rights of the Original Acquirers under the Merger Agreement to be transferred to and assumed by Pearl, PSC,

-11-

and Geary." *Id.* ¶32. Plaintiffs' amended complaint omits their previous allegation that Leonard Grunstein signed the Merger Agreement on behalf of SBEV. *Id.* ¶17.

Plaintiffs now expressly allege that the "parties did not intend for the jurisdiction provision to apply to disputes between partners. . . ." Compl. ¶19. This obvious attempt to circumvent the forum selection clause is barred by the parol evidence rule. *See, e.g., Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 312 n.37 (S.D.N.Y. 2007) (refusing to consider parol evidence of the intent of the parties when forum selection clause is unambiguous); *see also Pirolo Bros., Inc. v. Maffei*, No. 87 Civ. 7561, 1988 U.S. Dist. LEXIS 11120, at *3 (S.D.N.Y. Oct. 4, 1988) (same).

Plaintiff Grunstein, as a signatory of the Merger Agreement and as a principal of SBEV, is either a direct or closely related party to the Merger Agreement. *See Nanopierce Techs., Inc.*, 2003 WL 22882137 at *6 (chief financial officer of signing corporation is "closely related" to transaction such that it was foreseeable she would be bound to the forum selection clause contained in a purchase agreement). Although the relationship between Dwyer, Capital Funding, and the Original Acquirers is not expressly alleged in the amended complaint, the original complaint alleged that these plaintiffs "caused" the Original Acquirers to enter into the Merger Agreement. May 10, 2007 Compl. ¶18. Further, the Merger Agreement was executed by Dwyer's alleged partner, Grunstein, on business related to the purported partnership. *See* Comp. ¶¶ 17 & 18. The complaint also alleges that the reputation and standing within the financial community of plaintiffs Dwyer and Capital Funding, along with Capital Funding's conditional commitment letter, were instrumental in obtaining funds to complete the Beverly merger. Compl. ¶21. Under such circumstances, plaintiffs Dwyer and Capital Funding are also

closely related. *See Lipcon*, 148 F.3d at 1299 (non-signatory spouses who signed letters of credit in support of transaction are closely related and are bound by the forum selection clause).

## II.   THERE IS NOT COMPLETE DIVERSITY BETWEEN THE PARTIES.

Plaintiffs have stubbornly refused to drop the non-diverse defendant, Geary. Citizenship of a limited liability corporation is determined by reference to the citizenship of each of its members. *See, e.g., Handelsman v. Bedford Village Assoc. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000); *Debary v. Harrah's Operating Co.*, 465 F. Supp. 2d 250, 258 (S.D.N.Y. 2006). One of Geary's members, Beverly Enterprises--Maryland, Inc. is a California corporation with its principal place of business in Maryland. See Declaration of Holly A. Jones; 28 U.S.C. § 1332(c)(1) (West 2007) (a "corporation shall be deemed [ ] a citizen of any state by which it has been incorporated and of the state where it has its principal place of business"). Beverly Enterprises—Maryland, Inc. operates three skilled nursing facilities and one assisted living facility in Maryland, *id.* at ¶4, and does not conduct any other business. *Id.* Hence, all of the corporation's business operations are located in Maryland where the corporation operates these four facilities. *Id.* Beverly Enterprises—Maryland, Inc. has approximately 130 employees at its Maryland facilities. *Id.* All of Beverly Enterprises—Maryland, Inc.'s employees work in its Maryland facilities. *Id.* Plaintiffs were previously informed of the lack of complete diversity, but have proceeded with suing defendant Geary.

As a result of Beverly Enterprises—Maryland, Inc. having its principal place of business in Maryland, defendant Geary and plaintiff Jack Dwyer are residents of the same state. Thus, no subject matter jurisdiction exists and the plaintiffs' complaint should be dismissed on this independent ground.

### III. THERE ARE INSUFFICIENT CONTACTS BETWEEN ANY OF DEFENDANTS AND NEW YORK TO SUPPORT PERSONAL JURISDICTION.

The only connection between New York and this case is the business address of plaintiff Leonard Grunstein. Pursuant to New York's long-arm statute, personal jurisdiction over non-domiciliaries is proper when the party "transacts any business within the state or contracts anywhere to supply goods or services in the state" and the cause of action arises out of these contacts with New York. N.Y. C.P.L.R. 302(a)(1) (McKinney 2007). Plaintiffs have not alleged any transaction of business within New York.

Neither defendant Silva nor any of the employees of defendants traveled to New York to negotiate the Merger Agreement, any amendments to the Merger Agreement, or the alleged oral partnership. Declaration of Ron E. Silva ("Silva Decl.") ¶3; Declaration of Milten Patipa ("Patipa Decl.") ¶2. The complaint alleges that "almost all – if not all – of the meetings of the parties took place in New York," but does not specifically allege that any defendants were present, or that the "meetings" had anything to do with the formation of the purported oral partnership. Compl. ¶19. The fact of the matter is that neither Silva nor any other defendant met with any plaintiff in New York to discuss the supposed partnership. Silva Decl. ¶3; Patipa Decl. ¶2. Although Silva and other employees of Fillmore Capital Partners conducted telephone conversations with Grunstein (and other attorneys at Troutman Sanders in Atlanta, New York, and other cities), phone calls are insufficient to establish jurisdiction in New York unless the calls are for the purpose of initiating a transaction directed at New York State. *See Barrett v. Tema Dev.*, 463 F. Supp. 2d 423, 431 (S.D.N.Y. 2006) (declining to exercise jurisdiction based on telephone and email communications when the transaction's "center of gravity" was not New York); *see also Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y.

1993) ("communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself") (internal quotation marks omitted).

The alleged partnership between Silva, Grunstein, and Dwyer does not establish personal jurisdiction over any of the defendants. Jurisdiction over non-resident partners is only proper when the court has jurisdiction over the partnership itself, and the lawsuit arises from partnership affairs. *Wichita Fed. Sav. & Loan Assoc. v. Comark*, 586 F. Supp. 940, 943-44 (S.D.N.Y. 1984), aff'd, Witchita Fed. Sav. & Loan Assoc. v. Comark, 810 F.2d 1161 (2d Cir. 1986). The complaint does not allege that the partnership registered with the Secretary of State as required under New York law. N.Y. Gen. Bus. Law § 130(1)(a) (McKinney 2007) (failure to register partnership with Secretary of State is a misdemeanor). In addition, Len Grunstein is not a resident or domiciliary of New York. Compl. ¶2. Plaintiffs have failed to allege (and cannot allege) any legal relationship between the Original Acquirers and the purported partnership that would allow jurisdiction to be based upon the business dealings of the Original Acquirers. Indeed, in their attempt to avoid the forum selection clause, plaintiffs have failed to allege *any* relationship between the Original Acquirers and the alleged partnership. The purported partnership, as alleged, was formed only to acquire and distribute the shares of Beverly. Compl. ¶16.

Plaintiffs' second basis for asserting jurisdiction is CPLR section 302(a)(2), which permits a court to exercise personal jurisdiction over a non-domiciliary who "commits a tortious act within the state. . . ." This has been narrowly construed to require