"a showing that the non-domiciliary committed a tortious act *in this State*." *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 464, 261 N.Y.S.2d 8, 24 (1965) (emphasis added); *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997) ("CPLR § 302 (a) (2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act"); *Trump v. Cheng*, No. 602877/05, 2006 N.Y. Misc. LEXIS 2465, at *54-55 (N.Y. Sup. Ct.. July 24, 2006) (same). Because none of the defendants or defendants' employees were present in New York when the alleged events in the complaint occurred (Silva Decl. ¶3; Patipa Decl. ¶2), this Court lacks personal jurisdiction under this prong of the long-arm statute.

## IV. PLAINTIFFS HAVE FAILED TO STATE ANY CLAIM FOR RELIEF ARISING FROM THE ALLEGED PARTNERSHIP AGREEMENT.

### A. Plaintiffs Have Alleged An Unenforceable Agreement To Agree.

The allegations of the complaint are clearly contradicted by plaintiffs' previous sworn statements in the *MetCap* case, where both plaintiffs Dwyer and Grunstein submitted declarations that contradict their allegations here. Dwyer declared that "as to Leonard Grunstein it was *either an investment banking fee or* a 50% partnership interest to Grunstein, *but not both*." EK Ex. E (Dwyer Decl.) at ¶3 (emphasis added). Similarly, Grunstein declared that "Mr. Silva took the position that he would pay the MetCap fee, *or* give me a 50% partnership interest (which he had previously agreed to do), *but not both*." EK Ex. G (Supplemental Declaration of Leonard Grunstein) at ¶26 (emphasis added). Neither plaintiff declared that the parties formed a "partnership," nor mentioned Dwyer's alleged one-third interest in the partnership as described in the instant Complaint. These declarations demonstrate that the parties never agreed, orally or otherwise, to form the partnership that is alleged in this lawsuit. The fact that neither Dwyer nor Grunstein

claimed that Dwyer had a partnership interest during the MetCap case also demonstrates that the allegation of a definitive partnership in this case is a recent invention.

Similarly, plaintiffs' recent letter to this Court also contradicts their allegations that any partnership with respect to purchasing the equity of Beverly was formed. Plaintiffs' July 17, 2007 letter attached an internal Troutman Sanders email referencing an entity (in all likelihood, MetCap) owned by Troutman Sanders lawyers Mark Goldsmith, Lawrence Levinson, and plaintiff Grunstein, and stated:

> "Through an entity that they own, the three of them have a 50% interest in the 'carried interest' in the transaction. Although I do not know the terms of this specific carried interest, typically a carried interest in a deal of this nature would be 20% of the profits from the deal in excess of a threshold rate, say 10% [or] 12% per annum." *See* Plaintiffs' July 17, 2007 letter to the Court at 3-4.

By omitting allegations regarding plaintiffs' relationship with the Original Acquirers to avoid the forum selection clause, plaintiffs have failed to allege any enforceable agreement between the alleged partnership and the Original Acquirers or Pearl Senior, PSC Sub, and Geary. Instead, plaintiffs only allege that the original acquirers "contemplated" financing from the alleged partnership." Compl. ¶18. In addition, the alleged partners' claimed interest in Beverly is only alleged in the vaguest possible terms as "an equal interest in Beverly" Compl. ¶32. There is no allegation describing the partnership's supposed interest in Beverly. Without identifying specific assets, securities, or other instrument, it is apparent that no enforceable agreement was reached.

An unenforceable agreement to agree exists when a material term of an agreement is left open for future negotiations. *Ramone v. Lang*, No. 1592, 2006 Del. Ch. LEXIS 71, at *47 (Del. Ch. Apr. 3, 2006) ("In Delaware, an agreement is not enforceable if 'it is

-17-

nothing but an agreement to agree in the future without any reasonably objective controlling standards'")[9]; *see also Kosower v. Gutowitz*, No. 00 Civ. 9011, 2001 WL 1488440, at *5 (S.D.N.Y. Nov. 21, 2001); *see also Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981) ("it is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable"). Similarly, "where the parties contemplate further negotiations and the execution of a formal instrument, a preliminary agreement does not create a binding contract." *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 548 (2d Cir. 1998). Here, plaintiffs have submitted sworn affidavits, dated after the alleged formation of the partnership (Compl. ¶16), to the effect that the choice between the MetCap fee and an equity share in Beverly had *not* been agreed upon. Similarly, plaintiffs' recent letter (referencing an email dated after the alleged formation of the partnership) details an entirely different agreement regarding some entity owned by Troutman Sanders attorneys that has a 50% share in the "carried interest" of the merger transaction, not the equity of Beverly. This, combined with plaintiffs' extraordinarily vague assertion that they are entitled to "an equal interest in Beverly" clearly establish that the existence of a material term was left open for future negotiations.

