UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LEONARD GRUNSTEIN, JACK DWYER,
and CAPITAL FUNDING GROUP, INC.,

                 07 Civ. 3712

           Plaintiffs,

                 (Berman, J.)

    - against –

RONALD E. SILVA; PEARL SENIOR CARE,
LLC; PSC SUB, LLC; INC.; GEARY
PROPERTY HOLDINGS, LLC,
FILLMORE CAPITAL PARTNERS, LLC;
FILLMORE STRATEGIC INVESTORS, LLC;
DRUMM INVESTORS, LLC; and FILLMORE
STRATEGIC MANAGEMENT, LLC,

           Defendants.

------------------------------------------------------------X

PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO MOTION TO DISMISS

## Table of Contents

Page No.

Preliminary Statement ……………………………………………………………     1

The Amended Complaint ……………………………………………………………     3

Argument …………………………………………………………………………………..     5

    I.    The Forum Selection
        Clause is Inapplicable …………………………………………………..     5

    II.   This Court has Subject
        Matter Jurisdiction Based on
        Diversity of Citizenship …………………………………………………..     9

    III.  The Court has Personal
        Jurisdiction over the Defendants ………………………………………     10

    IV.  Plaintiffs Have Alleged an
        Enforceable Partnership Agreement …………………………………     13

    V.   Plaintiffs May Bring An Action for Conversion ……………………….     14

    VI.  Plaintiffs May Maintain this
        Action in the Absence of a Full Accounting …………………………     15

    VII.  The Amended Complaint States
        a Claim for Specific Performance ……………………………………     16

    VIII. Defendants Are Entitled to the
        Imposition of a Constructive Trust ……………………………………     17

    IX.  The Complaint States Claims for
        Unjust Enrichment and Breach
        of the CFG Agreement …………………………………………………     18

    X.   Plaintiffs Have Stated Claims
        Against the Non-Party Defendants ……………………………………     19

Conclusion …………………………………………………………………………………     19

## TABLE OF AUTHORITIES

CASES                                                                    Page No.

Afloat in France Inc. v. Bancroft Cruises, Ltd., 2003 WL                    12
22400213 (S.D.N.Y. 2003)

Agency Rent A Car System Inc. v. Grand Rent A Car, 98 F.3d                  12
25 (2d Cir. 1996)

Barrett v. Tema Dev., 463 F.Supp. 2d 423 (S.D.N.Y. 2006)                    11

Berkowitz v. Molod, 261 App. Div. 2d 128, 689 N.Y.S.2d 466                  14
(1st Dep't 1999)

Briarpatch Ltd. L.P. v. Pate, 81 F.Supp. 2d 509 (S.D.N.Y. 2000)            14

Deutsche Bank Securities, Inc. v. Montana Board of Investments,          11, 12
7 N.Y. 3d 65, 818 N.Y.S.2d 164 (N.Y. 2006)

Drenis v. Haligiennis, 452 F.Supp. 418 (S.D.N.Y. 2006)                     15

EMF General Contracting Corp. v. Bisbee, 6 App. 3d 45,                      16
774 N.Y.S.2d 39 (1st Dept. 2004)

Felker v. Chipley, 246 Ga. App. 296, 540 S.E. 2d 285 (Ga. 2000)            14

Fischbarg v. Doucet, 38 App. Div. 3d 270, 832 N.Y.2d                        11
164 (1st Dep't 2007)

Gradetech v. American Employers Group, 2006 WL 1806156                      9
(N.D.Cal. 2006)

Hughes v. BCI Interim Holdings, Inc., 452 F.Supp. 2d 290                    11
(S.D.N.Y. 2006)

Kidz Cloz, Inc. v. Officially for Kids, Inc., 320 F.Supp. 2d 164           13
(S.D.N.Y.2004)

Lipcon v. Underwriters at Lloyd's, 148 F.3d 1285                            8
(11th Cir. 1998)

Lugosch v. Congel, 443 F. Supp. 2d 254 (N.D.N.Y.2006)                    14, 15

i

Martha Graham School and Dance Foundation, Inc. v.              17
Martha Graham Center of Contemporary Dance, Inc., 224
F.Supp. 2d 567 (S.D.N.Y. 2002)

Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC,       5, 7, 8
2003 WL 22882137 (S.D.N.Y. 2003)

Oswalt v. Cronk, 195 Iowa 230, 190 N.W. 162 (1922)             14

PDK Labs v. Friedlander, 103 F.3d 1105, (2d Cir. 1997)         11

Peters v. Timespan Communications, Inc., 1999 WL 135231        10
(S.D.N.Y. 1999)

