UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
LEONARD GRUNSTEIN, JACK DWYER,
and CAPITAL FUNDING GROUP, INC.,

        Plaintiffs,

   -against-

RONALD E. SILVA; PEARL SENIOR CARE,
LLC; PSC SUB, LLC; GEARY PROPERTY
HOLDINGS, LLC; FILLMORE CAPITAL
PARTNERS, LLC; FILLMORE STRATEGIC
INVESTORS, LLC; DRUMM INVESTORS,
LLC; and FILLMORE STRATEGIC
MANAGEMENT, LLC,

        Defendants.

------------------------------------- X

07 Civ. 3712 (RMB) (RLE)

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

DECHERT LLP

30 Rockefeller Plaza
New York, New York 10112
Tel:  (212) 698-3500
Fax: (212) 698-3599

One Maritime Plaza
San Francisco, California  94111
Tel:  (415) 262-4500
Fax: (415) 262-4555

*Attorneys for Defendants*
*Ronald E. Silva; Pearl Senior Care, LLC;*
*PSC SUB, LLC; Geary Property Holdings,*
*LLC; Fillmore Capital Partners, LLC;*
*Fillmore Strategic Investors, LLC; Drumm*
*Investors, LLC; and Fillmore Strategic*
*Management, LLC*

Case 1:07-cv-03712-RMB-RLE    Document 26    Filed 09/26/2007    Page 2 of 14

-i-

**TABLE OF CONTENTS**

Page

ARGUMENT ................................................................................................................ 1

    I.    THE FORUM SELECTION CLAUSE REQUIRES FILING IN DELAWARE STATE COURT ............................................................... 1

    II.    THERE IS NO SUBJECT MATTER JURISDICTION BECAUSE THERE IS NO COMPLETE DIVERSITY BETWEEN THE PARTIES ............. 4

    III.    THERE ARE INSUFFICIENT CONTACTS BETWEEN ANY OF DEFENDANTS AND NEW YORK TO SUPPORT PERSONAL JURISDICTION ................................................................................................ 6

    IV.    PLAINTIFFS HAVE ALLEGED NO MORE THAN AN UNENFORCEABLE AGREEMENT TO AGREE ............................................. 8

    V.    PLAINTIFFS FAIL TO ADDRESS THE OTHER SUBSTANTIVE DEFECTS WITH THE AMENDED COMPLAINT ............................................ 9

CONCLUSION ............................................................................................................. 10

## TABLE OF AUTHORITIES

Page

### Cases

*A.D.M. Club Mgmt. Sys., Inc. v. Gary Jonas Computing, Ltd.*,
  No. Civ. 05-3943 (HAA), 2006 U.S. Dist. LEXIS 66904 (D.N.J. Sept. 18, 2006) .................... 3

*Afloat in France, Inc. v. Bancroft Cruises Ltd.*,
  No. 03 Civ. 917 (SAS), 2003 WL 22400213 (S.D.N.Y. Oct. 21, 2003) .................................. 7

*Agency Rent A Car Sys. Inc. v. Grand Rent A Car Corp.*,
  98 F.3d 25 (2d Cir. 1996) ................................................................................................ 7

*Barret v. Tema Dev.*,
  463 F. Supp. 2d 423 (S.D.N.Y. 2006) ............................................................................... 7

*CMNY Capital, L.P. v. Perry*, No. 97 Civ. 6172 (MBM),
  1998 U.S. Dist. LEXIS 3523 (S.D.N.Y. Mar. 23, 1998) ............................................................ 6

*Curley v. Brignoli, Curley & Roberts Assocs.*,
  915 F.2d 81 (2d Cir. 1990) ............................................................................................. 5

*Deutsche Bank Secs., Inc. v. Montana Bd. of Invs.*,
  7 N.Y.3d 65, 818 N.Y.S.2d 165 (2006), *cert. denied*, 927 S. Ct. 832,
  166 L. Ed. 2d 665 (2006) ................................................................................................ 7

*Fischbarg v. Doucet*,
  38 A.D.3d 270, 272, 832 N.Y.S.2d 164 (1st Dep't 2007) ........................................................ 7

*Gradetech, Inc. v. Am. Employers Group*,
  No. C 06 02991 WHA, 2006 WL 1806156 (N.D. Cal. June 29, 2006) ..................................... 5