---

[9] In diversity actions, a federal court applies the choice of law rules of the forum state. *Silverman v. Worsham Bros. Co.*, 625 F. Supp. 820, 826 (S.D.N.Y. 1986). Although plaintiffs' vague allegations regarding the partnership prevent any meaningful choice of law analysis, the partnership's only alleged purpose was to take possession of Beverly's equity, and then distribute it to the three individual partners upon closing of the Beverly Merger (Comp. ¶16), who are residents of three different states. *Id.* ¶¶2-3, 5. The Original Acquirers, which plaintiff alleges were organized pursuant to the partnership agreement, were previously alleged to be Delaware corporations and LLCs with their principal place of business in New York. *See* EK Ex. H (Del. FAC) ¶2. The Merger Agreement, which governs the instant action, provides that Delaware law should apply.

-18-

Because the plaintiffs have failed to allege a definite agreement capable of enforcement, all plaintiffs' claims must be dismissed. Without an enforceable partnership agreement, there is no basis for claims based on breach of contract, breach of fiduciary duty, or specific performance.[10] *See, e.g., Kosower*, 2001 WL 1488440 at *5 (dismissing breach of contract claim because allegation of partnership agreement was merely an agreement to agree). The claim for constructive trust likewise fails because without a partnership, no confidential or fiduciary relationship could exist. *Schwab v. Denton*, 141 A.D.2d 714, 715 (2d Dep't 1988) (dismissing complaint for failure to allege confidential relationship). Similarly, the unjust enrichment claim fails without a partnership agreement because there is nothing unjust about the defendants' alleged retention of Beverly's equity. *See Rivkin v. Coleman*, 978 F. Supp. 539, 544 (S.D.N.Y. 1997) (dismissing unjust enrichment claim after finding no partnership agreement existed because there was no basis that the property rightfully belonged to plaintiff). In addition, under plaintiffs' own theory, the conversion claim fails without an enforceable partnership agreement because there is no basis to infer plaintiffs' possession, ownership, or control of Beverly's equity. *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 883-84 (1st Dep't 1982) (dismissing action for conversion where plaintiff never had ownership, possession or control of the property).

V. **PARTNERS MAY NOT STATE A CLAIM AGAINST EACH OTHER FOR CONVERSION.**

Plaintiffs' claim for conversion must also be dismissed because partners may not

---

[10] Capital Funding's claim for breach of contract must also be dismissed because no partnership agreement existed. Plaintiffs allege that Dwyer would surrender his partnership interest to the remaining partners upon obtaining HUD financing. Compl. ¶23. As a result, this allegation is

maintain a cause of action against their other partner for conversion. "If one partner betrays his trust, and converts to his own use partnership property, he incurs the usual liability that one partner incurs to another respecting partnership affairs, *i.e.*, to be held liable in an accounting, but he cannot be sued by the other partner for damages in an action for conversion." *Sohon v. Rubin*, 282 A.D. 691, 691-92, (1st Dep't 1953) (emphasis added); *see also Bassett v. American Meter Co.*, 20 A.D.2d 956, 957 (4th Dep't 1964) (partner who converts partnership property for his own use "cannot be sued by the other partner for damages *in an action for conversion*").[11] To the extent this claim is based on conversion of a partnership opportunity, it should be dismissed because "the subject matter of a conversion action must constitute . . . tangible personal property." *Barrett v. Toroyan*, 28 A.D.3d 331, 333 (1st Dep't 2006).

## VI.  PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTY ARE INCONSISTENT WITH THE EXISTENCE OF A PARTNERSHIP.

Plaintiffs' causes of action are inconsistent with the existence of a partnership agreement. A partner may not sue other members of his partnership at law for damages with respect to partnership transactions. *Mack v. White*, 35 Del. 289, 291 (Del. Super. Ct. 1993) ("the general rule [is] that an action at law, as distinguished from an action in equity, is not maintainable between partners with respect to partnership transactions unless there has been an accounting or settlement of the partnership affairs. The existence of this general rule is so well established that it should require no citation of

---

also contingent upon the existence of a partnership agreement.

[11] Although research did not reveal a Delaware case directly on point, the proposition that a partner may not sue another partner for conversion has been recognized by other jurisdictions. *See Stephen v. Phillips*, 689 P.2d 939, 941 (N.M. Ct. App. 1984); *In re Grossman*, 163 B.R. 320, 324-26 (Bankr. N.D. Ill. 1994).

authorities"). Pursuant to this rule, a partner's claims for breach of fiduciary duty or breach of a partnership are premature if an accounting has not been conducted. *Wynne v. Gruber*, 237 A.D.2d 284, 284, 654 N.Y.S.2d 788, 789 (2d Dep't 1997) (dismissing plaintiff's claim for breach of fiduciary duty because accounting had not been conducted); *Goodwin v. MAC Res. Inc.*, 149 A.D.2d 666, 667, 540 N.Y.S.2d 477, 478 (2d Dep't 1989) (dismissing claim for breach of contract and fiduciary duty because accounting had not been conducted).