Riss & Co. v. Feldman, 79 A.2d 566 (D.C. Mun. 1951)            14

Rivkin v. Coleman, 978 F.Supp. 539 (S.D.N.Y. 1997)             18

Rohrbaugh v. U.S. Management Inc., 2007 WL 1965417             6
(E.D.N.Y. 2007)

Sealord Marine Co. Ltd. v. American Bureau of Shipping,        7
220 F. Supp. 2d 260 (S.D.N.Y. 2002)

Slaihem v. Sea Tow Bahamas, Ltd., 148 F.Supp. 1343            6
(S.D.N.Y.2001)

Stemcor USA, Inc. v. Golden Management Co., 2001               7
WL 111293 (S.D.N.Y.2001)

Traffix Inc. v. Herold, 269 F. Supp. 223 (S.D.N.Y. 2003)       11

Weingard v. Telepathy, Inc., 2005 WL 2990645 (S.D.N.Y. 2005)   6

Whitney Holdings Ltd. v. Givotowsky, 988 F.Supp.              18
732 (S.D.N.Y.)1997)

Young v. Chiu, 13 M.3d 1232, 831 N.Y.S.2d 357                 16
(Sup. Ct. Queens Co. 2006)

## Preliminary Statement

This memorandum is submitted on behalf of the plaintiffs in opposition to the

motion by the defendants to dismiss the amended complaint.  As will be demonstrated

below, (i) the forum selection clause does not bar this action; (ii) this Court has both

subject matter and personal jurisdiction over the defendants; and (iii) the amended

complaint does state viable claims for relief against all of the defendants.

Preliminarily, however, plaintiffs respond to defendant's lengthy and

disingenuous contention (Defts.' Mem., pages 3-7) that the action commenced by

Metcap, and pending in Delaware (the "Metcap Action")[1] is somehow inconsistent with –

or that it contradicts – the claim of partnership in this action.  Defendants rely on prior

declarations by plaintiffs Grunstein and Dwyer in which defendants claim that is was

plaintiffs' contention that "Grunstein and Silva agreed that upon closing the Beverly

Merger, Grunsein would receive an investment banking fee through plaintiff Metcap or

would receive a 50% partnership interest" (Defts.' Mem., p. 4).  However, as is clear

from a reading of the declarations themselves, plaintiffs were simply restating defendant

Silva's contention that Mr. Grunstein was entitled either to an investment banking fee or

a Partnership interest. [2]

Accordingly, there is no inconsistency whatsoever – and a fortiori, no

contradiction – between the Grunstein and Dwyer declarations in the Metcap Action and

---

[1]  In Delaware, Metcap seeks a fee in connection with its work on the Beverly
acquisition (see Defts.' Ex. H).

[2]  Mr. Dwyer's declaration (Defts.' Ex. E para. 3) states:  "Indeed in a number of
conversations with Mr. Silva and me, he was adamant that as to Leonard Grunstein, it
was either the investment banking fee – or a 50% - partnership interest to Mr.

their own partnership claims in this lawsuit.  Moreover, because neither Grunstein nor

Dwyer were plaintiffs in the Metcap Action, there was no reason for them to discuss or

refer to their partnership claims in their declarations.  Similarly, because the Metcap

Action does not involve the plaintiffs' partnership claims, Judge Casey's comments and

the decision of the Delaware Court on the motions in the Metcap Action (see Defts.'

Mem., pages 5-7), are irrelevant to this case.  Finally, whether Brink Dickerson at

Troutman Sanders improperly made changes to the Third Amendment and improperly

released signatures may affect Metcap's right to an investment banking fee, but it has

nothing to do with the relationship between the partners or any of the issues in this

case.

      In fact, defendant Silva has clearly admitted <u>at least</u> Mr. Grunstein's equity

interest, as set forth in an email sent by Brink Dickerson of Troutman Sanders on

December 29, 2005 (annexed as exhibit 1 to the accompanying declaration of Martin

Stein).  While defendants quote only a small portion of this email on page 17 (without

indicating that Mr. Dickerson was quoting Mr. Silva), the email states, in pertinent part:

> "I had an extensive conversation with Ron Silva, the
> President and owner of Fillmore Capital, effectively the client
> in the Beverly transaction, regarding our bill for the time
> through November 21, 2005 (November 21, 2005 is an
> important date because that is when Fillmore stepped into
> the shoes of the shell company that initially had been formed
> to facilitate the acquisition).
>
>     *          *          *
>
>     Ron's primary problem with the bill is Len's
> [Grunstein's], Larry's [Levinson's] and Mark's [Goldsmith]
> <u>economic interest in the deal</u> and the inclusion of Len's,
> Larry's and Mark's time, ….  Through an entity that they
> own, <u>the three of them have a 50% interest in the "carried</u>

_____

Grunstein, but not both."  Mr. Grunstein's Declaration merely referred to Mr. Dwyer's
declaration (Defts.' Ex. G, para. 26).