*Hughes v. BCI Int'l Holdings Inc.*,
  452 F. Supp. 2d 290 (S.D.N.Y. 2006) ............................................................................ 6, 7

*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of
  Contemporary Dance, Inc.*, 224 F. Supp. 2d 567 (S.D.N.Y. 2002) ........................................... 9

*Mende v. Milestone Tech., Inc.*,
  269 F. Supp. 2d 246 (S.D.N.Y. 2003) ............................................................................... 6

*MetCap Securities LLC v. Pearl Senior Care, Inc.*,
  No. 2129, 2007 Del. Ch. LEXIS 65 (Del. Ch. May 16, 2007) ............................................. 1, 3

*Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*,
  No. 02 CIV. 0767, 2003 WL 22882137 (S.D.N.Y. Dec. 4, 2003)........................................ 2, 3

*Peters v. Timespan Commc'ns, Inc.*,
  No. 97 CIV. 8750 (DC), 1999 WL 135231 (S.D.N.Y. Mar. 12, 1999) ...................................... 5

*Sealord Marine Co. v. American Bureau of Shipping*,
  220 F. Supp. 2d 260, 264 (S.D.N.Y. 2002) ................................................................................ 2

*Slaihem v. Sea Tow Bahamas Ltd.*,
  148 F. Supp. 2d 1343 (S.D. Fla. 2001) ....................................................................................... 2

*Traffix, Inc. v. Herold*,
  269 F. Supp. 2d 223 (S.D.N.Y. 2003) ........................................................................................ 7

*Trump v. Cheng*,
  No. 602877/05, 2006 N.Y. Misc. LEXIS 2465 (N.Y. Sup. Ct. July 24, 2006) .......................... 7

**Statutes and Rules**

28 U.S.C. § 1332 (c)(1) (West 2007) ................................................................................................ 4

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 1, 8

NY Gen. Oblig. Law § 5-701(a)(10) (McKinney 2007) .................................................................. 9

**Other**

68 C.J.S. *Partnership* § 116 ............................................................................................................ 9

15 Moore et al., *Moore's Federal Practice* § 102.13 (3d ed. 2007) ................................................ 5

This case does not belong in this Court.  There is no subject matter jurisdiction because there is no complete diversity due to the principal place of business of Beverly Enterprises-Maryland, Inc. (a member of Defendant Geary Property Holdings, LLC) in Maryland, the same state as the citizenships of plaintiffs Dwyer and Capital Funding Group, Inc.  Compl. ¶¶3-4.  In addition, the forum selection clause in the Merger Agreement requires that this case, like the companion *MetCap* litigation, be litigated in Delaware, and there is no personal jurisdiction over Defendants in New York.  If the Court decides to address the substantive sufficiency of the Amended Complaint (now, the sixth attempt to articulate a theory of recovery so far in this dispute), the Court should grant the Rule 12(b)(6) motion to dismiss.

**Argument**

**I.    THE FORUM SELECTION CLAUSE REQUIRES FILING IN DELAWARE STATE COURT.**

There is no good reason this Court should allow parallel litigation in New York regarding the same subject matter, economic interests and attorneys as the *MetCap* case in Delaware.[1] Plaintiffs allege that a purported oral partnership existed for the sole purpose of acquiring Beverly, and that the Merger Agreement was "executed to carry out the agreement of the partners . . . ."  Compl. ¶22.  Plaintiff Grunstein signed the Merger Agreement on behalf of SBEV, one of the Original Acquirers.  Opp. at 6.  Moreover, plaintiffs also allege that they caused the Original Acquirers to transfer their rights and obligations under the Merger Agreement by effectuating the Third Amendment to the Merger Agreement.  Opp. at 4 (quoting Compl. ¶ 28).  Plaintiffs also assert that "every step taken towards the consummation of the Beverly acquisition . . . [was] pursuant to the agreement of the partners and in furtherance of the partnership goals."  Opp. at 16-17.  Despite these critical admissions showing the overlap

---

[1] In the Delaware action, the Vice Chancellor already has decided a heavily briefed motion to dismiss and a motion for reconsideration in lengthy and carefully reasoned written opinions.  *See MetCap Securities LLC v. Pearl Senior Care, Inc.*, No. 2129, 2007 Del. Ch. LEXIS 65 (Del. Ch. May 16, 2007); 2007 Del. Ch. LEXIS 92 (Del. Ch. June 29, 2007).  Discovery, on parallel tracks with discovery in this case, is pending in that Court.  Reply Declaration of Eric C. Kirsch (hereinafter "Reply EK") Ex. A (*MetCap* plaintiffs' requests for production of documents requesting all documents concerning Grunstein and Dwyer).

between this case and the Delaware action, plaintiffs contend that the forum selection clause in the Merger Agreement (and its Third Amendment) -- the only written agreement alleged to accomplish the alleged partnership's purpose -- does not require them to proceed in Delaware.