Capital Funding and Jack Dwyer's claims for breach of contract are also premature. Plaintiffs alleged that "[t]he parties also agreed that irrespective of whether HUD financing was sought or obtained, plaintiff Capital Funding would be paid a fee of $3.5 million when the merger transaction closed." Compl. ¶20(b). Plaintiffs allege that such agreement was "[i]n furtherance of the partnership. . . ." Since the allegations demonstrate that the alleged contract was part of the purported partnership agreement, it is also premature, and Capital Funding (through Dwyer) may not assert breach of contract without seeking an accounting.

### VII. SPECIFIC PERFORMANCE IS UNAVAILABLE BECAUSE THE BEVERLY TRANSACTION WAS ACCOMPLISHED WITH DIFFERENT PARTIES AND INVESTORS.

Even assuming, *arguendo*, that an enforceable partnership agreement has been alleged, the purported partnership agreement provided that "*if the Partnership was successful in acquiring Beverly*, each partner would receive an equal share of Beverly." Compl. ¶16 (emphasis added). No partner ever contributed capital to the partnership, and in fact the partnership is not alleged to have obtained any assets at all. Similarly, the Original Acquirers, who are not alleged to have any relationship with the purported partnership, are without any assets, except for North American's potential cause of action

for negligence against Brink Dickerson and Troutman Sanders. *See MetCap*, 2007 Del. Ch. LEXIS 92, **12-13 n.21. EK Ex. I (opinion re: motion for reargument).

Even if the Original Acquirers had sufficient assets to finance the transaction, the complaint freely admits that WSIB, who is not alleged to be plaintiffs' partner, provided the money to buy Beverly. Compl. ¶25. In contrast, the complaint does not allege that plaintiffs or the Original Acquirers ever invested anything. Although the complaint alleges that at the time the first Merger Agreement was executed, "it was contemplated that Original Acquirers would meet their financial obligations under the Merger Agreement by means of funds which the partnership would raise in order to consummate the transactions, and that the partnership would receive its interest in Beverly from the Original Acquirers" (Compl. ¶20), the complaint does not allege that this occurred.[12] Instead, plaintiffs allege that the Original Acquirers transferred their rights to acquire Beverly to Pearl Senior, PSC, and Geary, and that WSIB provided the equity through FSI, a newly formed entity, to accomplish the Beverly merger transaction.[13] Compl.

---

[12] Under New York law, any partnership would cease to exist when the various corporations were formed to carry out the partnership's purposes. *Weiner v. Hoffinger Friedland Dobrish & Stern, P.C.*, 298 A.D.2d 453, 455, 749 N.Y.S.2d 255 (2d Dep't 2002); *see also Nasso v. Seagal*, 263 F. Supp. 2d 596, 618 (E.D.N.Y. 2003). Thus, once the plaintiffs formed the Original Acquirers for purpose of conducting the partnership's business, "no confidential or fiduciary relationship exists between individuals attempting to carry on a partnership through the instrumentality of a corporation" and the plaintiffs must "suffer the consequences of limited control and must seek their remedies through the corporation." N.Y. Jur.2d Bus. Relationships §1386 (West 2007).

[13] In the *MetCap* litigation, plaintiffs alleged that an entity controlled by Fillmore Capital would acquire North American pursuant to the conditional commitment letter and the Second Amendment to the Merger Agreement. However, the equity commitment was entirely conditional (Compl. ¶21), and as the Delaware Court of Chancery noted, this transaction never occurred. "At some point, especially during the period shortly after the Second Amendment when it was anticipated that Pearl would acquire the stock of NASC, it could be argued that Pearl (and NASC and MetCap) expected that Pearl would become obligated. Pearl, however, did not buy the stock of NASC and, thus, a transaction which never occurred cannot be the basis for

¶22-25.