> interest" in the transaction. Although I do not know the terms
> of this specific carried interest, typically a carried interest in a
> deal of this nature would be 20% of the profits from the deal
> in excess of a threshold rate, say 10% of 12% per annum.
> For instance, and using round numbers, were the ultimate
> equity investment in the transaction to be, say, $400 million,
> and were the equity interest sold in two years for $880
> million, the profit after a 10% threshold (simple interest for
> simplicity) would be $400 million and the carried interest
> would be 20% of that or $80 million, and Len, Larry and
> Mark would receive one-half of that amount. I believe that
> the actual expectation is that the carried interest ultimately
> will be more than that if things work out as hoped for.

(emphasis supplied). However, Mr. Silva is now attempting to deprive plaintiffs' (as well

as Metcap and others) of any fee, without having to produce a single document or

answering a single question under oath. This is consistent with the allegation in

paragraph 46 of the amended complaint, that the conduct of defendants:

> was intentional and deliberate and part of a pattern by such
> defendants of appropriating the work, property, resources,
> expertise and effort of others in connection with the Beverly
> Transaction for their own benefit, and refusing to pay those
> others for their work, property, expertise and effort.

The motion to dismiss should be denied.

## The Amended Complaint

The amended complaint alleges that, in January 2005, plaintiffs Grunstein and

Dwyer formed a partnership to acquire Beverly and subsequently invited defendant

Silva to join them (para. 16). In June or July 2005, the three partners agreed to share

profits and losses equally, and if the partners were successful, each partner would

receive an equal share of Beverly (Id.).

On August 16, 2005, three special purpose entities (the "original acquirers")

entered into a merger agreement to acquire Beverly (Id. at para. 17). It was

contemplated that the original acquirers would meet their financial obligations by means

3

of funds raised by the partnership and that the partnership would receive its interest in Beverly from the original acquirers (Id. at para. 18).

The partnership raised the funds by, *inter alia*, defendant Silva's company (Fillmore Capital Funding) providing a conditional letter of credit for $350 million (Id. at para. 20); and a conditional commitment of $1.43 billion issued by plaintiff Capital Funding (controlled by plaintiff Dwyer) in connection with contemplated HUD financing, which was used by Silva to raise additional funds (Id. at para. 21).

Pursuant to the agreement of the partners, defendant Silva arranged for the formation of defendants Pearl, PSC Sub and Geary to take the place of the original acquirers (Id. at para. 22); and he formed defendant Fillmore Strategic Investors ("FSI") to take the place of defendant FCP in providing the equity portion for the Beverly transaction (Id. at para. 24). On or about November 18, 2005, FSI issued a commitment letter for $350 million, addressed to Pearl and Geary (Id. at 27), the funding for which was provided by the Washington State Investment Board ("WSIB")(Id. at para. 25).

Paragraph 28 of the Amended Complaint alleges:

> On or about November 20, 2005, a Third Amendment to the Merger Agreement was signed, pursuant to which the rights of the Original Acquirers under the Merger Agreement … [were] transferred to and assumed by Pearl, PSC and Geary. Defendant Silva signed the Third Amendment on behalf of Pearl and PSC. The substitution of these parties was based on Silva's representations and promises that Grunstein, Dwyer and Silva were still partners and that the agreements between plaintiffs and defendant Silva would be carried out by Silva's companies.

The Beverly merger was completed on March 14, 2006 (Id. at para. 29).

Defendants have failed and refused to honor their obligations to plaintiffs, and have not provided them with their equity interest in Beverly or any other compensation (Id. at

4

para. 30).

The amended complaint asserts seven claims for relief: (1) breach of partnership agreement; (2) specific performance; (3) breach of fiduciary duty; (4) conversion; (5) the imposition of a constructive trust; (6) unjust enrichment; and (7) a claim of breach of contract by CFG for $3.5 million based on an agreement described in paragraph 20(b).

## Argument

## I.

### The Forum Selection
### Clause is Inapplicable

Defendants incorrectly contend that "just as in the Metcap litigation, plaintiffs' claims are subject to a mandatory forum selection clause in the Merger Agreement" (Defts.' Mem., page 10). However, in the Metcap Action, plaintiff Metcap asserted a claim as a third party beneficiary under the very merger agreement which contained the forum selection clause (Defts.' Exhibit H, paras. 36-40). Third party beneficiaries are "by definition" bound by the forum selection clause contained in the agreements under which they claim Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC, 2003 WL 22882137 (S.D.N.Y. 2003). This case, on the other hand, involves no such claim.