Not surprisingly, plaintiffs' authorities do not support their argument. In *Slaihem v. Sea Tow Bahamas Ltd.*, the court refused to enforce a forum selection clause against a defendant who "was not involved in drafting the contract and did not agree to any of the contract's terms." 148 F. Supp. 2d 1343, 1346 (S.D. Fla. 2001). Further, the court's reluctance to enforce the forum selection clause in *Slaihem* was based in part on the fact that the plaintiffs were attempting to enforce the forum selection clause against a defendant as "the sole basis for exercising personal jurisdiction over the defendant." *Id.* at 1348. That issue does not exist in this case, and plaintiffs here have alleged that at least one plaintiff (Grunstein) was intimately involved in the drafting and signing of the Merger Agreement.

Plaintiffs' primary authority, *Sealord Marine Co. v. American Bureau of Shipping*, is even more inapposite. In *Sealord*, the defendant performed an inspection of a boat that plaintiff later purchased. 220 F. Supp. 2d 260, 264 (S.D.N.Y. 2002). Plaintiff sued the defendant boat inspector for negligence. *Id.* at 264. The defendant boat inspector attempted to enforce the forum selection clause in the contract for the sale of the boat contending that "without the contract of sale, the plaintiffs would not have been required to purchase the vessel upon receiving the allegedly improper certification, and hence, would not have been damaged and would have had no claim." *Id.* at 271. The *Sealord* court rejected that theory, concluding that plaintiff was suing in tort for breach of duties entirely outside those imposed by the sales contract. *Id.* In contrast, plaintiffs allege that the Merger Agreement (including the Third Amendment) was effectuated by the partnership and to accomplish the only purpose of the partnership. Compl. ¶¶16-18, 28.

Plaintiffs' attempt to distinguish *Nanopierce* and *Lipcon* on the basis that "non-parties to the forum selection clause agreements were aligned on the same side of the lawsuit with parties who were parties to the agreements" (Opp. at 8 (emphasis omitted)) is not a distinction from this

case, much less a distinction with a difference. To begin with, neither opinion considered this factor in reaching its conclusion that closely related parties are bound by forum selection clauses. On the contrary, both opinions recognize the wide variety of situations in which courts will bind non-parties to a forum selection clause, including third-party beneficiaries to a contract, complaints against individuals which are 'completely dependent' on the complaints against the principals, non-party directors of a party, and other such "closely related" persons. *See, e.g., Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 CIV. 0767, 2003 WL 22882137, at *5-*6 (S.D.N.Y. Dec. 4, 2003). Plaintiff Grunstein, as principal of SBEV, signed the Merger Agreement to effectuate the alleged core purpose of the partnership. Plaintiff Dwyer allegedly provided a commitment letter to allow the partnership, through the Merger Agreement, to achieve its core purpose.[2] Thus, plaintiffs are "closely related" persons and bound by the forum selection clause.

In their efforts to avoid the forum selection clause, plaintiffs attempt to distinguish its application in the *MetCap* action because "MetCap asserted a claim as a third party beneficiary . . ."[3] Opp. at 5 (emphasis omitted). However, by alleging that the Merger Agreement and Third Amendment were executed to benefit the alleged partners (s*ee*, *e.g.,* Compl. ¶¶18, 28), plaintiffs' allegations place the alleged partnership in a position analogous to that of a third party beneficiary. Plaintiffs cannot avoid the effect of these allegations merely by choosing not to characterize themselves as formal third party beneficiaries here.[4]

Plaintiffs contend that it was not "intended or foreseeable" that the forum selection clause would apply to the purported oral partners, but fail to even address defendants' authority to the effect that such "legal argument by allegation" is prevented by the parol evidence rule. *See*

---

[2] If the Court finds the forum selection clause applies to only one plaintiff, it should dismiss as to that plaintiff. *See, e.g., A.D.M. Club Mgmt. Sys., Inc. v. Gary Jonas Computing, Ltd.*, No. Civ. 05-3943 (HAA), 2006 U.S. Dist. LEXIS 66904, at *20-*21 (D.N.J. Sept. 18, 2006) (dismissing only one of the plaintiffs because of a forum selection clause).