Despite this, plaintiffs assert they are entitled to two-thirds of Beverly's equity through specific performance. The complaint never alleges legal relationships sufficient to unwind a two billion dollar merger financed by a public entity other than a vague, oral partnership agreement that the deal would be split equally. Specific performance is unavailable when the requested performance is impossible. In particular, "[i]f the performance promised is one that cannot take place without the co-operation of a third person, this will frequently bring the case within the rule against decreeing specific performance." 12-64 Corbin on Contracts § 1170 (2006). Plaintiffs allegations demonstrate that Beverly transaction has already occurred, with WSIB providing the equity investment to accomplish the merger, and accordingly specific performance is impossible to accomplish. *First Allied Conn. Corp. v. Leonard S. Leeds & Parkview Convalescent Ctr, Inc.*, 520 A.2d 1044 (Del. 1987) (corporation could not claim specific performance to force sale of nursing home after third-party purchaser had already purchased the nursing home); *see also Bogdan & Faist, P.C. v. CAI Wireless Sys., Inc.*, 295 A.D.2d 849, 853 745 N.Y.S.2d 92, 96 (2002) (law firm's contract with client requiring client to transfer warrants to buy shares in client was impossible to perform after the client's shares were eliminated by a reorganization).

## VIII. PLAINTIFFS' CLAIM FOR CONSTRUCTIVE TRUST FAILS BECAUSE PLAINTIFFS HAVE NOT ALLEGED ANY TRANSFER.

Pursuant to Delaware law, constructive trust is only an equitable remedy, and not a cause of action. *Teachers' Ret. Sys. v. Aidinoff*, 900 A.2d 654, 670 (Del. Ch. 2006)

---

imposing the liability upon Pearl." *MetCap*, 2007 Del. Ch. Lexis 65, at **25-26 n.48.

("this court cannot impose the remedy of a constructive trust against a party unless that party is properly subject to an order of relief under a recognized cause of action").

New York law requires a transfer made in reliance upon a promise in order to impose a constructive trust. *Bankers Sec. Life Ins. Soc'y v. Shakerdge*, 49 N.Y.2d 939, 940, 428 N.Y.S.2d 623, 624 (N.Y. 1980) ("to establish a constructive trust there must be provided: (1) a confidential or fiduciary relation, (2) a promise, express or implied, (3) a transfer made in reliance on that promise, and (4) unjust enrichment"). Plaintiffs do not allege (nor could they) that they or the Original Acquirers conveyed two-thirds of Beverly's equity to any defendant. Instead, plaintiffs allege that Silva and Fillmore Capital promised to deliver two-thirds of Beverly's equity to plaintiffs and "[i]n reliance on that promise, plaintiffs *agreed to allow* defendants to transfer 100% of the stock of Beverly into entities controlled solely by defendants, and in which plaintiffs had no interest...". Compl. ¶53. This does not sufficiently allege any transfer of title or property from the plaintiffs.

Therefore, even if plaintiffs properly alleged a partnership agreement, they have failed to state a claim for constructive trust under either Delaware or New York law.

IX. **PLAINTIFFS HAVE FAILED TO STATE ANY CLAIM AGAINST THE DEFENDANT ENTITIES THAT ARE NOT ALLEGED TO BE PLAINTIFFS' PARTNERS.**

Plaintiffs assert claims against entities other than Silva and Fillmore Capital Partners based upon a single conclusory allegation that these entities are co-conspirators or agents of the defendants. Specifically, plaintiffs merely allege that:

> Upon information and belief, each and all of the defendants all acted in concert with, as instrumentalities of, and as agents, co-venturers and/or co-conspirators of each other in connection with the conduct of the defendants, as alleged in the complaint.

Compl. ¶29. This paragraph does not allege facts sufficient to state a cause of action against the various entities based on liability as a co-conspirator. *See Stoianoff v. Gahona*, 248 A.D.2d 525, 526 (2d Dep't 1998) ("The allegations in support of the causes of action sounding in collusion, conspiracy, deceptive practices, etc. 'are devoid of a factual basis and are vague and conclusory' and were properly dismissed"); *see also Kilkenny v. Greenberg Traurig, LLP*, No. 05 Civ. 6578, 2006 U.S. Dist. LEXIS 23399, at **15-16 (S.D.N.Y. Apr. 21, 2006). Plaintiffs do not allege an alter ego theory, nor do they allege any facts demonstrating principal agent relationship between the various defendant entities. Therefore, all causes of action against defendants other than Silva and Fillmore Capital Partners should be dismissed on this additional ground.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the amended complaint be dismissed with prejudice in its entirety.

Dated: August 31, 2007

Respectfully submitted,
DECHERT LLP

By: _____
Joseph F. Donley
Eric C. Kirsch
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 698-3500
Fax: (212) 698-3599
*Attorneys for Defendants Ronald E. Silva; Pearl Senior Care, LLC; PSC SUB, LLC; Geary Property Holdings, LLC; Fillmore Capital Partners, LLC; Fillmore Strategic Investors, LLC; Drumm Investors, LLC; and Fillmore Strategic Management, LLC.*