None of the plaintiffs (and only three of the eight defendants) were parties to the merger agreement. Plaintiffs' claim is based not on the merger agreement, but rather on a partnership agreement which the Amended Complaint alleges was negotiated in June or July 2005 (para. 16), one or two months before the merger agreement was even signed [para. 17]). Moreover, it was not intended or foreseeable that the forum selection clause would apply to disputes between the partners, none of whom were

5

parties to the merger agreement,[3] particularly since virtually all of the work and all of the

meetings in "furtherance of the partnership purpose, goal or agreement" occurred or

was performed in New York, and virtually none in Delaware (para. 19).

Furthermore, plaintiff Grunstein signed the merger agreement, on behalf of

SBEV, which is not a party to this lawsuit. He did not sign the agreement in any other

capacity. Plaintiff Dwyer and Capital Funding Group did not sign the merger agreement

in any capacity. Under the circumstances, the forum selection clause should not apply.

Indeed,

> "In order to bind a non-party to a forum selection
> clause, the party must be 'closely related' to the dispute such
> that it becomes 'forseeable' that it will be bound (citations
> omitted). A non-party is 'closely' related to a dispute if its
> interests are '<u>completely derivative</u>' of <u>and</u> 'directly related
> to, if not predicated upon' the signatories party's interests or
> conduct."

Rohrbaugh v. U.S. Management Inc., 2007 WL 1965417 (E.D.N.Y. 2007); see also

Weingard v. Telepathy, Inc., 2005 WL 2990645 (S.D.N.Y. 2005) at *5. However, a

forum selection clause will not be applied against a non-signatory "business associate"

of a signing party. Slaihem v. Sea Tow Bahamas Ltd., 148 F.Supp. 1343 (S.D. Fla..

2001).

In the present case, the claims asserted by plaintiffs are not "completely

derivative" or "predicated upon the merger agreement. Rather, they derive from an

earlier separate agreement between the partners. Moreover, because the partnership

agreement pre-dated the merger agreement (Amended Complaint, paras. 16-17), it was

not "foreseeable" that the plaintiffs would be bound to litigate in Delaware, since at the

---

[3]  Nobody on the "seller" side of the merger agreement (i.e. Beverly) is a party to this
action.

6

time of the partnership agreement, they did not – and could not – know whether there

would be a merger agreement or a forum selection clause, or what it would provide.[4]

    While the acquisition of Beverly was achieved pursuant to the merger agreement,

that does not make the forum selection clause contained in that agreement applicable to

plaintiffs who were not parties to it.  As this Court held in Sealord Marine Co. Ltd. v.

American Bureau of Shipping, 220 F. Supp. 2d 260 (S.D.N.Y. 2002), in denying a

motion to dismiss based on a forum selection clause:

> "The defendant argues that these claims [asserted by
> plaintiffs'] nevertheless hinge on rights or duties deriving
> from the contract of sale because, without the contract of
> sale, the plaintiffs would not have been required to purchase
> the vessel … and hence, would not have been damaged and
> would have had no claim.  However, this argument
> establishes only that duties arising from the contract of sale
> played a role in the line of causation that lead to the alleged
> damages in this case."

220 F.Supp. at 271.  The same is true of the merger agreement in this case.

    The cases upon which defendants rely are clearly distinguishable.  Nanopierce

Technologies, Inc. v. Southridge Capital Management, 2003 WL 22882137 (S.D.N.Y.

2003) involved a counterclaim brought by Harvest Court against the CFO of NPCT

which was a party to the agreement containing the forum selection clause.  NPCT had

already brought an action against Harvest Court in this Court for breach of the very

agreement containing the forum selection clause.  Harvest Court asserted a

counterclaim for fraudulent inducement against NPCT and its CFO, which the Court

held should remain here, even though the CFO did not sign the agreement.  The Court

---

[4]  Because the amended complaint alleges facts which would render the forum selection
clause inapplicable, plaintiffs submit that the motion to dismiss should not be granted in
the absence of discovery.  Cf. Stemcor USA Inc. v. Golden Management Co., 2001 WL
111293 (S.D.N.Y. 2001).

held that the counterclaim against the CFO was "integrally related to Harvard Court's allegations that NPCT and other fraudulently induced Harvest Court to enter into that contract" containing the forum selection clause. Id. at *6.

In Lipcon v. Underwriters at Lloyd's, 148 F.3d 1285 (11th Cir. 1998) the Court held that certain plaintiffs (the spouses of other plaintiffs) who signed letters of credit (but not the agreements containing the forum selection clauses) were as bound to the forum selection clauses as their co-plaintiff spouses who had signed the documents which contained those clauses. The Court held that the "interests of the spouses in this dispute are completely derivative of the … plaintiffs" who signed the agreement. Id. at 1299.