[3] MetCap's claim as a supposed third party beneficiary was dismissed by the Delaware Court of Chancery. *MetCap*, 2007 Del. Ch. Lexis 65, at *36.

[4] In any event, formal third-party beneficiary status is not a requirement for applying a forum selection clause. *See Nanopierce*, 2003 WL 22882137, at *6.

Motion to Dismiss ("MTD") at 12. Plaintiffs' contend that the forum selection clause is inapplicable because none of the supposed partnership's work was performed in Delaware. However, none (or very little) of the work related to the Beverly *merger* (as opposed to the purported *partnership)* occurred in Delaware, yet the Merger Agreement unambiguously selects Delaware as the forum for disputes.

**II.    THERE IS NO SUBJECT MATTER JURISDICTION BECAUSE THERE IS NO COMPLETE DIVERSITY BETWEEN THE PARTIES.**

Plaintiffs do not dispute the fact that *all* of Beverly Enterprises-Maryland, Inc.'s operations occur in Maryland, or that the corporation's principal place of business is in fact Maryland. Declaration of Holly A. Jones ¶4. Nor do plaintiffs dispute that Beverly Enterprises-Maryland, Inc. is a member of defendant Geary Property Holdings, LLC (*id.*) and its principal place of business is determinative of whether there is complete diversity justifying subject matter jurisdiction in this case.[5] Instead, plaintiffs contend that a statement in the notice of removal in a predecessor to the *MetCap* action that all of Geary's thirty members are *citizens* of Delaware or California is binding as a judicial admission that Beverly Enterprises-Maryland, Inc.'s *principal place of business* is Delaware or California. Opp. at 9. Plaintiffs' argument completely ignores the fact that corporations are citizens of both the state of incorporation and the state of their principal place of business. 28 U.S.C. § 1332 (c)(1) (West 2007). The notice of removal in the predecessor action[6] addressed the citizenship of the defendants with regards to the citizenship of

---

[5] Plaintiffs were warned of this no complete diversity problem in connection with the pre-motion conference before Plaintiffs filed an amended complaint, which persisted in including the non-diverse defendant Geary Property Holdings, LLC.

[6] Defendants removed the predecessor action in response to plaintiffs' application for an order of attachment. *See* Stein Decl. Ex. 2 at 2. The notice was filed a day after the complaint was received by defendants because of a pending order to show cause related to plaintiffs' ultimately unsuccessful attachment application. Geary Property Holdings has over thirty members, and some of these members, such as Beverly Enterprises-Maryland, Inc., actively operate facilities and have principal places of business. The principal place of business of these members was not included in defendants' notice of removal because the additional citizenship of these members did not affect the diversity analysis in the removal. Although plaintiffs appear to suggest that this notice of removal was somehow misleading, defendants' notice of removal expressly stated that complete diversity did not exist on the face of the complaint, but that certain non-diverse plaintiffs had been fraudulently joined. *Id.* at 3-4. Plaintiffs in that action never challenged the propriety of that removal, and instead proceeded to attempt to obtain an attachment in federal

the plaintiffs in that case. The plaintiffs in the predecessor action were citizens of New York and Delaware and the facts that Beverly Enterprises-Maryland, Inc. was a citizen of both California (state of incorporation) and a citizen of Maryland by virtue of its operations, and other Geary Property Holdings LLC's members had principal places of business other than New York and Delaware, did not affect the removal analysis in that action.

Plaintiffs are also incorrect that the statement in the notice of removal is a "binding judicial admission." *See Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 83 (2d Cir. 1990) ("subject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power"); 15 Moore et al., *Moore's Federal Practice* § 102.13 (3d ed. 2007) ("limits on subject matter jurisdiction are never waivable"). Both of plaintiffs' authorities on this issue concern specific admissions regarding an entity's *principal place of business*, not a statement regarding citizenship generally. Neither case treated the previous statement as binding, as the courts in both cases conducted the "nerve center" or "place of operations" analysis to reach their conclusion.[7] *Gradetech, Inc. v. Am. Employers Group*, No. C 06 02991 WHA, 2006 WL 1806156, at *4-*5 (N.D. Cal. June 29, 2006); *Peters v. Timespan Commc'ns, Inc.*, No. 97 CIV. 8750 (DC), 1999 WL 135231, at *5-*6 (S.D.N.Y. Mar. 12, 1999).