A common thread in both Nanopierce and Lipcon, was that non-parties to the forum selection clause agreements were aligned on the same side of the lawsuit with parties who were parties to the agreements. A holding that the non-signatories were not bound, would have meant trying the same claims (in one instance by husband and wife and in the other against the CFO and his company) in two different jurisdictions. That is not the case here. Moreover, none of the plaintiffs in this suit were parties to the merger agreement, and these significant factors, present in both Nanopierce and Lipcon are simply absent in this case. Finally, the relationship between plaintiffs and their claim in this case and the agreement containing the forum selection clause, is not nearly as close as in the two cased relied on by defendants.

II.

### This Court has Subject Matter Jurisdiction Based on Diversity of Citizenship

Defendants contest diversity jurisdiction, claiming that both plaintiff Jack Dwyer and Beverly Enterprises Maryland, Inc. ("BEI Maryland")(one of the members of defendant Geary Holdings, LLC)("Geary") are citizens of Maryland.  However, BEI Maryland is a California corporation.  Its principal place of business is in California, and not Maryland, as demonstrated by the following facts.

1.       The Metcap Action was originally commenced in the Supreme Court, New York County and was removed by defendants to this Court, by Notice of Removal filed on March 24, 2006.  (Stein Decl., Ex. 2).  Geary was one of the defendants in that action.  Paragraph 7 of the Notice of Removal, signed by Joseph Donley of Dechert, states:

> Defendant Geary Property Holdings, LLC is a
> Delaware Limited Liability Company and all of its members
> are citizens of Delaware or California.

(Id. at para. 3).  BEI Maryland was a member of Geary at the time the Notice of Removal was signed and filed (see Stein Decl., Ex. 3, cover page and page 24).  Since a corporation is a citizen of its state of incorporation and the location of its principal place of business, the Notice of Removal is a binding judicial admission that the location of BEI's principal place of business is Delaware or California, but not Maryland. Gradetech v. American Employers Group, 2006 WL 1806156 (N.D.Cal. 2006).

2.       The website of the Maryland Department of Assessments and Taxation (Stein Decl., Ex. 4) lists the "Principal Office" of BEI Maryland as Pasadena, California.

3.       The website of the California secretary of state lists the address for BEI

9

Maryland as being in "Fresno California" (Stein Decl., Ex. 5).

    In Peters v. Timespan Communications, Inc., 1999 WL 135231 (S.D.N.Y. 1999)

the Court stated:

> Although Timespan attempts to minimize the
> significance of its admission in the state court action by
> pointing out that it merely designated New York as *a
> principal place of business*, it cannot take the position here
> that New York was *not* its principal place of business.
> Furthermore, the fact that Timespan stated in its answer in
> this action that it "also" has a *principal place of business in
> California* does not negate its admission that its principal
> place of business was New York, for its axiomatic that a
> corporation can only have *one* principal place of business for
> diversity purposes.

Id. at *7.

    The very generalized declaration of Holly Jones submitted in support of the

motion should not be permitted to overcome the force of these admissions.  Not only

does the declaration contradict the documents described above, it provides no

evidentiary facts to support its conclusory allegations.  Nor should defendants be

allowed on reply to submit new material to which plaintiffs have not had a chance to

respond.[5]  The motion to dismiss should be denied, or at the very least, plaintiffs should

be permitted to conduct discovery on this issue.

### Point III

#### The Court has Personal
#### Jurisdiction over the Defendants

On a motion to dismiss for lack of personal jurisdiction:

> "Where, as here, a plaintiff has had no discovery, a
> plaintiff may defeat a motion to dismiss for lack of personal

---

[5]  Moreover, the facts that: (i) the same person signed the Geary operating agreement
on behalf of its more than 30 members (Stein Decl., Ex. 3); and (ii) Ms. Jones is based
in Arkansas, indicates that any business that BEI Maryland does, is controlled outside of
Maryland.

> jurisdiction by pleading a prima facie showing of personal
> jurisdiction over defendants (citations omitted).  At this stage,
> all pleadings and affidavits are construed in plaintiff's favor.

PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).  As set forth in the

accompanying declaration of Leonard Grunstein, defendant Ronald Silva, and agents

came from California to New York on several occasions for purposes of negotiating the

partnership agreement; and to further the partnership goals, by meeting with investment

bankers and other sources of financing for the transaction, as well as with attorneys and

his partners in the transaction.