---

court.

[7] Nor does plaintiffs' reference to two state websites contradict Holly Jones' Declaration. The Maryland Department of Assessments and Taxation website does not establish that Beverly Enterprises-Maryland's principal place of business is in California. *See* Opp. at 9. On the contrary, the agency defines "Principal Office" as:

> All Maryland entities require some Maryland address where certain records are to be kept or certain requests can be made on management. This may or may not be where the actual business endeavor is conducted. For foreign entities this is a mailing address that can be anywhere.

Reply EK Ex. B. For the same reason, the California Secretary of State's website's listing of a California mailing address does not undermine the fact that all of the corporation's business operations are located in Maryland. The California address represent a central office location for state agencies to send correspondence regarding review and inspection of Geary Property Holding's members' facilities. Declaration of Julianne Vink ¶3. This function is performed by employees of Beverly Enterprises Inc. (Geary Property Holdings' indirect parent) and, consistent with the Declaration of Holly Jones, no employees of Beverly Enterprises-Maryland work in California. *Id.*

### III. THERE ARE INSUFFICIENT CONTACTS BETWEEN ANY OF DEFENDANTS AND NEW YORK TO SUPPORT PERSONAL JURISDICTION.

Grunstein's affidavit is notable for what it does not state. First, he does not assert that Ronald Silva came to New York for the purpose of either establishing (or even negotiating) a partnership with plaintiffs, negotiating the Merger Agreement, or negotiating any amendments thereto. Indeed, plaintiffs fail specifically to allege when Silva joined the partnership other than to vaguely allege that it occurred "[i]n June or July 2005." *See* Compl. ¶16. That would plainly exclude the August meeting in New York as one in which the alleged oral partnership could have been entered into. Even assuming *arguendo* the accuracy of Grunstein's declaration, a single meeting discussing "partnership matters" is insufficient unless negotiations occurred that "substantially advanced or were substantively important or essential to the formation of the contract." *CMNY Capital, L.P. v. Perry*, No. 97 Civ. 6172 (MBM), 1998 U.S. Dist. LEXIS 3523, at *13 (S.D.N.Y. Mar. 23, 1998). Grunstein's declaration fails to establish that this occurred, and jurisdiction therefore cannot be based on the claimed June 6 meeting.

In fact, the purpose of Silva's visit to New York on June 6 was to attend a New York University Hospitality Conference where he participated in a panel discussion. Supp. Silva Decl. ¶2. Defendant Silva has no recollection of meeting with Grunstein on June 6, but states that he did not even start discussions with Grunstein about the financing for the Beverly merger until July, 2005. *Id.* The August 11 meeting with Credit Suisse is not alleged to have concerned the alleged partnership. *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 255 (S.D.N.Y. 2003) (plaintiff's claims did not arise out of financing transaction and contacts related to financing were insufficient for jurisdiction). As plaintiffs' authority states, a "substantial nexus" must exist between the defendants' contacts and the plaintiffs' claims in this action. *Hughes v. BCI Int'l Holdings Inc.*, 452 F. Supp. 2d 290, 301 (S.D.N.Y. 2006). Based on this record, the Court cannot find that Silva's visits to New York were related to the causes of action plaintiffs assert here. Plaintiffs contend that the partnership agreement is distinct from the Merger Agreement, and therefore, the forum selection clause is inapplicable, while at the same time claiming that defendants' communications pursuant to the Merger Agreement are sufficient for personal

jurisdiction regarding the purported partnership dispute.[8]  Such contacts are insufficient because the center of gravity for the acquisition of Beverly, an Arkansas corporation with no facilities in New York, is not New York.[9]  *See* MTD at 14-15.