In addition, Defendants also sent hundreds of emails into New York and made

dozens of telephone calls to New York for the purposes of furthering and obtaining

financing for the $2 billion Beverly acquisition.  Defendants also retained and paid

millions of dollars in legal fees for numerous New York attorneys at Troutman Sanders

to accomplish the acquisition.  These New York contacts are more than sufficient to

sustain jurisdiction under New York's long-arm statute.  Hughes v. BCI Interim Holdings,

Inc., 452 F.Supp. 2d 290 (S.D.N.Y. 2006) (meetings in New York); Traffix Inc. v. Herold,

269 F. Supp. 223 (S.D.N.Y. 2003) (meetings); Deutsche Bank Securities, Inc. v.

Montana Board of Investments, 7. N.Y. 3d 65, 818 N.Y.S.2d 164 (N.Y. 2006) (telephone

call into New York State by sophisticated institutional investor in connection with $15

million transaction sufficient to confer jurisdiction);[6] Fischbarg v. Doucet, 38 App. Div. 3d

270, 272, 832 N.Y.2d 164, 166 (1st Dep't 2007) (telephone calls, email and faxes to

New York lawyer).

------

[6]  Unlike Barrett v. Tema Dev., 463 F.Supp. 2d 423 (S.D.N.Y. 2006, cited by defendants
at page 14), here, New York was a center of gravity with respect to the Beverly
acquisition in terms of financing, investment banking relationships and legal activity
(Grunstein Decl.).

11

Finally, jurisdiction over all of the partners (and their agents) exists by reason of Mr. Grunstein's own substantial activities in New York in connection with partnership business. See, Afloat in France Inc. v. Bancroft Cruises, Ltd., 2003 WL 22400213 at *5 (S.D.N.Y. 2003) ("where a Court has personal jurisdiction over a partnership, either because of the partnership's activities as a whole or the actions of a single partner acting on behalf of the partnership, the court has personal jurisdiction over all of the general partners"). Here, the Court has jurisdiction over the partnership, and therefore Mr. Silva and his agents, by reason of Mr. Grunstein's substantial activities on behalf of the partnership; and the lawsuit has a "substantial nexus" with those activities.[7]  As the Court of Appeals stated in Deutsche Bank, based on all of these contacts, defendant Silva – and therefore the other defendants – "should reasonably have expected to defend [his] actions in New York" 818 N.Y.S.2d at 167.

Defendant Silva does not deny the meetings in New York, the emails, or the telephone calls. He merely states that "neither myself, nor any of the employees of any of the defendants traveled to New York to negotiate the Merger Agreement or the purported partnership agreement alleged in plaintiffs' amended complaint." Even if this statement were true (and for purposes of this motion, Mr. Grunstein's version of the facts must be credited as true), visits to New York even after the formation of the contract "for the purpose of meeting with parties to the contract regarding the relationship," are jurisdictionally significant Agency Rent A Car System Inc. v. Grand

---

[7]  A claim "arises" out of the transaction of business in New York, when it has a "substantial nexus" to the transaction of that business. Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 31 (2d Cir. 1996).

Rent A Car, 98 F.3d 25, 29 (2d Cir. 1996).[8]

## IV

### Plaintiffs Have Alleged an
### Enforceable Partnership Agreement

Paragraphs 16, 18, 20, 21, 22, 32 and 33 of the amended complaint allege that

the parties: (i) expressly agreed to form a partnership for the acquisition of Beverly; (ii)

agreed to share profits and losses; (iii) contributed property, financial resources, effort,

skill and knowledge to the business; and (iv) jointly managed and controlled the

partnership business through their actions in furtherance of the partnership goals.  Such

allegations are sufficient to plead the existence of a partnership under New York law.

Kidz Cloz, Inc. v. Officially for Kids, Inc., 320 F.Supp. 164, 171 (S.D.N.Y. 2004).[9]

Defendants argument that plaintiffs have merely alleged an unenforceable

agreement to agree is not based on the allegations of the amended complaint, but

rather on the prior declarations submitted by plaintiffs Grunstein and Dwyer in the

Metcap action, and the email memorandum from Brink Dickerson (see Defts.' Mem.,

pages 16-19).  However, as has already been discussed (pages 1-2, supra), these

declarations merely recited statements by defendant Silva.  The declarations are in no

way inconsistent with plaintiffs' contention of a partnership, as pleaded in the amended

complaint.  Even assuming arguendo that there is some inconsistency, the appropriate

time for dealing with that is cross-examination, and not on a motion to dismiss.  Plaintiffs

---

[8]  The fact that Milton Patipa of Geary never came to New York is irrelevant, since Mr. Silva's activities were on behalf of all of the defendants.

[9]  There is simply no basis for defendants contention that the Delaware choice of law provision in the merger agreement is applicable (Defts.' Mem., p. 8, note 9).  Plaintiffs were not parties to that agreement, and New York, and not Delaware was a center of gravity for the transaction (Amended Complaint, para. 19).

have stated a claim for breach of the partnership agreement and breach of fiduciary duty.[10]

Finally, even if plaintiffs could not assert a viable claim based on the partnership, that would not affect their other claims which are not based on the partnership relationship.