Plaintiffs seek to pull themselves up by their own jurisdictional bootstraps in relying on Grunstein's legal work in New York in connection with the asserted partnership business.  Opp. at 12.  However, plaintiffs may not rely upon a vague allegation that an oral partnership agreement exists to satisfy the long arm statute.  *See Trump v. Cheng*, No. 602877/05, 2006 N.Y. Misc. LEXIS 2465, at *47-*51 (N.Y. Sup. Ct. July 24, 2006) (plaintiff failed to establish jurisdiction by allegation of oral partnership).  Grunstein fails to specify what his "substantial activities" in New York were or distinguish these activities from his work as a Troutman Sanders attorney.  The single case on which plaintiffs rely upon for their self-fulfilling "jurisdiction based on partnership" argument is predicated on the existence of a written partnership agreement, un-contradicted evidence of that partnership, and a physical partnership office in New York.  *Afloat in France, Inc. v. Bancroft Cruises Ltd.*, No. 03 Civ. 917 (SAS), 2003 WL 22400213, at *6 (S.D.N.Y. Oct. 21, 2003).  Plaintiffs have not even alleged the existence of an enforceable

---

[8] Plaintiffs' cited authorities are easily distinguished.  *Traffix, Inc. v. Herold*, 269 F. Supp. 2d 223, 226 (S.D.N.Y. 2003) (defendant traveled to New York on at least three occasions to discuss an existing business relationship established by written contract); *Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 300-01 (S.D.N.Y. 2006) (defendant and his son on his behalf attended numerous meetings in New York for the purpose of transacting business and soliciting investors); *Deutsche Bank Secs., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71-72, 818 N.Y.S.2d 165, 166-67 (2006) (jurisdiction proper when sophisticated investor emailed broker in New York to sell $15 million in bonds, after having closed another eight such transactions with the same broker in the preceding thirteen months), *cert. denied*, 927 S. Ct. 832, 166 L. Ed. 2d 665 (2006); *Fischbarg v. Doucet*, 38 A.D.3d 270, 272, 832 N.Y.S.2d 164, 166 (1st Dep't 2007) (defendants' retention of a New York lawyer established jurisdiction for dispute arising out of payment of the lawyer's fees); *Agency Rent A Car Sys. Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29-30 (2d Cir. 1996) (defendants were licensees who entered into a written agreement with a company whose principal place of business was in New York, had visited the plaintiff in New York on business several times for purposes of furthering their business agreement, and maintained membership in a professional association in New York).

[9] Plaintiffs' attempt to distinguish the holding of *Barret v. Tema Development* is unpersuasive. 463 F. Supp. 2d 423, 431 (S.D.N.Y. 2006) (declining to exercise jurisdiction based on phone calls and emails when the transaction's "center of gravity" was not New York).  Plaintiffs' lawsuit is not a dispute regarding "financing, investment banking relationships and legal activity" (Opp. at 11 n.6) and thus the "center of gravity" of the transaction is not New York.

partnership agreement and jurisdiction cannot be based upon the vaguely alleged (and factually contested) oral partnership.

**IV.  PLAINTIFFS HAVE ALLEGED NO MORE THAN AN UNENFORCEABLE AGREEMENT TO AGREE.**

Plaintiffs do not attempt to reconcile Grunstein's and Dwyer's sworn statements in *MetCap* regarding the mutually exclusive alternatives of the MetCap fee or 50% partnership interest with their current allegations.[10] Nor do plaintiffs make any attempt to address the clear discrepancies between the inadmissible Troutman Sanders email, which describes a "carried interest" rather than the equity interest by an entity owned by certain other Troutman Sanders attorneys rather than Grunstein and Dwyer as partners, and plaintiffs' most recent allegations of an oral partnership with completely different parties.[11] It is very obvious from the multiple iterations of the supposed deal articulated by plaintiffs to date that in fact the parties had no actual or enforceable agreement as to how Grunstein and his affiliates would be compensated for their role in the merger taken over by Fillmore.

Recognizing that all their causes of action rest upon flawed partnership allegations, plaintiffs now attempt to argue that the "CFG Agreement" exists independent of the partnership agreement. However, plaintiffs' new contention that "consideration for the agreement to pay CFG was the CFG commitment letter" (Opp. at 18) contradicts their complaint. *See* Compl. ¶20(b) ("[i]n furtherance of the partnership . . . plaintiff Dwyer caused plaintiff Capital Funding [CFG] to issue a conditional commitment for up to $1.43 billion of permanent HUD financing [ ]

---

[10] Plaintiffs contend without elaboration that "there was no reason for them to discuss or refer to their partnership claims in their [previous] declarations." Opp. at 2. It strains credulity to assert that despite submitting three declarations in the *MetCap* action totaling over 24 pages, the supposed highly relevant "fact" that plaintiffs were really partners in the Beverly merger and were entitled to an equal share of Beverly's equity instead of collecting an investment banking fee for MetCap, was considered to be unworthy of mention. Plaintiffs cannot explain the relationship between MetCap, an organization owned by Grunstein in some manner (EK Ex. E ¶3) and is the purported "procuring cause" of the Beverly merger, and the alleged partnership agreement in this case. The reality is that Plaintiffs decline to address these fundamental discrepancies in their complaint and opposition because they have changed factual theories.