### V.

### Plaintiffs May Bring an
### Action for Conversion

There are numerous cases holding that a partner may sue another partner for conversion. See, e.g., Berkowitz v. Molod, 261 App. Div. 2d 128, 689 N.Y.S.2d 466 (1st Dep't 1999); Briarpatch Ltd. L.P. v. Pate, 81 F.Supp. 2d 509 (S.D.N.Y. 2000), Felker v. Chipley, 246 Ga. App. 296, 540 S.E. 2d 285 (Ga. 2000); Riss & Co. v. Feldman, 79 A.2d 566 (D.C. Mun. 1951), Oswalt v. Cronk, 195 Iowa 230, 190 N.W. 162 (1922); Lugosch v. Congel, 443 F. Supp. 2d 254, 273 (N.D.N.Y.2006). The law expressly recognizes that such an action may be brought under the following circumstances.

> Such an action will lie, however, where the partnership was formed for a single venture which has terminated leaving no complicated accounts to adjust, where there are no partnership affairs to settle between the partners except the matter with respect to the conversion where the entire firm property was converted, or where one partner does an act with the property inconsistent with the nature of the joint ownership and which operates to destroy the other's interest in the property or the property itself …. [A]nd it has been held that an equitable action of conversion will lie in favor of one partner against his copartner and a third person.

68 C.J.S. Partnership, Section 116.

---

[10]  The claims for imposition of a constructive trust, unjust enrichment and CFG's claim for breach of contract are discussed at pages 17-18, infra.

14

Each of these circumstances applies here. First, the partnership was formed for

a single venture (i.e. the acquisition of Beverly), which was accomplished, leaving no

partnership affairs to settle except for the matter with respect to the conversion.

Second, the entire firm property was converted. Third, defendants destroyed plaintiffs'

entire interest in the property. Fourth, plaintiffs have sued their partners (Silva and

Fillmore) as well as third persons.

## VI

### Plaintiffs May Maintain this
### Action in the Absence of a Full Accounting

In Lugosch v. Congel, 443 F.Supp. 2d 254, 274 (N.D.N.Y. 2006), the Court

rejected the very argument that defendants are making here, namely that in the

absence of an accounting, one partner may not sue another:

> The Court rejects defendants' contention that they are
> entitled to summary judgment on the state law claims
> because there has been no accounting. [I]t is the general
> rule in New York that one partner cannot sue another
> concerning partnership transactions except after a full
> accounting. See St. James Plaza v. Notey, 95 A.D.2d 804,
> 463 N.Y.S.2d 523, 526 (3d Dept. 1983). The rule is not,
> however, mechanically applied where its underlying purpose
> will not be served. See id. Purposes for the rule include
> avoiding judicial management of day-to-day partnership
> affairs, avoiding piecemeal adjustments of the amount due
> each partner, see id., and encouraging partners to "settle
> their differences among themselves or else dissolve and go
> out of business settling their affairs at that time by a final and
> full accounting with all partners joined."

Moreover, under both New York and Delaware law, an accounting is not a pre-requisite

to an action where "only one fully closed but unadjusted transaction is involved." Drenis

v. Haligiennis, 452 F.Supp. 418, 431 (S.D.N.Y. 2006).

The partnership in this case involves only a single transaction – the acquisition of

Beverly – which has closed. Allowing this lawsuit to proceed in the absence of an

15

accounting would not involve the Court in "judicial management of day-to-day partnership affairs" or "piecemeal adjustments of the amount due to each partner," which is what the general rule was designed to avoid. The motion to dismiss based on the absence of an accounting should be denied.

## VII

### The Amended Complaint States
### a Claim for Specific Performance

The amended complaint alleges that plaintiffs have performed their obligations under the partnership agreement (para. 33); that defendants Silva and FCP "on their own and through their control of the other defendants are able to perform their obligations pursuant to the agreement, but have refused to do so" (para. 38); and that plaintiffs have no adequate remedy at law. These are the elements of a claim for specific performance. EMF General Contracting Corp. v. Bisbee, 6 App. 3d 45, 774 N.Y.S.2d 39 (1st Dept. 2004). Plaintiffs have also named as defendants all of the entities whose presence in the lawsuit is required to give plaintiffs the relief they seek (para. 29). The fact that Silva used other entities to achieve his illegal goals does not insulate him (or them) from claims of breach of fiduciary duty, imposition of a construction trust or specific performance. See, e.g., Young v. Chiu, 13 M.3d 1232, 831 N.Y.S.2d 357 (Sup. Ct. Queens Co. 2006) (plaintiff entitled to imposition of constructive trust and one-half ownership of property purchased by defendant partner in the name of entity which defendant partner controlled.)