[11] Defendants object to the plaintiffs' use of this attorney-client privileged email, as will be addressed in an application to the Magistrate to strike and for protective order, on the grounds of hearsay and introducing improper evidence in connection with this Rule 12(b) motion.

that could be used to raise and ultimately pay off, bridge financing to fund the Original Acquirers acquisition of Beverly").[12]

## V. PLAINTIFFS FAIL TO ADDRESS THE OTHER SUBSTANTIVE DEFECTS WITH THE AMENDED COMPLAINT.

Regarding plaintiffs' claims for conversion, breach of contract, or breach of fiduciary duty, plaintiffs rely upon a narrow exception to the general rule that partners may not sue each other, an exception that applies only in instances when the partnership "has terminated leaving no complicated accounts to adjust [and no] partnership affairs to settle . . . ." Opp. at 14 (citing 68 C.J.S. *Partnership* § 116). But even assuming the truth of plaintiffs' allegations that they "agreed to share profits and losses equally," plaintiffs would be responsible for an equal share of defendants' very considerable expenses incurred in the Beverly Merger, such as legal fees to both Dechert LLP and Troutman Sanders, investment banking fees (including their share of any amounts allegedly due in the *MetCap* case), expenses associated with regulatory filings, and interest on funds borrowed to pay these expenses.[13] Thus, even assuming *arguendo* the existence of a partnership agreement, the necessary accounting will require "complicated accounts to adjust" (Opp. at 14 (citing 68 C.J.S. *Partnership* § 116)), and therefore plaintiffs may not sue their alleged partners directly.

Plaintiffs also fail to address the flaws in their claims for specific performance and constructive trust.[14] With respect to the defendants not alleged to be plaintiffs' partners,

---

[12] Further, if New York law applies to this dispute as plaintiffs claim, this contract would be barred by New York's statute of frauds. NY Gen. Oblig. Law § 5-701(a)(10) (McKinney 2007) (statute of frauds applies to "contracts to pay compensation for services rendered in negotiating a loan . . . .")

[13] Plaintiffs concede that the rights of third-parties will also need to be determined in this action by stating "if entities such as WSIB and others who provided financing, are innocent third parties, then the rights of plaintiffs may be subject to the rights of those third parties." Opp. at 17.

[14] Plaintiffs' opposition confuses constructive trust as a *remedy* for breach of fiduciary duty and as a *cause of action*. If plaintiffs are requesting constructive trust as a *remedy* for their breach of fiduciary duty claim, then their constructive trust claim should be dismissed as unnecessary. In contrast, plaintiffs' authority demonstrates that when constructive trust is asserted as a cause of action, the court requires an actual transfer. *See Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 224 F. Supp. 2d 567, 610 (S.D.N.Y. 2002) (cross-defendant licensed defendants' dances, sets and costumes to third parties), *aff'd in part,*

plaintiffs do not contend that they sufficiently plead a cause of action on a theory of alter ego or otherwise. Instead, they simply state, without citation to any legal authority, that they alleged facts "tying each of the other defendants to the wrongdoing and to defendant Silva." Opp. at 19. Such vague allegations are insufficient to state a cause of action. *See* MTD at 24.

## CONCLUSION

The motion to dismiss should be granted.

Dated: September 26, 2007

Respectfully submitted,

DECHERT LLP

By: _____/s/_____
    H. Joseph Escher III
    Joseph F. Donley
    D. Christopher Burdett
    Eric C. Kirsch

30 Rockefeller Plaza
New York, New York  10112
Tel:  (212) 698-3500
Fax: (212) 698-3599

One Maritime Plaza
San Francisco, California  94111
Tel:  (415) 262-4500
Fax: (415) 262-4555

*Attorneys for Defendants Ronald E. Silva; Pearl Senior Care, LLC; PSC SUB, LLC; Geary Property Holdings, LLC; Fillmore Capital Partners, LLC; Fillmore Strategic Investors, LLC; Drumm Investors, LLC; and Fillmore Strategic Management, LLC*

---

*rev'd in part* 380 F.3d 624 (2d Cir. 2004).