Defendants' arguments that the partnership is not alleged to have obtained any assets, "raised" funds or received its "interest in Beverly from the Original Acquirors" (pages 21-22), is frivolous. The amended complaint clearly alleges that every step taken towards the consummation of the Beverly acquisition, including the formation of

16

Pearl, PSC Sub and Geary, were pursuant to the agreement of the partners and in furtherance of the partnership goals (see, e.g. paras. 20, 22, 28).

Finally, contrary to defendants' claim, specific performance is not impossible. All of the owners of Beverly are named as defendants. Moreover, depending on how the facts develop, if entities such as WSIB and others who provided financing, are innocent third parties, then the rights of plaintiffs may be subject to the rights of those third parties. However, at the very least, plaintiffs are entitled to specific performance with respect to what Silva and his entities received.[11]

### VIII

### Defendants Are Entitled to the Imposition of a Constructive Trust

Defendants contend that the claim for the imposition of a constructive trust should be dismissed because the amended complaint "does not sufficiently allege any transfer of title or property from the plaintiffs" (page 24). While it is true that the imposition of a constructive trust requires a "transfer," the transfer does not have to be from the plaintiff. Defendants cite no authority for their contention that the transfer must be from the plaintiff, and that is not the law.

On the contrary, courts uniformly impose a constructive trust where a partner or an officer of a corporation usurps a corporate or partnership opportunity by acquiring for himself property from a third party which should have been acquired by the partnership or corporation. A transfer from the plaintiff is not required. See, e.g., Martha Graham School and Dance Foundation, Inc. v. Martha Graham Center of Contemporary Dance,

---

[11] In an effort to show that plaintiffs are overreaching, defendants assert that plaintiffs are claiming "two-thirds of Beverly's equity" (page 24), even though those words do not appear in the amended complaint.

17

Inc., 224 F.Supp. 2d 567 (S.D.N.Y. 2002); Whitney Holdings Ltd. v. Givotowsky, 988

F.Supp. 732 (S.D.N.Y.)1997); Young v. Chiu, supra.

## IX.

### The Complaint States Claims for
### Unjust Enrichment and Breach
### of the CFG Agreement

Defendants do not deny that paragraphs 56 through 58 of the Amended

Complaint allege all of the required elements of a claim for unjust enrichment.  Instead,

they contend that there is "nothing unjust about the defendants' alleged retention of

Beverly's equity" (Defts.' Mem., p. 19).  However, the claim for unjust enrichment is not

dependent on the existence of a partnership agreement.  Rather, the unjust enrichment

claim is based on the inequity of defendants' retaining the benefits of plaintiffs' "work,

property, expertise, effort and financial contributions," without paying for them.  In Rivkin

v. Coleman, 978 F.Supp. 539 (S.D.N.Y. 1997), cited by defendants at page 19, plaintiff

was paid a salary; therefore her claim of unjust enrichment depended on her property

rights.  Here, plaintiffs have expressly alleged that absent payment by defendants,

plaintiffs will have received nothing (para. 57).

The CFG claims for breach of contract are similarly not dependent on the

existence of a partnership agreement.  The consideration for the agreement to pay CFG

was the CFG commitment letter with respect to the HUD Financing (Amended

Complaint, para. 20).  The absence of a partnership interest would not nullify the

agreement to pay CFG.

18

X

### Plaintiffs Have Stated Claims
### Against the Non-Party Defendants

Defendants contention that the claims against the defendants other than Silva and FCP are "based on a single conclusory allegation" in paragraph 29 of the amended complaint (Defts.' Mem., pages 24-25), is factually incorrect. The amended complaint alleges a "factual basis" tying each of the other defendants to the wrongdoing and to defendant Silva (see, e.g., paras. 22, 23, 24, 26, 27, 28 and 29). These allegations distinguish this case from those cited by defendants at pages 24-25.

### Conclusion

For all of the foregoing reasons, the motion to dismiss should be denied. If, however, the motion to dismiss is granted, dismissal should be without prejudice.[12]

Dated:  New York, New York
        September 12, 2007

HELLER, HOROWITZ & FEIT, P.C.

By: _____
        Martin Stein (MS9372)
        292 Madison Avenue
        New York, New York 10017
        212-685-7600

        FENIGSTEIN & KAUFMAN, P.C.
        Ronald Kaufman
        Nina Reis
        1900 Avenue of the Stars, Suite 2300
        Los Angeles, California 90067
        310-201-0777

        *Attorneys for Plaintiffs*

---

[12] The first three grounds for dismissal (the forum selection clause and subject matter and personal jurisdiction) do not address the merits. Any dismissal based on the other grounds may be cured by amendment which should be freely granted.

19